**IN THE UNITED STATES DISTRICT COURT FOR**
**THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| STEWART ABRAMSON, individually and on behalf of a class of all persons and entities similarly situated, | |
| Plaintiff | Case No. 18-cv-615-RCM |
| vs. | |
| AGENTRA, LLC, XPERT INSURANCE SERVICES, INC., KAREN MAIRE EDWARDS and SEAN T. DUFFIE | |
| Defendants. | |

## <u>PLAINTIFF'S RESPONSE TO AGENTRA, LLC'S MOTION TO DISMISS</u>

## INTRODUCTION

Defendant Agentra, LLC's ("Agentra") motion to dismiss for failure to state a claim under Fed. Civ. P. 12(b)(6) pays lip service to the notion a movant is required to "accept all factual allegations as true" but nevertheless mistakenly attacks both the factual and legal basis for those allegations, complete with an affidavit from the defendant and a mischaracterization of its own contracts with its co-defendants, and declares that Plaintiff has not stated a claim for vicarious liability against Agenta. Contrary to Agentra's assertions, Plaintiff has alleged that Agentra is liable for the illegal telephone calls that he received under agency theories of actual authority, apparent authority, and ratification.

Agentra then doubles down on its failure to respect the proper standard for assessing whether a Plaintiff has stated a claim for vicarious liability by asserting that once the Court accepts Agentra's position that it cannot be held vicariously liable for the calling, it is therefore not subject to personal jurisdiction for the calls directed to Mr. Abramson in Pennsylvania. Agentra's personal jurisdiction argument should be rejected as it does not recognize that it plainly can and should be held vicariously liable for the calling, and it took specific efforts itself to follow up on that calling to sell Mr. Abramson insurance in Pennsylvania.

## BACKGROUND AND PLAINTIFF'S ALLEGATIONS

Plaintiff Stewart Abramson ("Plaintiff"), brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012). Mr. Abramson alleges that Agentra engaged the co-defendants to originate new business for Agentra insurance products. The co-defendants then sent the Plaintiff pre-recorded telemarketing calls for the purposes of advertising Agentra goods and services, which is prohibited by the TCPA. *See* ECF No. 16 at ¶

2

4. On March 7. 2018, Mr. Abramson received a pre-recorded telemarketing call on his cellular telephone while he was in Pennsylvania. ECF No. 16 at ¶ 27-30; Declaration of Stewart Abramson at ¶¶ 2-5 ("Abramson Dec."), attached hereto as <u>Exhibit 1</u>.

To investigate the calling party, who wasn't fully identified in the pre-recorded message, the Plaintiff called back the number in the recorded message (915-245-4952). ECF No. 16 at ¶ 33; Abramson Dec. at ¶ 6. During his call to 915-245-4952, the Plaintiff spoke with a "Karen Edwards", who identified herself as an employee of Agentra, and gave her company's phone number as 800-656-2204, which is Agentra's phone number. ECF No. 16 at ¶ 34-36; Abramson Dec. at ¶ 7-8. Ms. Edwards then attempted to sell Plaintiff Agentra goods and services. ECF No. 16 at ¶ 37; Abramson Dec. at ¶ 9. The Plaintiff subsequently received an e-mail from Agentra regarding these goods and services. ECF No. 16 at ¶ 38; Abramson Dec. at ¶ 10 and Exhibit A thereto. That email was sent to a pseudonym that Plaintiff used to ensure that the calling party could not later (as Agentra has done here) deny that it, and not some other entity, was responsible for the call. *Id.*

On May 11, 2018, after the Plaintiff filed this lawsuit, he received another pre-recorded call promoting Agentra's goods and services on his residential phone which he received in Pennslyvania. ECF No. 16 at ¶ 46-48; Abramson Dec. at ¶ 16.  Again to identify the party making the call (who wasn't identified in the recording) Plaintiff pressed 1 and was offered Agentra goods or services. ECF No. 16 at ¶¶ 50-52; Abramson Dec. at ¶¶ 17-24. Following this second pre-recorded call, Agentra sent a mailing to the Plaintiff's address in Pennsylvania, a communication following up on the telemarketing call with Agentra's return address. ECF No. 16 at ¶¶ 65-66 and Abramson Dec. at ¶ 30. A copy of that mailing is attached to the Abramson Dec. as Exhibit B. Again, the mailing was sent to a pseudonym that Plaintiff used to ensure that

the calling party could not later (as Agentra has done here) deny that it, and not some other

entity, was responsible for the call.

As the calls to the Plaintiff were transmitted using technology capable of generating

thousands of similar calls per day, Plaintiff brings this action on behalf of a proposed nationwide

class of other persons who were sent the same illegal telemarketing call.

## ARGUMENT

### I.     The Complaint Sufficiently Alleges Bases for Agentra's Vicarious Liability for the Co-Defendants Telemarketing Under Theories of Actual Authority, Ratification and Apparent Authority.

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint. Although Rule 8

of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim

showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), "in order to give the

defendant fair notice of what the claim is and the grounds upon which it rests," *Bell Atl. Corp. v.

Twombly*, 550 U.S. 544, 555 (2007) (citation, alteration and internal quotation marks omitted),

the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do," *id.*

The Court "must consider only those facts alleged in the complaint and accept all of the

allegations as true." *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994); *accord Twombly*,

550 U.S. at 555 (stating that courts must "assum[e] that all the allegations in the complaint are

true (even if doubtful in fact)"). The Court must also accept as true all reasonable inferences

emanating from the allegations, and view those facts and inferences in the light most favorable to

the nonmoving party. *Revell v. Port Auth.*, 598 F.3d 128, 134 (3d Cir. 2010). Finally, "if a

[claim] is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment,

unless an amendment would be inequitable or futile." *Phillips v. County of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008).

For more than twenty years, the FCC has made clear that "the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 F.C.C. Rcd. 12391, 12397 ¶ 13 (1995). The FCC confirmed this principle in 2013, when it explained that "a seller .… may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 F.C.C. Rcd. 6574, 6574 (2013). Actual authority, apparent authority or ratification can be a basis for a finding of vicarious liability. *Id.* at 6586 ¶ 34.

Plaintiff's amended complaint sufficiently states a claim  to hold Agentra vicariously liable for the telemarketing conduct of its agents. *See* ECF No. 16 at ¶ 74 ("Agentra delegates to third parties, including the co-defendants, the ability to enter into contracts that bind Agentra in obligations, using parameters Agentra has provided to those agents to secure the contracts."); ("Agentra knowingly and actively accepted business that originated through the illegal telemarketing calls from the co-defendants.") *Id.* at ¶ 75. These allegations, coupled with the factual allegations linking Agentra to the call to Plaintiff, are sufficient to survive Defendant's Motion to Dismiss. *See Aranda v. Caribbean Cruise Line, Inc.*, 179 F. Supp. 3d 817, 829 (N.D. Ill. 2016) ("[I]n their amended consolidated complaint, plaintiffs repeatedly alleged that '[d]efendants and/or their agents made unsolicited telephone calls' in violation of the TCPA…. The bottom line is that defendants have been on notice since near the outset of the case that plaintiffs seek to hold them vicariously or jointly liable, and that is all plaintiffs were required to

do."). As other federal courts have held, the idea that Agentra, or any defendant, could simply hire a third party to physically dial the calls and be absolved of liability is "absurd indeed". *See Birchmeier v. Caribbean Cruise Line, Inc.*, No. 12 C 4069, 2012 U.S. Dist. LEXIS 182536, at *3 (N.D. Ill. Dec. 28, 2012) ("To offer an example, suppose that A, a well-heeled entity that wants to sell a product or service, stands next to B, an impecunious defendant, and directs B to place unsolicited, prerecorded calls to consumers on their cell phones. Defendants' position, it appears, is that only B, the impecunious dialer, would be liable and that A would get off scot-free. A Congressional enactment that permitted this would be absurd indeed. Fortunately that is not the law under the TCPA.")

The Plaintiff's detailed allegations about the nature of the relationship go above what is required at this stage. While denying a similar motion to dismiss, the court in *Hartley-Culp v. Green Tree Servicing, LLC*, 52 F. Supp. 3d 700, 703-04 (M.D. Pa. 2014) found:

> Fannie Mae derides plaintiff's allegations as "only conclusory, boilerplate references to Resolve placing calls 'on behalf of' Fannie Mae." [*704] (Reply Br. at 11). Plaintiff's pleading, however, was more thorough and complete than Fannie Mae's quoting of it. Plaintiff avers that "Defendant Resolve left such voice messages on Plaintiff's cellular phone, on Defendant Fannie Mae and Defendant Green Tree's behalf, at their direction, and under their control," and "Defendant Resolve left multiple (subsequent) similar voice-messages on Plaintiff's cellular phone, Defendant Fannie Mae and Defendant Green Tree's behalf[sic], at their direction, and under their control." (Compl. ¶¶ 13, 15)(emphasis added). This pleading, by itself, is enough to state a claim, plausible on its face, that Fannie Mae is vicariously liable for the phone calls made by Resolve. See Ashcroft v. Iqbal, 556 U.S. at 678.

> Moreover, these allegations are not mere "conclusions," as Fannie Mae asserts, because plaintiff included a transcript of the Resolve caller's voice message. [**9] That message stated that the speaker was calling "on behalf of Fannie Mae," and that "[h]elp from Fannie Mae is available but you must return our call." (Compl. ¶ 14). These facts certainly rise to the standard of "a showing, rather than a blanket assertion, of entitlement to relief that rises above the speculative level.

Like the facts in *Hartley-Culp*, the Plaintiff included a transcript of the recorded calls as well as documenting the follow up with those calls that resulted in Agentra products being offered and the calling parties even indicating that they were employees of Agentra. *See* ECF No. 16 at ¶¶ 34-43. However, the Plaintiff's allegations more specifically identify a series of theories under which he seeks to hold Agentra liable.

A. *Actual Authority*

Actual authority under the TCPA has been frequently litigated. In an intensely contested case that produced a summary judgment order spanning more than 200 pages, *United States v. Dish Network LLC*, 256 F. Supp. 3d 810, 921 (C.D. Ill. 2017) the court held:

> The Restatement definition contains two key aspects: (1) the principal and agent agree that the agent acts for the principal; and (2) the agent is subject to the control of the principal. See also In re Aguilar, 511 B.R. 507, 513 (Bankr. N.D. Ill. 2014). The principal need only have the right to control the agent; the agency exists even if the principal does not exercise that right. See Schutz v. Arrow Fin. Servs., LLC, 465 F.Supp.2d 872, 877 (N.D. Ill. 2006). The determination of whether an agency exists is a factual issue. See Spitz v. Proven Winners of North America LLC, 759 F.3d 724 (7th Cir. 2014).

Of course, the parties have not yet engaged in discovery, but the Plaintiff's Complaint alleges that Agentra sufficiently controlled specifics of the telemarketing calls. Here, the Plaintiff has alleged that Agentra (1) had absolute control over whether, and under what circumstances, it would accept a customer (2) also had day-to-day control over the co-defendants' actions, including the ability to prohibit it from using an ATDS or pre-recorded messages to contact potential customers of Agentra and (3) Agentra gave interim instructions to the co-defendants by providing the volume of calling and contracts it would purchase. *See* ECF No. 16 at ¶ 80-82. The contract between Agentra and the co-defendants attached to the motion to dismiss confirms many of these allegations and include even more specifics about the relationship between the parties as it relates to Agentra's right to control the actions of their agents:

> Agentra Health desires to engage the services of General Agent to market and sell the insurance policies marketed by Agentra Health. Before soliciting any potential customer or client, General Agent agrees to obtain and maintain insurance and/or other licenses required by law for the solicitation of insurance sales…
>
> General Agent also agrees that he/she will maintain all necessary licenses and errors and omissions insurance coverage to perform his/her insurance sales and marketing duties…
>
> Due to various insurance laws and regulations, General Agent agrees that he/she will request and obtain approval from Agentra Health prior to distributing any piece of advertising of any kind or nature which bears the name Agentra Health. General Agent must also have prior written approval from Agentra Health for any advertising where the Company name is used to solicit business on behalf of Agentra Health, as well as the prior written approval from any carrier whose name is used in any advertising used to solicit business on behalf of Agentra Health.

*See* ECF No. 22-1 at *6-7. Furthermore, by permitting these agents of Agentra to contractually bind Agentra with the insurance agreements marketed and sold to customers, Agentra has assented to these agents acting on their behalf. *See* Restatement § 1.01, cmt g, illus. 11 (a company that negotiates and enters into contracts between a principal corporation and third parties acts on behalf of the principal corporation and thus is an agent in connection with those contracts).

Agentra attempts to rely on the fact that the contract between the co-defendants includes a broad statement that the agent will "comply with all applicable federal and state laws, rules, and regulations in the performance of his/her duties." *See* ECF No. 22-1 at *6. However, as the FCC has held, "the presence of contractual terms purporting to forbid a third-party marketing entity from engaging in unlawful telemarketing activities would not, by themselves, absolve the seller of vicarious liability." 2013 FCC Ruling ¶ 34 n.102. Similarly, regarding Agentra's contractual provision that the Agentra agents are independent contractors, "[t]he designation of a party in a contract as an independent contractor is not conclusive as to the status of that party as

an independent contractor." *Durkey v. Pac. Life Ins. Co.*, Civil Action No. 17-317, 2017 U.S. Dist. LEXIS 124294, at *28 (W.D. Pa. Aug. 4, 2017).

The actions of Agentra's agents as alleged in the Amended Complaint also support that the co-defendants were acting under Agentra's control and direction. After one of the pre-recorded calls, the Plaintiff "was told that if he had any issues with the policy, he could call (800) 656-2204, ext. 2 and address them with Agentra. The phone number (800) 656-2204 is the phone number for Agentra." *See* ECF No. 16 at ¶ 54-55. These allegations are substantively similar to those in *Dobkin v. Enter. Fin. Grp.*, No. 2:14-cv-01989 (WHW) (CLW), 2014 U.S. Dist. LEXIS 123317, at *12 (D.N.J. Sep. 3, 2014), where a motion to dismiss was denied in a TCPA case holding that "Plaintiff's allegation that Precise representatives directed consumers to a website which automatically rerouted to EFG's website suggests that EFG exerted control over Precise's telemarketing strategy."

The telemarketing agents of Agentra also acted with implied acutal authority. "An agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act." Restatement (Third) of Agency § 2.01 (2006). Actual authority can be implied, through words or conduct. *Id.* § 2.01 cmt. b. At a minimum, through its conduct—continuing to pay Agentra agents for telemarketing conduct even after the pre-recorded calls were sent, Agentra impliedly conveyed to these agents that their telemarketing efforts were authorized by Agentra.

Courts consistently recognize that assessing vicarious liability for TCPA violations is a fact-intensive inquiry inappropriate for resolution under Rule 56, let alone Rule 12(b)(6). *See e.g.*, *Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292, 1302 (D. Nev. 2014) (denying

motion to dismiss TCPA claims when plaintiff had sufficiently plead "a plausible agency relationship based on actual authority (arising through contractual relationships)").[1] The 2013 FCC Ruling held that called parties may obtain "evidence of these kinds of relationships … through discovery, if they are not independently privy to such information." 2013 FCC Ruling ¶ 46.

### B. *Ratification*

The fundamental principle of ratification is that one may not accept the benefits of a transaction without also bearing its legal consequences.  Restatement (Third) of Agency § 4.07 cmt. b (2006).  "The sole requirement for ratification is a manifestation of assent or other conduct indicative of consent by the principal. To be effective as a ratification, the principal's assent need not be communicated to the agent or to third parties whose legal relations will be affected by the ratification." *Id.* § 4.01 cmt. b.  "[W]hen a person ratifies another's act, the legal consequence is that the person's legal relations are affected as they would have been had the actor been an agent acting with actual authority at the time of the act."  *Keim v. ADF Midatlantic, LLC,* No. 12-80577-CIV-MARRA, 2015 U.S. Dist. LEXIS 159070, at *27 (S.D. Fla. Nov. 9, 2015) (Seller's acceptance of benefits of telemarketer's TCPA violations constitutes ratification, precluding dismissal.).

---

[1] *See also Brodsky v. HumanaDental Ins. Co.*, No. 10 C 3233, 2014 U.S. Dist. LEXIS 80790 (N.D. Ill. June 12, 2014) (denying defendant's motion for summary judgment as to vicarious liability claim for violations of the TCPA's "junk fax" provisions); *McCabe v. Caribbean Cruise Line, Inc.,* No. 13-CV-6131, 2014 U.S. Dist. LEXIS 91116 (E.D.N.Y. July 3, 2014) (denying motion to dismiss TCPA vicarious liability claims); *Legg v. Voice Media Grp., Inc.*, 20 F. Supp. 3d 1370, 1377 (S.D. Fla. 2014) ("[S]ummary judgment on vicarious liability is appropriate only in cases where evidence of the relationship is clear and unequivocal."); Creative Montessori Learning Ctr. v. Ashford Gear, LLC, No. 09 C 3963, 2014 U.S. Dist. LEXIS 27758 (N.D. Ill. Mar. 3, 2014); *Imhoff Inv., LLC v. SamMichaels, Inc.*, 2014 U.S. Dist. LEXIS 4965, at *19 (E.D. Mich. Jan. 15, 2014) (denying plaintiff's motion because the "issue of agency turns on the control exercised" by the alleged principal, "which cannot be determined as a matter of law").

The FCC has made clear that ratification applies to the TCPA. 2013 FCC Ruling ¶ 34 ("[A] seller may be liable for the [telemarketing] of another under traditional agency principles if it ratifies those acts by knowingly accepting their benefits."). "Ratification [of TCPA violations] occurs when an agent acts for a principal's benefit and the principal does not repudiate the agent's actions." *Aranda v. Caribbean Cruise Line, Inc.,* 179 F. Supp. 3d 817, 831 (N.D. Ill. 2016). Ratification may occur even though the agent's acts were unauthorized by the principal. *Id.* at 833.

Here, the Plaintiff has alleged clear ratification. First, the Plaintiff was contacted by a pre-recorded telemarketing call where Agentra agents identified themselves and promoted Agentra's services. *See* ECF No. 16 at ¶¶ 27-43. Subsequently, Agentra agents contact the Plaintiff again with a pre-recorded telemarketing call and to further identify the individual and company contacting him illegally, he indicated an interest in the product, which is confirmed to be an Agentra insurance policy. *Id.* at ¶¶ 50-54. Even though Agentra agents had previously contacted the Plaintiff using illegal telemarketing practices, Agentra still accepted the benefits of the second telemarketing call to the Plaintiff. *Id.* Agentra accepting these benefits was confirmed by Agentra's own conduct when it sent a mailing to the Plaintiff's address in Pennsylvania, following up on the telemarketing call and the policy that was offered on that second telemarketing call. *Id.* at ¶ 65. The Plaintiff has also alleged that Agentra has accepted business from the co-defendant agents even while this lawsuit has been pending. *Id.* at ¶ 77.

The Plaintiff's allegations amount to textbook ratification. In other words, an entity may not evade liability by burying its head in the sand to avoid learning relevant facts. *See In re Nigeria Charter Flights Contract Litig.*, 520 F. Supp. 2d 447, 467 (E.D.N.Y. 2007) ("having once ratified its agents' acts, [a principal] cannot afterwards avoid the effect of such ratification

by showing that it was not acquainted with all the facts of the transaction ratified, when it was always in a position and was in possession of means of learning them"). If a principal "has knowledge of facts that would have led a reasonable person to investigate further, but the principal ratified without further investigation," the principal has "assumed the risk of liability" and is vicariously liable. *Kristensen*, 879 F.3d at 1014. Here, despite prior repeated issues with illegal telemarketing, Agentra continued to accept new business from these agents.

## II.   This Court has Personal Jurisdiction over the Defendant

A federal court may exercise personal jurisdiction over a non-resident Defendant to the extent permissible under the law of the forum state. Fed.R.Civ.P. 4(k)(1)(A); *Marten v. Godwin,* 499 F.3d 290, 296 (3d Cir. 2007). Under Pennsylvania's long-arm statute, personal jurisdiction over a non-resident Defendant "to the fullest extent allowed under the Constitution of the United States." 42 Pa.C.S.A. § 5322(b); *Renner v. Lanard Toys Ltd.*, 33 F.3d 277, 279 (3d Cir.1994). The statute's reach is coextensive with the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *See Grand Entertainment Group, Ltd. v. Star Media Sales*, 988 F.2d 476, 481 (3d Cir.1993).

Specific personal jurisdiction exists "when the claim arises from or relates to conduct purposely directed at the forum state." *Marten v. Godwin*, 499 F.3d at 296. To establish specific jurisdiction, Plaintiff must prove: (1) the defendant has purposefully directed his activities at the forum; (2) Plaintiff's claim arises out of or relates to at least one of those specific activities, and (3) that the court's exercise of jurisdiction over the defendant comports with traditional notions of fair play and substantial justice. *Id.*

Here, as discussed above, the Plaintiff has sufficiently alleged that Agentra can be held vicariously liable for the telemarketing conduct of its agents. In fact, Agentra itself directly

12

contacted the Plaintiff to complete the telemarketing sales pitch for Agentra services. As the

Plaintiff alleges:

> Agentra itself also directly contacted Mr. Abramson in Pennsylvania regarding these telemarketing solicitations.

> Following the first pre-recorded call, Agentra sent the Plaintiff e-mails regarding the Agentra policy being offered as a result of the call.

> Following the second pre-recorded call, Agentra sent a mailing to the Plaintiff's address in Pennsylvania, a communication following up on the telemarketing call.

> That mailing was sent directly by Agentra to the Plaintiff's address in Pennsylvania and it had a return address of:



4201 Spring Valley Road, Suite 1500
Dallas, Texas 75244

*See* ECF No. 16 at ¶ 64-66. These plain allegations refute Agentra's assertion that is central to

their motion that "Plaintiff has not shown that Defendant conducted any business in

Pennsylvania". *See* ECF No. 22 at ¶ 28.

Resolving this matter in Pennsylvania makes sense. Courts have repeatedly held where a

defendant makes a call or sends a message into the forum state in violation of the TCPA, this

action is sufficient to confer specific jurisdiction over the defendant. *See e.g. Rinky Dink Inc. v.*

*Electronic Merchant Systems Inc.*, No. C13-1347-JCC, 2014 WL 5880170, at *2–3 (W.D. Wash.

Sept. 30, 2014) (finding express aiming where defendant transmitted calls to telephone numbers

with Washington area codes, even if at the direction of another party); *Luna v. Shac, LLC*, No.

C14-00607 HRL, 2014 WL 3421514, at *3 (N.D. Cal. July 14, 2014) (finding that a defendant

who intentionally texts a cell phone number with a California area code in violation of the TCPA

has expressly aimed its conduct at California); *Heidorn v. BDD Marketing & Mgt. Co., LLC*,

Case No. C-13-00229 JCS, 2013 WL 6571629 at *7–8 (finding specific jurisdiction where

plaintiff received unsolicited emails and phone calls at a number with a California area code);

*Baker v. Caribbean Cruise Line*, No. CV 13-8246-PCT-PGR, 2014 WL 880634, at *2 (D. Ariz.

Mar. 6, 2014) (finding specific jurisdiction established where defendant made calls to plaintiff's

Arizona number).

Courts in Pennsylvania had denied similar motions, where a foreign corporation makes or

authorizes a call into this District and then, unsurprisingly, get hauled into court in this District.

A number of these cases have involved Mr. Abramson himself. For example, Judge Cohill held

in *Abramson v. Caribbean Cruise Line, Inc.,* No. 2:14-cv-00435, 2014 U.S. Dist. LEXIS 88336

at *23-24 (W.D. Pa. June 23, 2014):

> First, we note that the call made by CCL was to a phone number bearing a (412)
> area code - such a code is limited to residents of Pennsylvania. By initiating a call
> to such a number, it can be said that Defendant CCL "expressly aimed their
> conduct at Pennsylvania" because the number was associated with the State of
> Pennsylvania. See Marten, 499 F.3d at 296. Defendant would have, or should
> have, known it was reaching into Pennsylvania when the call was made. This
> satisfies the requirement for sufficient minimum contacts under the law.

Similarly in *Abramson v. CWS Apartment Homes, LLC*, No. 16-426, 2016 U.S. Dist. LEXIS

146627, at *10-11 (W.D. Pa. Oct. 24, 2016), Judge Kearney held:

> District courts across the country have found purposeful direction based on
> allegations a defendant sent its telemarketing call to a number bearing the state's
> area code…We likewise find purposeful direction based on Abramson's averment
> CWS sent the text message to his cell phone bearing a Pennsylvania area code.
>
> The remaining requirements of specific personal jurisdiction are satisfied. As to
> the second requirement, Abramson's claim under the Act arises from this text
> message. As to the third requirement, CWS must "present a compelling case that
> the presence of some other considerations would render jurisdiction
> unreasonable." In making this determination, we consider: 1) the burden on CWS;

> 2) the interests of Pennsylvania; 3) Abramson's interest in obtaining relief; 4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and 5) the shared interest of the several states in furthering fundamental substantive social policies.
>
> CWS fails to meet its burden under this test. Only the first factor weighs in CWS's favor, as CWS has no apparent affiliation with Pennsylvania absent the text message and CWS claims defending a case in Pennsylvania would be a hardship because it is based in Texas. The remaining factors, however, do not demonstrate the exercise of jurisdiction contravenes fair play and substantial justice. As to the second factor, Pennsylvania "has an interest in ensuring that its residents have adequate recourse for harms inflicted by nonresidents." As to the third factor, Abramson has an interest in obtaining relief for violation of his rights under the Act. As to the remaining factors, CWS fails to identify facts weighing against the exercise of jurisdiction. CWS fails to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable."

The material facts of this case mirror *Abramson*. Mr. Abramson's phone was intentionally called in Pennsylvania as part of the Agentra telemarketing campaign, and Mr. Abramson's claim arises under the TCPA for that automated conduct, as discussed above. Furthermore, Agentra has not carried its burden as to why defending this lawsuit in a jurisdiction where they directed their telemarketing would be unreasonable. Unlike *CWS Apartment Homes*, where the defendant did not offer goods or services in Pennsylvania, Agentra acquires Pennsylvania residents for its services, as it was trying to do with the Plaintiff. As a result, this court's exercise of jurisdiction over the Defendant comports with traditional notions of fair play and substantial justice. As Judge Cohill found in the *Abramson v. Caribbean Cruise Line, Inc.* matter:

> Finding the necessary minimum contacts to establish specific personal jurisdiction over Defendant CCL, we move to considerations of whether litigation in this forum would offend "traditional notions of fair play and substantial justice." International Shoe v. Washington, 326 U.S. at 320…Because we found sufficient minimum contacts between CCL and Pennsylvania, and because CCL has failed to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable," we find that our exercise of specific personal jurisdiction over CCL does not offend the traditional notions [*25] of fair play and substantial justice. See Grand Entertainment, 988 F.2d at 483 (quoting Burger King, 471 U.S. at 477) (Noting that after sufficient minimum contacts are found, "it becomes the defendant's burden to "present a compelling

15

case that the presence of some other considerations would render jurisdiction unreasonable").

2014 U.S. Dist. LEXIS 88336 at 24-25. To conclude that there is no specific jurisdiction when a defendant directed a telemarketing call (and itself made follow up contact) to a Plaintiff that it admits it has no business relationship with would likely eviscerate enforcement of the TCPA, since telemarketers could simply call individuals with impunity, knowing that they would be required to come to their home state in order to litigate a dispute. Defendant's position is contrary to routine assertions of jurisdiction in cases asserting personal torts.

## <u>CONCLUSION</u>

For the reasons stated herein, Plaintiff respectfully submits that Agentra's motion to dismiss should be denied.

Plaintiff,
By Counsel,

By: _/s/ Anthony Paronich_____
     Anthony Paronich
     Email: anthony@broderick-law.com
     BRODERICK & PARONICH, P.C.
     99 High Street, Suite 304
     Boston, MA 02110
     Telephone: (508) 221-1510
     *Pro Hac Vice*

     Clayton S. Morrow
     Email: csm@consumerlaw365.com
     Morrow & Artim, PC
     304 Ross Street, 7th Floor
     Pittsburgh, PA 15219
     Telephone: (412) 281-1250

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 20, 2018, I filed the foregoing with the Clerk of Court, which will automatically send notification of such filing to all attorneys of record by placing the same on the Court's electronic docket.

_/s/ Anthony Paronich_____

Anthony Paronich