IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STEWART ABRAMSON and JAMES EVERETT SHELTON, individually and on behalf of a class of all persons and entities similarly situated,<br><br>                    Plaintiffs<br><br>vs.<br><br>AGENTRA, LLC, KAREN MARIE EDWARDS, ANGELIC MARKETING GROUP L.L.C., THERESA JONES and MATTHEW JONES<br><br>                    Defendants. | Case No. 18-cv-615-RCM<br><br>COMPLAINT-CLASS ACTION |

## SECOND AMENDED CLASS ACTION COMPLAINT

### Preliminary Statement

1.      Plaintiffs Stewart Abramson and James Everett Shelton ("Plaintiffs"), bring this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices.  *See Mims v. Arrow Fin. Servs.*, *LLC,* 132 S. Ct. 740, 745 (2012).

2.      "Month after month, unwanted robocalls and texts, both telemarketing and informational, top the list of consumer complaints received by" the Federal Communications Commission.[1]

---

[1] *Omnibus TCPA Order*, GC Docket 02-278, FCC 15-72, 2015 WL 4387780, ¶1 (July 10, 2015).

3. The TCPA is designed to protect consumer privacy by prohibiting unsolicited, autodialed telemarketing calls to cellular telephones, unless the caller has the "prior express written consent" of the called party.

4. Plaintiffs allege that Defendant Agentra, LLC ("Agentra") relies on the third party agents such as Karen Marie Edwards ("Ms. Edwards") to originate new business for Agentra insurance products.

5. Ms. Edwards, and other Agentra agents, then hired the co-defendant Angelic Marketing Group L.L.C., owned and operated by Matthew and Theresa Jones, who sent the Plaintiffs pre-recorded telemarketing calls for the purposes of advertising Agentra goods and services, which is prohibited by the TCPA.

6. In fact, Ms. Edwards was originally named in this lawsuit based on a call that the Plaintiffs now know was made for Ms. Edwards by Mr. Jones and Angelic. Then *during the pendency of this lawsuit*, Ms. Edwards continued her relationship with Mr. Jones and Angelic, who then made a pre-recorded call to Mr. Shelton for the purposes of selling Agentra goods and services.

7. Because the calls to the Plaintiffs were transmitted using technology capable of generating thousands of similar calls per day, Plaintiffs bring this action on behalf of a proposed nationwide class of other persons who were sent the same illegal telemarketing call.

8. A class action is the best means of obtaining redress for the Defendants' illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

**Parties**

9.      Plaintiffs Stewart Abramson is a Pennsylvania resident, and a resident of this District.

10.     Plaintiff James Everett Shelton is a Pennsylvania resident who currently attends college in Ohio.

11.     Defendant Agentra, LLC is a Texas Corporation with its principal place of business in Dallas County, Texas. Agentra engages in telemarketing nationwide, including into this District. Agentra conducts business in this District, as it sent Mr. Abramson correspondence about the insurance contract that the co-defendants attempted to enter into on Agentra's behalf.

12.     Defendant Karen Marie Edwards is an individual residing at 25061 Via Las Lomas in Murrietta, CA. Ms. Edwards engages in telemarketing conduct into this District, as she did with the Plaintiffs.

13.     Defendant Angelic Marketing Group, L.L.C. is a Nevada corporation with its principal place of business in Reno, NV and a registered agent of Registered Agents, Inc., 401 Ryland St., Suite 200-A in Reno, NV 89502. Angelic Marketing Group, L.L.C engages in telemarketing conduct into this District, as it did with the Plaintiffs.

14.     Defendant Theresa Jones is an individual who resides at 6102 Mount Olympus Dr., Castro Valley, CA 94552. Ms. Jones, an officer of Angelic Marketing Group L.L.C. engages in telemarketing conduct into this District, as she did with the Plaintiffs.

15.     Defendant Matthew Jones is an individual who resides at 6457 Meadow Valley Lane in Reno, NV 89519. Mr. Jones engages in telemarketing conduct into this District, as he did with the Plaintiffs.

**Jurisdiction & Venue**

16. The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because the Plaintiffs' claims arise under federal law.

17. The Defendants regularly engage in business in this District, including sending telemarketing calls and insurance communications into this District, as they did with the Plaintiffs.

18. With respect to Ms. Edwards specifically, she retained Angelic Marketing Group, L.L.C. who made the original call to Mr. Abramson. She was then sued for sending those calls and continued her relationship with Angelic, and continued to authorize them to make the automated telemarketing calls targeting this District, as she did with Mr. Shelton.

19. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District, as the automated calls to the Plaintiffs were targeted this District.

**The Telephone Consumer Protection Act**

20. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

<u>The TCPA Prohibits Automated Telemarketing Calls</u>

21. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." *See* 47 U.S.C. § 227(b)(1)(A)(iii).

22. Pre-recorded calls to a residential telephone line are also prohibited. *See* 47 U.S.C. § 227(b)(1)(B).

23. The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A) or 47 U.S.C. § 227(b)(1)(B). *See* 47 U.S.C. § 227(b)(3).

24. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

25. The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003).

26. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

Individual Liability under the TCPA

27. Under the TCPA, an individual may be personally liable for the acts alleged in this Complaint pursuant to 47 U.S.C. § 217 of the TCPA, which reads, *inter alia*:

> [T]he act, omission, or failure of any officer, agent, or other person acting for or employed by any common carrier or user, acting within the scope of his employment, shall in every case be also deemed to be the act, omission, or failure of such carrier or user *as well as of that person*.

47. U.S.C. § 217.

28. When considering individual officer liability, other Courts have agreed that a corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *See, e.g.*, *Jackson Five Star Catering, Inc. v. Beason*, 2013 U.S. Dist. LEXIS 159985, *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA "where they 'had direct, personal participation in or personally authorized the conduct found to have violated the statute.'"); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415-16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

29. This is consistent with the general tort principle that corporate officers or agents are personally liable for those torts which they personally commit, or which they inspire or participate in, even though performed in the name of an artificial body.

30. Here, Mr. and Ms. Jones both personally participated in the automated telemarketing conduct and personally authorized the telemarketing conduct.

31. Mr. and Ms. Jones set up the pre-recorded message to be played, secured the telephone numbers to be called and ensured that each of the pre-recorded calls was made.

## **Factual Allegations**

32. Agentra provides health insurance contracts to consumers.

33.     However, Agentra's contact with the general public is limited. Instead, it relies on its third-party agents to engage new clients.

34.     Agentra's agents use telemarketing to promote its products and solicit new clients.

35.     These telemarketing efforts include the retention of Angelic and Mr. Jones, who use automated dialing equipment and pre-recorded messages to send automated calls.

36.     The company engages in use of this equipment because it allows for thousands of automated calls to be placed at one time, but its sales representatives, who are paid based on sales they complete, or on an hourly basis, only talk to individuals who respond. Therefore, the Defendants shift the burden of wasted time onto consumers.

**The March 7, 2018 Call to Abramson**

37.     On March 7, 2018, the Plaintiff Abramson received a pre-recorded telemarketing call on his cellular telephone number (412) 418-XXXX.

38.     This number had been on the National Do Not Call Registry for more than a year prior to the call.

39.     A pre-recorded message was left on the Plaintiff's voicemail that stated:

Hi this is Steve. I'm just calling you back about health insurance in your area. There's some great new plans where you live that we should definitely discuss. I assure you these plans will save you money and then still give you full coverage at the same time. So call me today at 915-245-4952. There's no need to wait for open enrollment to get a formal coverage any more. I specialize in your round insurance that most people do not even know about. Again my number is 915-245-4952. I look forward to hearing from you. Thanks.

40.     These facts, as well as the geographic distance between the Plaintiffs and the Defendant, as well as the fact that this call was part of a nationwide telemarketing campaign demonstrate that the call was made using an automatic telephone dialing system ("ATDS") as that term is defined in 47 U.S.C. § 227(a)(1).

41. In fact, the use of a pre-recorded message is itself indicative of an ATDS, as it would be illogical to hand-dial a telephone call only to play a pre-recorded sales message.

42. Through discovery, Agentra informed the Plaintiff that Angelic and Mr. Jones made this call.

43. To investigate the calling party at the time, who wasn't fully identified in the pre-recorded message, the Plaintiff Abramson called back the number in the recorded message (915-245-4952).

44. During his call to 915-245-4952, the Plaintiff Abramson spoke with a "Karen Edwards", who identified herself as an employee of Agentra.

45. Ms. Edwards also gave her company's phone number as 800-656-2204.

46. 800-656-2204 is the phone number for Agentra.

47. Ms. Edwards then attempted to sell the Plaintiff Abramson Agentra goods and services.

48. The Plaintiff subsequently received an e-mail from Agentra regarding these goods and services.

**The January 28, 2019 Call to Shelton**

49. On January 28, 2019, after the Plaintiff Abramson had filed this lawsuit, the Plaintiff Shelton received a pre-recorded call promoting Agentra's goods and services.

50. This call was to his sole cellular telephone number, (484) 626-XXXX.

51. The pre-recorded message advertised insurance services but did not identify the calling party.

52. To identify the party making the call, who wasn't identified in the pre-recorded message, the Plaintiff "pressed 1".

53. During the call, the Plaintiffs was offered Agentra goods and services.

54. The Plaintiff's agent of record for attempting to secure the sale was Karen Edwards.

55. The pre-recorded call was transmitted by Angelic and Mr. Jones.

56. The agent that was responsible for hiring Angelic and Mr. Jones to make the call was Karen Edwards.

57. Plaintiffs and the other call recipients were harmed by these calls. They were temporarily deprived of legitimate use of their phones because the phone line was tied up, they were charged for the calls and their privacy was improperly invaded.

58. Moreover, these calls injured Plaintiffs because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of Plaintiffs and the class.

**Agentra Directly Contacts the Plaintiff Abramson Related to the Telemarketing Call**

59. However, Agentra itself also directly contacted Mr. Abramson in Pennsylvania regarding these telemarketing solicitations.

60. Following the first pre-recorded call, Agentra sent the Plaintiffs e-mails regarding the Agentra policy being offered as a result of the call.

61. Following the second pre-recorded call, Agentra sent a mailing to the Plaintiffs's address in Pennsylvania, a communication following up on the telemarketing call.

62. That mailing was sent directly by Agentra to the Plaintiffs's address in Pennsylvania and it had a return address of:



4201 Spring Valley Road, Suite 1500
Dallas, Texas 75244

### Agentra's Liability for the Calls

63. Agentra is liable for the automated calls made by their agents hired to generate new business.

64. Agentra is a "person," as defined by 47 U.S.C. § 153(39).

65. The Federal Communication Commission ("FCC") is tasked with promulgating rules and orders related to enforcement of the TCPA. *See* 47 U.S.C. 227(b)(2).

66. The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

67. On May 9, 2013, the FCC confirmed this principle in a Declaratory Ruling holding that sellers such as Agentra may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent'

10

marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

68. More specifically, the May 2013 FCC Ruling held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. 28 FCC Rcd at 6586 (¶ 34).

69. The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

28 FCC Rcd at 6592 (¶ 46).

70. Agentra delegates to third parties, including the co-defendants, the ability to enter into contracts that bind Agentra in obligations, using parameters Agentra has provided to those agents to secure the contracts.

71. Agentra knowingly and actively accepted business that originated through the illegal telemarketing calls from the co-defendants.

72. In fact, Agentra accepted the business from illegal calls from the defendants, even though it had previously received complaints alleging that the third parties working on its behalf were violating the TCPA.

73. Furthermore, Agentra accepted the business from illegal calls from the defendants, even though *this lawsuit was pending*.

74. By hiring a company to make calls on its behalf, Agentra "manifest[ed] assent to another person . . . that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency.

75. Moreover, Agentra maintained interim control over the actions of the co-defendants.

76. For example, Agentra had absolute control over whether, and under what circumstances, it would accept a customer.

77. Agentra also had day-to-day control over the co-defendants' actions, including the ability to prohibit it from using an ATDS or pre-recorded messages to contact potential customers of Agentra.

78. Agentra also gave interim instructions to the co-defendants by providing the volume of calling and contracts it would purchase.

79. Agenta is also liable under a theory of apparent authority.

80. For example, Ms. Edwards identified herself to the Plaintiffs as an employee of Agentra.

81. On both pre-recorded calls, telemarketing representatives informed the Plaintiffs that if he had any questions, he should follow up with Agentra and provided Agentra's phone number.

82. Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-593 (¶ 46). Moreover, evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

## Class Action Statement Pursuant to LCvR 23

83. As authorized by Rule 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure and Rule 23(A) of the Local Rules for the Western District of Pennsylvania, Plaintiffs bring this action on behalf of all other persons or entities similarly situated throughout the United States.

84. The class of persons Plaintiffs propose to represent include:

All persons within the United States to whom: (a) Agentra and/or a third party acting on their behalf, made one or more non-emergency telephone calls; (b) that could have promoted Agentra's products or services; (c) to their cellular telephone number or a residential telephone number; (d) using an artificial or prerecorded voice; and (e) at any time in the period that begins four years before the date of the filing of this Complaint to trial.

85. Excluded from the Class are the Defendant, any entities in which the Defendant have a controlling interest, the Defendants' agents and employees, any Judge to whom this action is assigned, and any member of the Judge's staff and immediate family.

86. The proposed Class members are identifiable through phone records and phone number databases, which are with the Defendant or their agents.

87. The automated technology used to contact the Plaintiffs is capable of contacting hundreds of thousands of people a day, and so the potential Class members number in the thousands, at least. Individual joinder of these persons is impracticable.

13

88. Plaintiffs are a member of the Class.

89. There are questions of law and fact common to Plaintiffs and to the proposed Class, including but not limited to the following:

   a. Whether the Defendant used a pre-recorded message to make the calls at issue;

   b. Whether the Defendant placed telemarketing calls without obtaining the recipients' valid prior express written consent;

   c. Whether the Defendants' violations of the TCPA were negligent, willful, or knowing; and

   d. Whether the Plaintiffs and the class members are entitled to statutory damages because of Defendants' actions.

90. Plaintiffs' claims are based on the same facts and legal theories as the claims of all class members, and therefore are typical of the claims of class members, as the Plaintiffs and class members all received telephone calls through the same or similar dialing system and pre-recorded message on a cellular telephone line.

91. Plaintiffs are adequate representative of the Class because their interests do not conflict with the interests of the Class, they will fairly and adequately protect the interests of the Class, and they are represented by counsel skilled and experienced in class actions, including TCPA class actions.

92. The actions of the Defendants are generally applicable to the Class and to Plaintiffs.

93. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient

adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendant and/or their agents.

94. The likelihood that individual class members will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case, and given the small recoveries available through individual actions.

95. Plaintiffs are not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

## Legal Claims

### Count One:
### Violation of the TCPA, 47 U.S.C. § 227(b)

96. Plaintiffs incorporate the allegations from all previous paragraphs as if fully set forth herein.

97. The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to the cellular telephone numbers of Plaintiffs and members of the Class using an ATDS.

98. As a result of Defendants' and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf's violations of the TCPA, 47 U.S.C. § 227, Plaintiffs and members of the Class presumptively are entitled to an award of $500 in damages for each and every call made to their cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

99. If the Defendants' conduct is found to be knowing or willful, the Plaintiffs and members of the Class are entitled to an award of up to treble damages.

100. Plaintiffs and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant' behalf from violating the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to any cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in the future.

### Relief Sought

For himself and all class members, Plaintiffs requests the following relief:

A. Certification of the proposed Class;

B. Appointment of Plaintiffs as representative of the Class;

C. Appointment of the undersigned counsel as counsel for the Class;

D. A declaration that Defendant and/or its affiliates, agents, and/or other related entities' actions complained of herein violate the TCPA;

E. An order enjoining Defendant and/or its affiliates, agents, and/or other related entities, as provided by law, from engaging in the unlawful conduct set forth herein;

F. An award to Plaintiffs and the Class of damages, as allowed by law;

G. Leave to amend this Complaint to conform to the evidence presented at trial; and

H. Orders granting such other and further relief as the Court deems necessary, just, and proper.

**Plaintiffs request a jury trial as to all claims of the complaint so triable.**

        Plaintiffs,
        By Counsel,

By:  /s/ Anthony Paronich_____
    Anthony I. Paronich
    Paronich Law, P.C.
    350 Lincoln Street, Suite 2400
    Hingham, MA 02043
    (508) 221-1510
    anthony@paronichlaw.com
    *Pro Hac Vice*

    Clayton S. Morrow
    Email: csm@consumerlaw365.com
    Morrow & Artim, PC
    304 Ross Street, 7th Floor
    Pittsburgh, PA 15219
    Telephone: (412) 281-1250

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 9, 2019, I filed the foregoing with the Clerk of Court, which will automatically send notification of such filing to all attorneys of record by placing the same on the Court's electronic docket.

          */s/ Anthony Paronich*_____
          Anthony Paronich

17