## IN THE UNITED STATES DISTRICT COURT FOR
## THE WESTERN DISTRICT OF PENNSYLVANIA

STEWART ABRAMSON and JAMES EVERETT SHELTON, individually and on behalf of a class of all persons and entities similarly situated,

              Plaintiffs

    vs.

AGENTRA, LLC, ANGELIC MARKETING GROUP L.L.C., and MATTHEW JONES

        Defendants.

Case No. 18-cv-615-PLD

COMPLAINT-CLASS ACTION

**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF A CLASS
ACTION SETTLEMENT AND INCORPORATED MEMORANDUM IN SUPPORT**

## I.      INTRODUCTION

Plaintiffs Stewart Abramson and James Everett Shelton ("Plaintiffs"), and Defendant Agentra, LLC ("Settling Defendant") (the Plaintiffs and Settling Defendant collectively referred to herein as the "Parties") have reached a class action settlement of this matter. *See* ECF No. 119. The Settlement includes the establishment of a $275,000 Settlement Fund to be distributed to Settlement Class Members who file a valid claim after payment of notice and administration costs, Plaintiff's Counsel fees, and an Service Award to the Plaintiffs.[1] There is <u>no reverter</u> to the Defendant of any portion of the Settlement Fund. Notice will be effectuated through postcards mailed directly to Settlement Class Members identified in records obtained in discovery and a website through which Claim Forms may be obtained or directly submitted.

The Settlement was reached by counsel with a keen understanding of the merits of the claim and extensive experience in actions brought under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. The relief provided meets the applicable standards of fairness when taking into consideration the nature of Plaintiff's claims and the risks inherent in class litigation. Particularly relevant in this case, in addition to providing monetary relief to the class, the Defendant has agreed to take remedial steps to ensure its telemarketing going forward is TCPA compliant. Accordingly, Plaintiff respectfully requests that the Court: (1) grant preliminary approval of the Settlement; (2) provisionally certify the proposed Settlement Class; (3) appoint Plaintiffs' attorneys as Class Counsel; (4) appoint Plaintiffs as the representatives of the Settlement Class; (5) approve the proposed Notice Plan, Notice, and Claim Form; and (6) schedule the Final Approval Hearing and related dates as proposed.

---

[1] All capitalized terms not defined herein have the meanings set forth in the Parties' Class Action Settlement Agreement ("Settlement" or "Agreement"), attached as <u>Exhibit 1</u>.

## II.    NATURE AND BACKGROUND OF THE CASE

This case rests on alleged violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, which prohibits, *inter alia*, initiating any telephone solicitation to a cell phone using an ATDS or an artificial or prerecorded voice. *See* 47 U.S.C. § 227(b). The TCPA also makes it unlawful to receive more than one telephone call within any twelve-month period by or on behalf of the same entity after placing your number on the National Do Not Call Registry. *See* 47 U.S.C. § 227(c)(5). The TCPA provides a private cause of action to persons who receive such calls. *Id.* and 47 U.S.C. § 227(b)(3).

Plaintiffs are Pennsylvania residentis whose cellular telephone numbers have been called with unsolicited messages for years. On May 8, 2018, Plaintiff Stewart Abramson filed a putative class action complaint in the United Stated District Court for the Western District of Pennsylvania against Settling Defendant alleging claims for violations of the TCPA. On April 9, 2019, the Plaintiffs filed a Second Amended Complaint against the Settling Defendant and Angelic Marketing Group L.L.C. and Matthew Jones (collectively referred to herein as the "Non-Settling Defendants"). Since that time, the Parties engaged in discovery and other litigation relating to class certification and other issues. During discovery, the parties exchanged documents relating to the dialing system used to make the calls to putative class members, the relationship between the Defendant and its telemarketing vendor, as well as the targets of the telemarketing campaigns.

Near the conclusion of discovery, the parties mediated this case with Bruce Friedman at JAMS in Texas. While that mediation was unsuccessful, it eventually culminated in the Settlement Agreement before this Court.

### III.     THE PROPOSED SETTLEMENT

Pursuant to the Settlement Agreement, Plaintiffs seek certification of the following

Settlement Class for settlement purposes only:

> Plaintiffs and all persons contacted by Alexander Glynn, Ann Fils, Charles Donisi, Jacon Mcleod, Jake Gabbard, Jason Espinoza , Kristina Calo, Scott Shapiro, Steve Guerrero, Witfield Jean-Baptiste, or Theresa Jones (or on behalf of any individual Agent, whether by a downline sub-agent, vendor, or other third party) regarding the sale of a product offered by Agentra at any time between May 8, 2014 to February 1, 2020 that were contacted on a cellular telephone or while they were on the National Do Not Call Registry for at least 30 days.

(Agreement ¶ 2.0). The proposed Settlement encompasses approximately 15,000 individuals.

The proposed Settlement establishes a non-reversionary $275,000.00 Settlement Fund, which

will exclusively be used to pay: (1) cash settlement awards to Settlement Class Members; (2)

Settlement Administration Expenses; (3) attorney's fees of one-third of the total amount of the

Settlement Fund ($91,666.66) in addition to out of pocket expenses ($11,250.00), subject to

Court approval; and (4) a court-approved Service Award to each Class Representative of up to

$5,000. Each Settlement Class Member who submits a valid claim shall be entitled to receive an

equal *pro rata* amount of the Settlement Fund after all settlement administrative expenses,

Service Awards, and fee awards are paid out of the Settlement Fund. If all the attorneys' fees,

expenses, Service Award and settlement administration expenses are approved as requested,

Plaintiff's counsel estimate that the average Settlement Class Member payment would be

approximately $100.00.[2] In addition, the Defendant has agreed to take remedial steps to ensure

its telemarketing going forward is TCPA compliant. These steps include, but are not limited to:

---

[2] This assumes that 10% of consumers given notice will submit a claim. After the reduction of the Settlement Fund for attorneys' fees, litigation expenses, Service Award and administrative costs, it is estimated that the per pay out per consumer will be approximately $100.00.

- Implement enhanced TCPA compliance policies & procedures;

- Conduct commercially-reasonable due diligence on agents prior to engaging them and on a regular basis thereafter;

- Contractually require agent vendors to comply with all applicable laws, including the TCPA, when conducting lead generation activities on behalf of Settling Defendants; and

- Monitor and track consumer complaints to identify and remediate compliance concerns.

(Agreement. ¶4(a)(4)).

### A.    Opt-Out and Objection Procedures

Persons in the Settlement Class will have the opportunity to exclude themselves from the Settlement or object to its approval. (Agreement ¶10). The procedures and deadlines for filing Requests for Exclusion and objections will be conspicuously listed in the Class Notice and on the Settlement Website. The Class Notice informs Settlement Class Members that they will have an opportunity to appear and have their objections heard by this Court at a Final Approval Hearing. The Notice also informs Settlement Class Members that they will be bound by the release contained in the Settlement unless they timely exercise their opt-out right. (Agreement ¶15).

### B.    Release

The release is appropriately tailored to this case involving alleged violations like those alleged and is limited to those Settlement Class Members identified in the Class, which is compiled of data exchanged in discovery. In exchange for settlement benefits, the Settlement Class Members who do not timely opt out of the Settlement will release Defendant from any and all claims against the Defendant. The Release is limited to claims arising from telemarketing calls that generated leads for Agentra and is further limited only to the individuals contained on the Class List. (Agreement. ¶5).

### C.    Class Representative Service Award

If approved by the Court, the Plaintiffs will receive a Service Award of $5,000 each from the Settlement Fund. This award will compensate Plaintiffs for their time and effort and for the risk they undertook in prosecuting this case as well as participating in discovery.

### D.    Attorneys' Fees and Costs

If the settlement receives preliminary approval, Plaintiffs' Counsel will apply to the Court for an award of attorneys' fees in the amount of up to one-third of the total amount of the Settlement Fund in addition to out of pocket expenses of up to $11,250.00. An award of attorneys' fees and costs will compensate Plaintiffs' Counsel for the work already performed in relation to the settled claims, as well as the remaining work to be performed in documenting the Settlement, securing Court approval of the Settlement, making sure the Settlement is fairly implemented, and obtaining dismissal of the action.

### E.    Remaining Funds

Any amount remaining in the Settlement Fund after paying all approved Claim Forms, Settlement Administration Expenses, and any Fee Award and Service Award will be distributed to a Court-approved *cy pres* recipient. The Parties propose National Consumer Law Center as an appropriate recipient. (Agreement. ¶4(f)).

## IV.    NOTICE AND SETTLEMENT ADMINISTRATION

Settlement Administration Expenses will be exclusively paid from the Settlement Fund. The Parties have agreed upon, and propose that the Court approve, the nationally recognized class action administration firm KCC to be the Settlement Administrator, to implement the Class Notice, and to administer the Settlement, subject to review by counsel and the Court. (Agreement. ¶3). KCC estimates the costs to administer the Settlement will be approximately $40,000.

The threshold requirement concerning class notice is whether the means employed to distribute the notice was reasonably calculated to apprise the class of the pendency of the action, of the proposed settlement, and of the class members' right to opt out or object. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 159, 173 (1974); *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950). The mechanics of the notice process are left to the discretion of the court, subject only to the broad "reasonableness" standards imposed by due process.

The proposed Notice more than satisfies all requirements. The language of the Class Notice was negotiated and has been agreed to by the parties. The proposed Notice is written in simple terminology and includes: (1) a description of the Class; (2) a description of the claims asserted in the class actions; (3) a description of the Settlement; (4) the deadlines for filing a claim form and/or for exercising the right to opt-out (including limitation on the opt-out right); (5) the names of counsel for the class; (6) the fairness hearing date; (7) an explanation of eligibility for appearing at the fairness hearing; and (9) the deadline for filing objections to the settlement.

The contents of the proposed Notice are more than adequate. It provides Class Members with sufficient information to make an informed and intelligent decision whether to object to the Settlement. As such, it satisfies the content requirements of Rule 23. *See e.g. In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 203 (D. Me. 2003) ("notice must describe fairly, accurately and neutrally the claims and parties in the litigation, the terms of the proposed settlement, and the options available to individuals entitled to participate, including the right to exclude themselves from the class").

The dissemination of the Notice satisfies all due process requirements. The Settlement Agreement provides for notice to the class through first class mailing of the Class Notice. Class

Members will then be directed to a web site where they can request the delivery of a claim form or where they can file a claim electronically. The Notice will outline the allegations of the case, will advise class members of their right to opt out, and will and announce the date of the fairness hearing. In sum, the contents and dissemination of the proposed Notice constitutes the best notice practicable under the circumstances, and complies fully with the requirements of Rule 23.

## V.      ARGUMENT

### A.      The Class Should be Preliminarily Certified for Purposes of Settlement

"At the preliminary approval stage, the Court may conditionally certify the class for purposes of providing notice [of a proposed settlement]." *In re Imprelis Herbicide*, 2013 U.S. Dist. LEXIS 18332, at *8 (citing MANUAL FOR COMPLEX LITIGATION, § 21.632 (4th ed. 2004) ("The judge should make a preliminary determination that the proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b).")). *Accord In re GMC Pick-Up Truck*, 55 F.3d at 776-78 ("Only when the settlement is about to be finally approved does the court formally certify the class, thus binding the interests of its members by the settlement.").

In the circumstances here, the requirements of Rule 23 are readily met.

### 1.      Rule 23(a)'s Requirements Are Satisfied

FED. R. CIV. P. 23(a) requires that plaintiffs demonstrate the following:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

### a.      Numerosity

The numerosity requirement is met where the class is so numerous that joinder of all members is impracticable. *Carr v. Flowers Foods, Inc.,* No. 15-cv-6391, 2019 WL 2027299, at *8 (E.D. Pa. May 7, 2019) (Beetlestone, J.) (finding 4,521 recipients in TCPA action satisfied numerosity). "No minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001). Numerosity is satisfied here as the Defendant's records indicate that there are approximately 15,000 individuals are in the Settlement Class.

### b.      Commonality

The commonality requirement is met where "there are questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2); *Carr v. Flowers Foods, Inc.,* No. 15-cv-6391, 2019 WL 2027299, at *9. "Commonality requires a showing of the existence of questions of law or fact common to the class." *Hawk Valley, Inc. v. Taylor*, 301 F.R.D. 169, 182 (E.D. Pa. 2014) ("A common question is one arising from a common nucleus of operative facts."). "Generally, where defendants have engaged in standardized conduct towards members of the proposed class, common questions of law and fact exist. *Id.* "'[T]he commonality standard of Rule 23(a)(2) is not a high bar: it does not require identical claims or facts among class members.'" *Stewart v. Abraham*, 275 F.3d at 227 (quoting *Chiang v. Veneman*, 385 F.3d 256, 265 (3d Cir. 2004)). "'The commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class.'" *Id.* (citing *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994)).

Here, the claims asserted by Plaintiffs are predicated on allegations that Agentra engaged in unlawful marketing practices, by making calls to Settlement Class Members' telephones

through the use of an automatic telephone dialing system or through pre-recorded or artificial

voice messages without obtaining the requisite prior express consent, or by the fact that such

calls were made on their behalf. As such, Plaintiffs contend that issues of fact and law exist that

are common to all Settlement Class Members, such as:

- Whether Agentra is vicariously liable for the conduct of their insurance agents.

- Whether the dialing systems used constituted "Automatic Telephone Dialing
  Systems" as that term is defined under the TCPA;

- Whether the call recipients had provided their prior express consent prior to being
  called;

- Whether Agentra's violations were knowing or willful; and

- Whether Settlement Class Members are entitled to statutory damages under the
  TCPA.

These common questions are wholly sufficient to satisfy the commonality requirement for

settlement purposes. *Accord In re Urban Outfitters, Inc., Secs. Litig.*, No. 13-cv-5978, 2016 U.S.

Dist. LEXIS 24915, at *3-4 (E.D. Pa. Feb. 29, 2016) (preliminarily certifying class action).

### c.      Typicality

Rule 23(a)(3) requires that the claims of the class representative are "typical of the claims

… of the class." "The typicality requirement 'is designed to align the interests of the class and

the class representatives so that the latter will work to benefit the entire class through the pursuit

of their own goals.'" *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 531 (3d Cir. 2004)

(citation omitted). As the Third Circuit has held, "'[t]he concepts of commonality and typicality

are broadly defined and tend to merge.'" *Baby Neal v. Casey*, 43 F.3d at 56 (citation omitted).

"In this respect 'the commonality and typicality requirements both seek to ensure that the

interests of the absentees will be adequately represented.'" *Chakejian v. Equifax Info. Servs. LLC*, 256 F.R.D. 492, 498 (E.D. Pa. 2009) (quoting *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 311 (3d Cir. 1998)). "'[C]ases challenging the same unlawful conduct which affects both the named plaintiffs and the putative class usually satisfy the typicality requirement irrespective of the varying fact patterns underlying the individual claims.'" *Barel v. Bank of Am.*, 255 F.R.D. 393, 398 (E.D. Pa. 2009) (quoting *Stewart v. Abraham*, 275 F.3d at 227).

Here, typicality is met as Plaintiffs claim that Agentra's agents improperly engaged in telemarketing using an ATDS or an artificial or pre-recorded voice to contact Settlement Class Member's telephones without obtaining prior express consent and is thus liable for statutory damages under the TCPA. *Accord Gehrich v. Chase Bank U.S.*, 316 F.R.D. 215, 224 (N.D. Ill. 2016) (TCPA case; "The proposed class also satisfies commonality and typicality. Each class member suffered roughly the same alleged injury: receipt of at least one phone call … from [defendant] to her cell phone."); *Grannan v. Alliant Law Group, P.C.*, No. 10-cv-02803 HRL, 2012 U.S. Dist. LEXIS 8101, at *11 (N.D. Cal. Jan. 24, 2012) ("The claims of the Named Plaintiff are typical of the Settlement Class, and arise out of the TCPA violations committed by defendant Alliant.").

For settlement purposes, Plaintiffs are typical of the absent Settlement Class Members because they were allegedly subjected to the same Agentra practices, they suffered from the same injuries, and because both Plaintiffs and the Settlement Class will benefit from the relief provided by the Settlement.

### d.   Adequacy of Representation

"[T]he adequacy of representation requirement of Rule 23(a)(4) 'considers whether the named plaintiffs' interests are sufficiently aligned with the absentees', and it tests the

qualifications of the counsel to represent the class.'" *Cosgrove v. Citizens Auto. Fin., Inc.*, No. 09-cv-1095, 2011 U.S. Dist. LEXIS 95656, at *11 (E.D. Pa. Aug. 25, 2011) (quoting *In re Community Bank of N. Va.*, 418 F.3d 277, 303 (3d Cir. 2005)). This requirement "has two components": "[f]irst, the adequacy inquiry tests the qualifications of the counsel to represent the class"; and, "[s]econd, it seeks to uncover conflicts of interest between named parties and the class they seek to represent." *Carr v. Flowers Foods, Inc.*, 2019 WL 2027299, at *10 (quoting *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d at 532).

"A class representative is adequate if: (1) the class representative's counsel is competent to conduct a class action; and (2) the class representative's interests are not antagonistic to the class's interests." *In re Ravisent Techs., Inc. Secs. Litig.*, No. 00-cv-1014, 2005 U.S. Dist. LEXIS 6680, at *16 (E.D. Pa. Apr. 18, 2005) (quoting *In re GMC Pick-Up Truck*, 55 F.3d at 800-01).

Here, there is nothing to suggest that Plaintiffs have interests antagonistic to those of the Settlement Class Members. Plaintiffs' interest in maximizing a recovery for the Settlement Class is aligned with the interests of Settlement Class Members generally. Plaintiffs have obtained an advantageous Settlement that treats all Settlement Class Members in the same fashion and provides real value to all claimants. Moreover, Plaintiffs' Counsel have substantial experience in litigating consumer class actions and other complex commercial cases. *See* Exhibit 2, Declaration of Plaintiffs' Counsel. Plaintiffs and their counsel have, and will continue, to zealously represent the interests of the proposed Settlement Class.

> **2.      Rule 23(b)(3)'s requirements are satisfied**

The Settlement Class also satisfies FED. R. CIV. P. 23(b)(3), which requires that the court find that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

### a.      Predominance

The Rule 23(b)(3) predominance inquiry "measures whether the class is sufficiently cohesive to warrant certification." *Newton v. Merrill Lynch Pierce, Fenner & Smith, Inc.,* 259 F.3d 154, 187 (3d Cir. 2001) (citing *Amchem Prods., Inc., v. Windsor*, 521 U.S. 591, 623 (1997)). [T]he predominance inquiry focuses a common course of conduct by which the defendant may have injured class members." *Barel v. Bank of Am.*, 255 F.R.D. at 399 (citing *In re Prudential Ins.*, 148 F.3d at 314). For example, in *Barel v. Bank of Am.*, 255 F.R.D. 393, involving consumer claims under the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq.* ("FCRA"), the court found predominance satisfied where the defendant was alleged to have engaged "in a common course of conduct" and where "all class members, by definition, were subjected to the same practices." *Id.* at 399 ("The predominating, indeed the dispositive, issue is whether Defendant willfully violated the FCRA by obtaining consumer reports of non-customers.").

In this case, common legal issues predominate. All claims arise under TCPA and seek statutory damages. The calls to all class members promoted Agentra. The calls to all class members are identified by the Defendant's records.  Whether or not this technology implicates the TCPA is a common question of fact and law that relates to all class members. Whether or Agentra would be vicariously liable for the calling conduct will not cause predominance issues as the conduct as it relates to class members is identical for purposes of an agency analysis.

Frequently in TCPA cases, defendants attempt to show that class members provided prior express written consent to receive telemarketing calls, and that determining the validity of such consent requires consumer by consumer factual "mini-trials." Here, even though prior express written consent is undisputedly an affirmative defense, the Plaintiff has conclusively disproven the only consent theory offered. In any event, the Plaintiff can attack any asserted consent

defense using common proof. *See Stern v. Docircle, Inc.,* 2014 U.S. Dist. LEXIS 17949 *20 (C.D. Cal. Jan. 29, 2014) (granting TCPA class certification and noting that consent defenses do not defeat predominance where consent will be proved or disproved on evidence and theories applicable to the entire class); *Van Patten v. Vertical Fitness Group, LLC,* 2013 U.S. Dist. LEXIS 189845 *16-18 (S.D. Cal. Nov. 8, 2013) (granting TCPA class certification and explaining that where consent defenses are subject to common proof individual issues do not predominate over common ones).

### b.    Superiority

The other requirement of Rule 23(b)(3) is the superiority requirement, *i.e.*, that a class action suit provides the best way of managing and adjudicating the claims at issue. "The superiority requirement 'asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication.'" *Good v. Nationwide Credit, Inc.*, No. 14-cv-4295, 2016 U.S. Dist. LEXIS 32154, at *22 (E.D. Pa. Mar. 14, 2016) (quoting *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d at 533-34). "When assessing superiority and '[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, ... for the proposal is that there be no trial.'" *Id.* at *23 (quoting *Amchem Prods., Inc., v. Windsor*, 521 U.S. at 620).

Here, the Settlement provides redress for Settlement Class Members who individually may have potential damages of several thousand dollars at most and who thus are economically foreclosed from otherwise pursuing any relief. Notably, the TCPA does not allow for the recovery of attorneys fees. To the extent Settlement Class Members did pursue litigation outside of the class context, the Settlement would avoid potential individual cases that could be filed by the thousands of Settlement Class Members for the same claims asserted here.

Unsurprisingly, courts routinely find class actions to be the superior method of adjudicating claims in the TCPA context. *See e.g. Sandusky Wellness Ctr., LLC v. Wagner Wellness, Inc.,* 2014 U.S. Dist. LEXIS 166275, 14-15 (N.D. Ohio Dec. 1, 2014) ("This type of case weighs in favor of the class action as a superior device. Under the TCPA, the maximum recovery for each class member is $1,500, and it does not allow for fee shifting. Hence, individual class members are unlikely to litigate TCPA claims.") As one federal court found while certifying a TCPA case:

> Jurists and commentators have long debated the merits of the modern class action and the public policies behind Rule 23…It is the view of this Court that the instant case highlights one of the strongest justifications for the class action device: its regulatory function…A statute such as the TCPA, which provides for a relatively small recovery for individual violations but is designed to deter conduct directed against a large number of individuals, can be effectively enforced only if consumers have available a mechanism that makes it economically feasible to bring their claims. Without the prospect of a class action suit, corporations balancing the costs and benefits of violating the TCPA are unlikely to be deterred because individual claims will not impose the level of liability that would outweigh the potential benefits of violating the statute.

*Bee, Denning, Inc. v. Capital Alliance Group*, 2015 U.S. Dist. LEXIS 129495, 37-38 (S.D. Cal. Sept. 24, 2015). The proposed class meets the superiority requirement of Rule 23(b)(3).

### B.     Preliminary Approval of the Proposed Settlement Is Warranted

The settlement of a class action requires court approval. FED. R. CIV. P. 23(e)(2). Review of a proposed class action settlement typically proceeds in two stages. At the first stage, the parties submit the proposed settlement to the court, which must make a preliminary fairness evaluation. If the proposed settlement is preliminarily acceptable, the court then directs that notice be provided to all class members who would be bound by the proposed settlement in order to afford them an opportunity to be heard on, object to, or opt out of the settlement. *See* FED. R. CIV. P. 23(c)(3), (e)(1), (e)(5). At the second stage, after class members are notified of the settlement, the court holds a formal fairness hearing. *See* FED. R. CIV. P. 23(e)(1)(B). If the

court concludes that the settlement is "fair, reasonable and adequate," the settlement is given final approval. FED. R. CIV. P. 23(e)(2). *See In re Nat'l Football League Players' Concussion Injury Litig.*, 301 F.R.D. 191, 197 (E.D. Pa. 2014).

Plaintiffs now seek preliminary approval of the settlement pursuant to Rule 23(e). "The preliminary determination establishes an initial presumption of fairness." *In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig*., 55 F.3d 768, 784 (3d Cir. 1995). Under Rule 23, a settlement falls within the "range of possible approval" if there is a conceivable basis for presuming that the standard applied for final approval-fairness, adequacy, and reasonableness- will be satisfied. *Id.* In making a preliminary determination, the Court should look to whether there are any obvious deficiencies that would cast doubt on the proposed settlement's fairness. The Court should also consider whether the negotiations occurred at arm's length, whether there was significant investigation of Plaintiffs' claims, and whether the proposed settlement provides unwarranted preferential treatment to certain class members. *Id.* (citing *In re Linerboard Antitrust Litig*., 292 F. Supp. 2d 631, 638 (E.D. Pa. 2003)).

The Third Circuit has long recognized that there is a "strong presumption in favor of voluntary settlement agreements." *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594 (3d Cir. 2010) (citing *Pennwalt Corp. v. Plough*, 676 F.2d 77, 79-80 (3d Cir. 1982)). "This policy is also evident in the Federal Rules of Civil Procedure and the District Court's Local Rules, which encourage facilitating the settlement of cases." *Id.* "This presumption is especially strong in 'class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation.'" *Id.* at 595 (quoting *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995)). "Settlement agreements are to be encouraged because they promote the amicable resolution of disputes and lighten the increasing load of

litigation faced by the federal courts." *Id.* In addition, "the parties may also gain significantly from avoiding the costs and risks of a lengthy and complex trial." *Id.*

In determining whether class action settlements should be approved, "[c]ourts judge the fairness of a proposed compromise by weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement. [Citation omitted] . . . They do not decide the merits of the case or resolve unsettled legal questions." *Carson v. American Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981). The settlement is well within "the range of possible approval" and should be preliminarily approved in all respects.

Under the Settlement Agreement, it is anticipated that Authorized Claimants will each receive $100. The Parties have designed a very simple claim process in an order to maximize the number of Settlement Class Members who submit claims.

The value of the Settlement is squarely in line with other TCPA settlements. For example, in *Vasco v. Power Home Remodeling Group LLC*, No. 15-cv-4623, 2016 U.S. Dist. LEXIS 141044 (E.D. Pa. Oct. 12, 2016), the Court approved a TCPA class action settlement that provided for payments of $27 per claimant. There, the court found that "[t]his amount is consistent with other class action settlements under the Act." *Id.* at *23 (citing, *e.g.*, *Kolinek v. Walgreen Co.*, No. 13-cv-4806, 2015 WL 7450759, at *7 (N.D. Ill. Nov. 23, 2015) ($30); *In re Capital One TCPA Litig.*, 80 F. Supp. 3d 781, 789 (N.D. Ill. 2015) ($34.60); *Rose v. Bank of Am. Corp.*, No. 11-cv-02390-EJD, 2014 U.S. Dist. LEXIS 121641, at *30 (N.D. Cal. Aug. 29, 2014) ($20 to $40)).

Similarly, in *Gehrich*, 316 F.R.D. 215, another court approved a TCPA class action settlement of $34 million. There, the court found that while "[t]he theoretical recovery per [class] member is about $1.00", "[t]he actual recovery per claimant is approximately $52.50." *Id.* at 23.

Although "that recovery is well below the $500 statutory recovery available for each call", the court found that "the recovery falls well within the range of recoveries in other recent TCPA class actions." *Id.* As the court in *Gehrich* held, "'[t]he essential point here is that the court should not 'reject[]' a settlement 'solely because it does not provide a complete victory to plaintiffs,' for 'the essence of settlement is compromise.'" *Id.* (quoting *Isby v. Bayh*, 75 F.3d 1191, 1200 (7th Cir. 1996)). "An acceptable settlement is properly 'a bilateral exchange ... where both sides gain as well as lose something.'" *Id.* (quoting *In re Gen. Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1135 (7th Cir. 1979)). Moreover, the *Gehrich* court reasoned:

> Individual class members receive less than the maximum value of their TCPA claims, but they receive a payout without having suffered anything beyond a few unwanted calls or texts, they receive it (reasonably) quickly, and they receive it without the time, expense, and uncertainty of litigation. [Defendant], for its part, buys peace and mitigates risk. However improbable it may be, complete victory for Plaintiffs at $500 or $1,500 per class member could bankrupt [the defendant]. Even assuming (conservatively and unrealistically) only one violation per class member, if Plaintiffs won a complete victory, [defendant] Chase would owe $16.1 billion, and $48.4 billion if the jury found that Chase's violations were knowing or willful. A $52.50 recovery in the hand is better than a $500 or $1,500 recovery that must be chased through the bankruptcy courts.

*Id.* at 228.

While Agentra has agreed to settle, it was not without significant defenses. One of those risks focuses on the question of whether the dialing system, which Plaintiff contends is a predictive dialer, is an "Automatic Telephone Dialing System" under the TCPA. As an initial matter, on July 10, 2015, the FCC released an omnibus declaratory ruling clarifying numerous relevant issues affecting the TCPA, including definition of an ATDS under the statute[3]—which was overturned in part in *ACA Int'l v. FCC*, 885 F.3d 687 (D.C. Cir. 2018). Following the D.C.

---

[3]       *See* https://apps.fcc.gov/edocs_public/attachmatch/FCC-15-72A1.pdf.

Circuit's decision in *ACA Int'l* courts have been split on what constitutes an ATDS under the

TCPA.

There is a substantial amount of cases finding predictive dialers are likely not an ATDS.

The Third Circuit Court of Appeals adopted a similar stance in *Dominguez v. Yahoo, Inc.*:

> The decision in *ACA International* has narrowed the scope of this appeal. In light of the D.C. Circuit's holding, we interpret the statutory definition of an autodialer as we did prior to the issuance of 2015 Declaratory Ruling. Dominguez can no longer rely on his argument that the Email SMS Service had the latent or potential capacity to function as autodialer. The only remaining question, then, is whether Dominguez provided evidence to show that the Email SMS Service had the present capacity to function [**6] as [an] autodialer…
>
> Ultimately, Dominguez cannot point to any evidence that creates a genuine dispute of fact as to whether the Email SMS Service had the present capacity to function as an autodialer by generating random or sequential telephone numbers and dialing those numbers. On the contrary, the record indicates that the Email SMS Service sent messages only to numbers that had been individually and manually inputted into its system by a user. There can be little doubt that Dominguez suffered great annoyance as a result of the unwanted text messages. But those messages were sent precisely because the prior owner of Dominguez's telephone number had affirmatively opted to receive them, not because of random number generation. The TCPA's prohibition on autodialers is therefore not the proper means of redress.

*Dominguez v. Yahoo, Inc.*, 894 F.3d 116, 119, 121 (3d Cir. 2018). The Second Circuit seems to

agree with the Third Circuit in *King v. Time Warner Cable Inc*., 894 F.3d 473, n.5 (2d Cir.

2018), although *King* remanded the ATDS issue to the District Court for further factual findings.

In *Glasser v. Hilton Grand Vacations Co., LLC*, 948 F.3d 1301, 1306 (11th Cir. 2020), the

Eleventh Circuit weighed in on the definition of an ATDS, holding that only those devices that

dial randomly or sequentially generated numbers (without any human intervention whatsoever)

constitute an ATDS. Conversely, "predictive dialers", which the Eleventh Circuit defined as

devices "that call a list of pre-determined potential customers"—are not an ATDS under the

TCPA. *Id.* at 1308–09. This is because predictive dialers do not "randomly or sequentially" dial

numbers, but instead dial previously identified numbers from a stored list. *Id.* It is undisputed

that the dialing system used in this case does not "create" or generate the telephone numbers it dials out of thin air. Instead, it takes the telephone numbers that Defendant has purchased and generates a sequence of phone numbers for calls that is carried out when Defendant's telemarketers execute a computer command to begin the calling campaign. The dialer then makes those calls, constantly resequencing the list for future calls based upon, for example, unanswered calls or busy signals.

Class certification is also far from automatic in TCPA cases. *Compare Tomeo v. CitiGroup, Inc.*, No. 13 C 4046, 2018 WL 4627386, at *1 (N.D. Ill. Sept. 27, 2018) (denying class certification in TCPA case after nearly five years of hard-fought discovery and litigation); *Jamison v. First Credit Servs.*, 290 F.R.D. 92, 107 (N.D. Ill. 2013) (finding issues of consent to predominate in TCPA action) and *Balschmiter v. TD Auto Fin. LLC*, 303 F.R.D. 508, 527 (E.D. Wis. 2014) (same), with *Saf-T-Gard Int'l v. Vanguard Energy Servs.*, No. 12-3671, 2012 WL 6106714 (N.D. Ill. Dec. 6, 2012) (certifying a class in a TCPA action and finding no evidence supported the view that issues of consent would be individualized) and *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 253 (N.D. Ill. 2014) (same).

Even if the class were certified, the Plaintiffs would still have a substantial obstacle regarding Agentra's vicarious liability for the conduct of the vendors of their insurance agents. The Supreme Court in *Campbell-Ewald Co. v. Gomez*, 136 S.Ct. 663, 193 L. Ed. 2d 571 (2016), held traditional agency and vicarious liability principles are required in order to be found liable under the TCPA. However, Agentra did not have contractual privity with the entity that physically initiated the calls, which would make such a finding more difficult. *See e.g. Cunningham v. Capital Advance Sols., LLC*, Civil Action No. 17-13050 (FLW), 2018 U.S. Dist. LEXIS 197590 (D.N.J. Nov. 20, 2018). In fact, other district courts in the Third Circuit have

entered summary judgment in favor of TCPA defendants in such a situation. *See Klein v. Just Energy Grp., Inc.,* Civil Action No. 14-1050, 2016 U.S. Dist. LEXIS 84447, at *43 (W.D. Pa. June 29, 2016) ("In sum, the evidence adduced in this case is not sufficient to support a finding by a reasonable jury that Collectcents was acting as an agent (whether under actual authority, apparent authority or ratification theories) for any of the Just Energy Defendants in making any of the calls.")

In addition, at least some courts view awards of aggregate, statutory damages with skepticism and reduce such awards — even after a plaintiff has prevailed on the merits — on due process grounds. *See, e.g., Aliano v. Joe Caputo & Sons – Algonquin, Inc.*, No. 09-910, 2011 WL 1706061, at *4 (N.D. Ill. May 5, 2011) ("[T]he Court cannot fathom how the minimum statutory damages award for willful FACTA violations in this case — between $100 and $1,000 per violation — would not violate Defendant's due process rights …. Such an award, although authorized by statute, would be shocking, grossly excessive, and punitive in nature."); *but see Phillips Randolph Enters., LLC v. Rice Fields*, No. 06-4968, 2007 WL 129052, at *3 (N.D. Ill. Jan. 11, 2007) ("Contrary to [defendant's] implicit position, the Due Process clause of the 5th Amendment does not impose upon Congress an obligation to make illegal behavior affordable, particularly for multiple violations.").

Moreover, the narrative of the Defendant's telemarketing compliance efforts could present a case for reduction of any damages awarded after trial and some courts have applied this principle in the TCPA context. For example, the Court explained in *Golan v. Veritas Entm't, LLC* before reducing the damages awarded in that TCPA class action lawsuit to $10 a call:

> Three courts have reduced damages awards in TCPA cases. In *Texas v. American Blastfax, Incorporated*, plaintiff, the state of Texas, brought suit against defendants, American Blastfax, Incorporated and two of its officers and directors. 164 F.Supp.2d 892, 894 (W.D. Tex. 2001). The district court held defendant Blastfax

had violated the TCPA by sending unsolicited intrastate fax advertisements. *Id.* at 894. Defendants presented evidence the average cost of receiving an unwanted fax is seven cents per page. *Id.* at 900. Although it stated the TCPA provides for liquidated damages of $500 for each violation, the district court found it would be inequitable and unreasonable to award that amount for each violation. *Id.* Instead, the district court interpreted the provision as providing for "up to" $500 per violation. *Id.* The district court found a reasonable award was seven cents per violation, which it trebled because defendants' conduct was willful and knowing, for a total amount of $495,375…

The next case which reduced damages for TCPA violations is *Maryland v. Universal Elections, Incorporated*, 862 F.Supp.2d 457 (D. Md. 2012). The state of Maryland brought a civil enforcement action against Universal Actions, Incorporated and two individuals, alleging defendants violated the TCPA by making 112,000 prerecorded telephone calls to residents on Election Day. *Id.* at 459. The district court found defendants violated the TCPA. *Id.* at 463-464. The base damages award could have been $34,000,000 and could have exceeded one hundred million dollars if trebled, because the violations were knowing. *Id.* at 464. The state of Maryland requested $10,424,550. *Id.* at 465. The district court awarded $1,000,000. *Id.* at 466. The district court reasoned "a $10 million penalty is disproportionate to the size of the company and the defendants' presumptive ability to pay." *Id.*

The third case is *United States v. Dish Network, LLC*, No. 09-3073, 256 F. Supp. 3d 810, 2017 U.S. Dist. LEXIS 85543, 2017 WL 2427297 (C.D. Ill. Jun. 5, 2017). Plaintiffs, the United States and the States of California, Illinois, North Carolina, and Ohio, alleged defendant, Dish Network, LLC, violated the TCPA, as well as several state laws and regulations, by placing telephone calls to telephone numbers on the do-not-call list. 2017 U.S. Dist. LEXIS 85543, [WL]at *1. After a bench trial, the Central District of Illinois entered judgment in favor of the plaintiffs and against the defendant. *Id.* Plaintiffs asked for a damages award of $2.1 billion. 2017 U.S. Dist. LEXIS 85543, [WL] at *139. The district court awarded civil penalties and statutory damages of $280,000,000, approximately 20 percent of the defendant's after-tax profits for 2016, finding this amount was "appropriate and constitutionally proportionate, reasonable, and consistent with due process." *Id.* The district court further reasoned "[t]he amount represents a significant penalty for the millions and millions of Do-Not-Call violations caused by Dish over years and years of careless and reckless conduct." *Id.* Finally, the district court stated "[t]he injury to consumers, the disregard for the law, and the steadfast refusal to accept responsibility require a significant and substantial monetary award."

*Golan v. Veritas Entm't, LLC*, No. 4:14CV00069 ERW, 2017 U.S. Dist. LEXIS 144501, at *6-9

(E.D. Mo. Sep. 7, 2017).

By reaching this Settlement, the parties will avoid protracted litigation and will establish a means for prompt resolution of Class Members' claims against Defendant. These avenues of relief provide a benefit to Class Members. In addition, however, Defendant has agreed to take remedial measures to ensure that its telemarketing is TCPA compliant going forward. Given the alternative of long and complex litigation before this Court, the risks involved in such litigation, the Defendant's financial position, and the possibility of further appellate litigation, the availability of prompt relief under the Settlement is highly beneficial to the Class.

## C.      The Form and Method of Notice Should be Approved

"Federal Rule of Civil Procedure 23 requires a district court approving a class action settlement to 'direct notice in a reasonable manner to all class members who would be bound by the proposal.'" *In re DVI, Inc. Secs. Litig.*, No. 03-5336, 2016 U.S. Dist. LEXIS 40473, at *22-23 (E.D. Pa. Mar. 28, 2016) (quoting FED. R. CIV. P. 23(e)(1)). "Whereas 'the Rule provides broad discretion to district courts with respect to the notice's form and content, it must satisfy the requirements of due process.'" *Id.* at *23 (quoting *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 180 (3d Cir. 2013)). "Generally, 'there has been a failure of due process only in those cases where it cannot be said that the procedure adopted, fairly insures the protection of the interests of absent parties who are to be bound by it.'" *Id.* (quoting *In re Diet Drugs Prods. Liab. Litig.*, 431 F.3d 141, 145 (3d Cir. 2005)).

### 1.      The Form of Notice is Appropriate

"First, Rule 23(c)(2)(B) requires that class members be given the best notice practicable under the circumstances, including individual notice to all potential class members identifiable through reasonable efforts. Specifically, the Rule provides that such notice must, in clear, concise, and plain language, state: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) the class member's right to enter an

appearance by an attorney; (v) the class member's right to be excluded from the class; (vi) the

time and manner for requesting exclusion; and (vii) the binding effect of settlement on class

members." *Good v. Nationwide Credit, Inc.*, 2016 U.S. Dist. LEXIS 32154, at *25-26 (citing

FED. R. CIV. P. 23(c)(2)(B). "Second, Rule 23(e) requires notification to all members of the

class of the terms of any proposed settlement. FED. R.CIV. P. 23(e). This 'notice is designed to

summarize the litigation and the settlement' and 'to apprise class members of the right and

opportunity to inspect the complete settlement documents, papers, and pleadings filed in the

litigation.'" *Id.* (citing *In re Prudential Ins.*, 148 F.3d at 327).

Here, the proposed Notice provides detailed information about the Settlement, including:

(1) a comprehensive summary of its terms; (2) Class Counsel's intent to request attorneys' fees,

reimbursement of costs and expenses, and incentive awards for the Plaintiffs; and (3) detailed

information about the Released Claims. *See* Notice. In addition, the Notice provides information

about the Final Approval Hearing date, the right of Settlement Class Members to seek exclusion

from the Settlement Class or to object to the proposed Settlement (as well as the deadlines and

procedure for doing so), and the procedure to receive additional information. *Id.* In short, the

Notice is intended to fully inform Settlement Class Members of the lawsuit, the proposed

Settlement, and the information they need to make informed decisions about their rights.

### 2.     The Method of Notice Comports with Due Process and is Reasonable

"'[T]o satisfy due process, notice to class members must be reasonably calculated under

all the circumstances, to apprise interested parties of the pendency of the action and afford them

an opportunity to present their objections.'" *Glaberson v. Comcast Corp.*, 2014 U.S. Dist. LEXIS

172040, at *18 (quoting *In re Ikon Office Solutions, Inc. Secs. Litig.*, 194 F.R.D. 166, 174 (E.D.

Pa. 2000)). "Individual notice should be provided to all members who can be identified through reasonable efforts." *Id.*

A copy of the Notice will be on a postcard that will be mailed to each Settlement Class Member, all of who are comprised from Agentra's business records. In addition, the Notice will be available via the Settlement Administrator's website and will allow interested Settlement Class Members to complete and submit Claim Forms online. Accordingly, the proposed form and manner of notice are reasonable and adequate, in accord with due process and Rule 23, and should be approved.

## VII.    SCHEDULE OF EVENTS

In connection with preliminary approval of the Settlement, the Court must set a final approval hearing date, dates for mailing and publication of the Notice and deadlines for filing claims, objecting to the Settlement, opting out of the Class, and filing papers in support of the Settlement. The Parties propose the following schedule:

| | |
|---|---|
| **Notice mailed to Class and Published on the Website ("Notice Date")** | **30 Days After Entry of Preliminary Approval Order** |
| **Objection, Exclusion and Claim Deadline** | **90 Days After Entry of Preliminary Approval Order** |
| **Deadline for filing papers in support of final approval of the Settlement.** | **14 Days Before Final Approval Hearing** |
| **Final Approval Hearing** | **At the Court's convenience but at least 120 days after the Entry of Preliminary Approval** |

## VI.    CONCLUSION

For the reasons set forth above and the entire record in this litigation, the Settlement warrants this Court's preliminary approval, and Plaintiff's Counsel respectfully requests that the

motion be granted. Along with this memorandum, counsel will submit a Draft Preliminary

Approval Order, attached as Exhibit 3.

Respectfully submitted,

*/s/ Anthony I. Paronich*
Anthony I. Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com

*Attorneys for Plaintiffs and the Proposed Class*

## CERTIFICATE OF SERVICE

I hereby certify that on August 20, 2020, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system which will send notification to all counsel of

record.

*/s/ Anthony I. Paronich*
Anthony I. Paronich