IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STEWART ABRAMSON and JAMES EVERETT SHELTON, individually and on behalf of a class of all persons and entities similarly situated,<br><br>    *Plaintiffs,*<br><br>MONICA ABBOUD, individually and on behalf of all others similarly situated,<br><br>    *Plaintiff-Intervenor*,<br><br> v.<br><br>AGENTRA, LLC, ANGELIC MARKETING GROUP L.L.C., and MATTHEW JONES,<br><br>    *Defendants.* | Case No. 2:18-cv-00615-PLD<br><br>**CLASS ACTION** |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO INTERVENE AND TO MODIFY PROTECTIVE ORDER**

i

**TABLE OF CONTENTS**

I. INTRODUCTION ............................................................................................................ 1

II. BACKGROUND .............................................................................................................. 1

III. ARGUMENT .................................................................................................................... 4

    A. The Court should find that Plaintiff-Intervenor Abboud Is Entitled To Intervene In This Matter to Protect Her and the Class's Interests ................... 5

        1. The Court should grant intervention as a matter of right. ................... 5

        2. Abboud satisfies the requirements for permissive intervention as well. ....................................................................................................... 9

    B. The Court Should Modify The Protective Order In This Matter To Designate Plaintiff-Intervenor As A Qualified Person ..................................................... 10

IV. CONCLUSION ............................................................................................................... 14

**EXHIBIT A:** *Abboud v. Agentra* Complaint

**EXHIBIT B: Declaration of Patrick Peluso**

**EXHIBIT C:** *Abboud v. Agentra* Motion for Class Certification

**EXHIBIT D:** *Abboud v. Agentra* Order Certifying Classes

# MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO INTERVENE AND TO MODIFY PROTECTIVE ORDER

## I.   INTRODUCTION

Since January 2019, Abboud has been actively litigating a class action against Agentra for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA") in a separate case captioned *Abboud v. Agentra, LLC*, 3:19-cv-00120-X (N.D. Tex.) ("*Abboud* case"). Her claims are similar (though not entirely identical) to those brought by Plaintiffs, but it was not until Plaintiffs' Motion for Preliminary Approval that Abboud became aware that the settlement class in this case overlapped with and would subsume one of her classes, for which she has successfully achieved certification.

The settlement reached in this case ("Abramson Settlement" or "Settlement") extends well beyond the calls alleged by Plaintiffs, and Abboud suspects that the value of the Abramson Settlement is insufficient to redress the injuries suffered by Plaintiff-Intervenor, her impacted class, and the numerous other consumers now encompassed in settlement class. Accordingly, to protect the interests of herself and the class members that she represents, Abboud seeks to intervene pursuant to Rule 24 and to modify the protective order in place in this matter so that she may evaluate any financial documents supporting the Settlement to determine how best to proceed with respect to the settlement.

## II.   BACKGROUND

*Abboud's case against Agentra*

On January 15, 2019, Plaintiff-Intervenor Monica Abboud filed a class action complaint against Agentra in the Northern District of Texas, alleging serial violations of the TCPA. (*See Abboud v. Agentra* Complaint, attached hereto as Exhibit A.) Abboud alleged receipt of both texts and calls from Agentra, and she sought to represent two classes of similarly-situated

1

individuals: (1) consumers who received texts or calls after "consenting" in the same manner that Defendant claimed Abboud consented; and (2) consumers who continued to receive texts or calls after asking Agentra that they "stop." (Ex. A at ¶ 25.) Abboud became aware of the Plaintiffs' suit on or around January 15, 2020. (*See* Declaration of Attorney Patrick H. Peluso, attached hereto as Exhibit B, at ¶ 3.) Plaintiffs had already commenced their action against Agentra at the time that Abboud filed her complaint, but the Second Amended Complaint—filed on April 9, 2019—pertained only to prerecorded voice calls. (Dkt. 56 at ¶ 84.) Shortly after January 15, 2020, Abboud's counsel made multiple attempts to communicate with Plaintiffs' counsel by both email and telephone regarding any potential overlap between their cases, but all efforts to reach counsel were unsuccessful. (Ex. B at ¶ 4.)

Abboud and Agentra participated in a mediation in Dallas, Texas on January 24, 2020. (*Id.* ¶ 5.) As stated above, it was only on January 15, 2020 that Agentra's counsel made Abboud's counsel aware of the existence of this action. (*Id.* ¶ 3.) Abboud was also informed that the mediator, Mr. Bruce Friedman, had previously mediated between Plaintiffs and Agentra but that no settlement had been reached. (*Id.* ¶ 6.) Prior to the mediation, Abboud's counsel communicated with Mr. Friedman and expressed a concern that, given the late disclosure of their negotiations with counsel in this matter, Agentra may be attempting an impermissible reverse auction. (*Id.* ¶ 7.) During Abboud's mediation, Agentra produced certain financial documents. (*Id.* ¶ 8.) Abboud and her counsel determined such information was insufficient to make a fair evaluation of Agentra's financial position. (*Id.*) Ultimately, the mediation between Abboud and Agentra was unsuccessful, and no settlement was reached. (*Id.* ¶ 9.)

On March 2, 2020, Abboud filed a motion to certify two classes in her case: a "text class" of consumers who received texts from Agentra's internal "CRM" system, and an "agent class" of

consumers who were called by the same two agents that called her—Health Care Enrollment Center ("HCEC") and Life and Health Insurance Services ("LHIS"). (*See Abboud v. Agentra* Motion for Class Certification, attached hereto as Exhibit C, at 7–8.) HCEC is an apparent d/b/a of Stellar Communications, Inc. and agent Jake Gabbard, and LHIS is a company run by Jason Espinoza. (*Id.* at 4.)

*Plaintiffs and Agentra attempt to reach a settlement*

Around this same time, Plaintiffs in the instant action and Agentra were apparently continuing to negotiate a settlement, which they seemingly finalized on April 6, 2020, approximately one month after Abboud's motion for class certification was filed. (Dkt. 103, 105, 110.) Plaintiffs and Agentra filed a settlement report that did not indicate the amount or extent of the settlement; rather, it merely indicated that a "class action settlement agreement" had been reached that would require court approval. (Dkt. 110.)

For the next several months, Plaintiffs in the instant matter and Agentra disputed whether the parties had entered into a final and enforceable settlement agreement. (Dkt. 115, 116, 117.) Following a hearing, the Court granted Plaintiffs' motion to enforce the settlement on August 20, 2020, finding that Agentra's argument that the agreement could not be enforced without its signature was unavailing. (Dkt. 119 at 6.) On the same day, Plaintiffs filed their motion for preliminary approval of the settlement. (Dkt. 120.) The motion indicated that the settlement would create a fund of $275,000, and Plaintiffs sought provisional certification of the following class:

> Plaintiffs and all persons contacted by Alexander Glynn, Ann Fils, Charles Donisi, Jacon Mcleod, Jake Gabbard, Jason Espinoza, Kristina Calo, Scott Shapiro, Steve Guerrero, Witfield Jean-Baptiste, or Theresa Jones (or on behalf of any individual Agent, whether by a downline sub-agent, vendor, or other third party) regarding the sale of a product offered by Agentra at any time between May 8, 2014 to February

>1, 2020 that were contacted on a cellular telephone or while they were on the National Do Not Call Registry for at least 30 days.

(Dkt. 120 at 3.) Beyond releasing claims related to the agents that allegedly called Plaintiffs—like Theresa Jones—the settlement purports to extend to the calling activities of ten additional Agentra agents, including the two telemarketers that allegedly made calls to Plaintiff-Intervenor Abboud. (*Id.*) Further, the instant Settlement is not limited to prerecorded voice calls, as was the case for Plaintiffs' First and Second Amended Complaints, but applies to <u>any</u> form of contact. (*Compare id.*; *with* Dkt. 16 at ¶ 88; Dkt. 56 at ¶ 84.)

Nevertheless, on September 4, 2020, the Court granted preliminary approval to the Settlement, and to Plaintiffs' proposed settlement class,. (Dkt. 121 at ¶¶ 3–4.) The Court's order also created deadlines for notice, opt-out and objection, and final approval. (*Id.* at ¶ 23.) Just ten days later, the District Court for the Northern District of Texas granted Abboud's motion for class certification, certifying Abboud's text class and agent class. (*See Abboud v. Agentra* Order Certifying Classes, attached hereto as Exhibit D, at 10.) On October 6, 2020, this Court extended the class notice deadline to October 26, 2020, and the opt-out, objection, and claim submission deadline to December 24, 2020. (Dkt. 125.)

**III.   ARGUMENT**

Plaintiff-Intervenor's motion should be granted. As explained below, Abboud is entitled to intervene as a matter of right to protect the interests of herself and the certified classes that she represents. Should the Court not find that intervention of right is supported, permissive intervention should be granted. In addition to granting Plaintiff-Intervenor's motion to intervene, the Court should modify the protective order between Plaintiffs and Agentra and designate Abboud as a "qualified person" under the terms of the order so that she may evaluate the fairness

of the proposed Abramason Settlement and determine the most appropriate course of action to protect her and the certified class's interests.

> **A.    The Court should find that Plaintiff-Intervenor Abboud Is Entitled To Intervene In This Matter to Protect Her and the Class's Interests.**

Intervention is warranted under Rule 24 of the Federal Rules of Civil Procedure. FED. R. CIV. P. 24. The rule is designed to enable efficiency and prevent multiplicity by allowing parties to resolve related issues in one action. *See Wash. Elec. Co-op., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 97 (2d Cir. 1990) (citing *Reich v. Webb*, 336 F.2d 153, 160 (9th Cir. 1964)). Courts have traditionally applied a liberal construction of Rule 24 in favor of intervention. *See, e.g.*, *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998); *United States ex rel. McGough v. Covington Techs. Co.*, 967 F.2d 1391, 1394 (9th Cir. 1992); *Feller v. Brock*, 802 F.2d 722, 729 (4th Cir. 1986). Any doubts "should be resolved in favor of allowing [intervention]" in order to serve the judicial system's interest in efficient resolution of related controversies. *Sierra Club v. Robertson*, 960 F.2d 83, 85–86 (8th Cir. 1992).

The Rule provides for two different types of intervention: (1) intervention of right, which *must* be permitted; and (2) permissive intervention, which *may* be permitted. *See* Fed. R. Civ. P. 24(a)–(b). As explained below, Abboud satisfies the standards for both intervention of right and permissive intervention.

> **1.    The Court should grant intervention as a matter of right.**

Intervention as a matter of right is appropriate where the movant claims an interest in the subject of the action and "is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." FED. R. CIV. P. 24(a)(2). The Third Circuit has derived a four-part test to demonstrate intervention as of right:

>(1) timely application, (2) the applicant has a significantly protectable interest in the pending lawsuit, (3) disposition of the lawsuit may impair or impede his ability to protect applicant's interest absent intervention, and (4) the existing parties do not adequately represent applicant's interest.

*Page v. DTE Midstream, LLC*, No. 2:19-CV-01345-DSC, 2020 WL 5519052, at *1 (W.D. Pa. July 10, 2020) (citing *Liberty Mut. Ins. Co. v. Treesdale, Inc.*, 419 F.3d 216, 220 (3d Cir. 2005)). Here, each of the four requirements are satisfied to support intervention as of right by Plaintiff-Intervenor Abboud.

The first prong, timeliness, is determined by the totality of the circumstances. *In re Cmty. Bank of N. Virginia*, 418 F.3d 277, 314 (3d Cir. 2005); *United States v. Detroit Int'l Bridge Co.*, 7 F.3d 497, 502 (6th Cir. 1993). Where intervention is sought for the purpose of modifying a protective order, the timeliness requirement is broad: there is a "growing consensus among the courts of appeals that intervention to challenge confidentiality orders may take place long after a case has been terminated." *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 779 (3d Cir. 1994). The Third Circuit in *Pansy* cited two cases where intervention was granted approximately two and three years after the case was terminated—the Court subsequently concluded that a motion to intervene more than six months after settlement was a "relatively short delay." *Id.* at 780. Additionally, the Third Circuit has held that a class member's motion to intervene was "presumptively timely" when filed before the end of the opt-out period, and no prejudice would have resulted since the fairness hearing was six weeks later. *See In re Cmty. Bank*, 418 F.3d at 314–15.

Here, Abboud seeks to intervene less than two months after the Court granted preliminary approval to the settlement and the class that overlaps with one of those that she has since certified. (*See* Dkt. 121; Ex. D.) Unlike the cases cited in *Pansy*, where intervention was sought and granted after termination of the case, the Parties' case is still active, and the Settlement will

6

not be effectuated until final approval is granted. Further, Abboud seeks to intervene approximately two months before the deadline for her to opt out or object to the settlement (dkt. 125), and three months before the scheduled fairness hearing. (Dkt. 121 at ¶ 23.) Abboud's motion to intervene is timely.

The second prong for intervention as of right is that the movant must have a protectable interest in the pending lawsuit. As explained above, Abboud has certified two classes of individuals affected by Agentra's telemarketing activities—one related to automated texts, and one related to calls received from two specific agents of Agentra. (*See* Ex. C at 4, 7–8.) Several months after Abboud moved to certify these classes, Agentra reached a settlement with Plaintiffs that purports to release claims against eleven of its agents, including the two comprised by Abboud's agent class (who did not call Plaintiffs). (*Compare id.* at 4, 8; *with* Dkt. 120 at 3.) Plaintiff-Intervenor has an interest in this action because the preliminarily-approved settlement class overlaps with and includes Abboud's certified agent class.

Similarly, the third prong is satisfied because the proposed settlement in this class, if approved, would impede her ability to represent her certified agent class. Absent any opt-out or objection that she may make, Plaintiff-Intervenor would be bound, and her agent class claim would be potentially disposed, by the Abramson Settlement. Abboud seeks to intervene to evaluate the fairness of the settlement and the documentation relied on to evaluate Agentra's financial position, which extends well beyond the agent(s) who called Plaintiffs, and "the risk that the movants will be bound by an unsatisfactory class action settlement satisfies Rule 24(a)(2)'s third prong." *Tech. Training Assocs., Inc. v. Buccaneers Ltd. P'ship*, 874 F.3d 692, 696–97 (11th Cir. 2017); *see also In re Cmty. Bank*, 418 F.3d at 314 ("In the class action context,

the second and third prongs of the Rule 24(a)(2) inquiry are satisfied by the very nature of Rule 23 representative litigation.").

The fourth and final prong is that the existing parties do not adequately represent the interests of the movant. Though the burden is on the intervenor to suggest inadequacy, that burden "should be treated as minimal." *Com. of Pa. v. Rizzo*, 530 F.2d 501, 505 (3d Cir. 1976). If the movant has the same ultimate objective as a party to the suit, the intervenor "must ordinarily demonstrate adversity of interest, collusion, or nonfeasance on the part of a party to the suit." *In re Cmty. Bank*, 418 F.3d at 315. The presumption that representation is adequate "is weak; in effect, it merely imposes upon the proposed interven[o]rs the burden of coming forward with some evidence to the contrary." *Tech. Training*, 874 F.3d at 697 (alterations in original).

In this case, both the timing and the breadth of the settlement class is troubling. Though the details of the settlement were not shared with the Court initially, the Parties filed a joint status report indicating that they had reached a "class action settlement" on April 6, 2020. (Dkt. 110.) This was just over a month after Abboud had moved to certify her classes, including an agent class applicable to the companies of Jason Espinoza and Jake Gabbard. (Ex. C at 4.) Plaintiffs did not allege receipt of calls from these agents, but both have been included in the settlement release, along with nine other Agentra agents. (Dkt. 120 at 3.) Similarly, the proposed class extends to "all persons contacted" by such agents, even though Plaintiffs previously amended their complaint to limit their claims to prerecorded calls. (Dkt. 120 at 3; *compare* Dkt. 1 at ¶ 43; *with* Dkt. 16 at ¶ 88, Dkt. 56 at ¶ 84.)

Though they may not prove collusion between the Parties, these facts are enough to rebut the presumption of adequate representation. They suggest an impermissible "reverse auction"—a process in which defendants like Agentra elect to negotiate with multiple parties and settle class

8

claims with plaintiffs who have weaker positions so as to negotiate more favorable terms. *See Tech. Training*, 874 F.3d at 695. By settling broadly with Plaintiffs, Agentra has attempted to unliterally foreclose one of Abboud's class claims without her interests protected. The Settlement purports to release Abboud's agent class claim, but her interests and the interests of her class have not been adequately represented in this matter.

In addition to seemingly engaging in a reverse auction, the potential inadequacy of the instant settlement counsel may also be revealed in the financial documentation relied upon to determine that Agentra could not afford to pay a greater sum. The financial documents disclosed to Abboud's counsel during her mediation provided insufficient information from which to accurately calculate Agentra's financial position. If Settlement Class Counsel received the same documentation and nothing more, then it is highly doubtful that Plaintiffs' counsel settled the case with sufficient financial information to represent that the terms were fair, reasonable, and adequate.

In short, all four prongs to support intervention as a matter of right are satisfied. Pursuant to Rule 24(a), the Court should grant Abboud's request to intervene.

### 2. Abboud satisfies the requirements for permissive intervention as well.

In the event that the Court finds intervention of right is not warranted here, permissive intervention is supported and should be granted for Abboud. The Federal Rules provide that a court may permit intervention where the movant has a claim that shares a common question of law or fact with the main action. FED. R. CIV. P. 24(b)(1). In addition to sharing a common question, a motion for permissive intervention must be timely. *See, e.g.*, *Pansy*, 23 F.3d at 778 (citing *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 473–74 (9th Cir. 1992)). Courts often require proof of an independent basis for jurisdiction when a movant seeks to litigate a claim on the merits, but no such basis is needed when seeking to modify a protective order because it is

9

merely a request for the court "to exercise that power which it already has." *Beckman*, 966 F.2d at 473; *see In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*, 255 F.R.D. 308, 316–17 (D. Conn. 2009).

Here, Abboud's TCPA claims share several common questions of law and fact with Plaintiffs' case, including whether Agentra's action violate the Act, whether Agentra obtained consent prior to making the calls, and whether Agentra acted willfully or knowingly. (*Compare* Dkt. 56 at ¶ 89; *with* Ex. A at ¶ 30.) Additionally, and as explained above, Plaintiff-Intervenor's motion is timely. She has made her request before the settlement opt-out deadline and three months before the scheduled fairness hearing. (Dkt. 121 at ¶ 23; Dkt. 125.) Allowing Abboud to intervene will not create any undue delay or prejudice—it will enable Plaintiff-Intervenor to carefully review the fairness of the settlement and determine whether it may be appropriate for her to take action.

Thus, even if it finds that intervention as a matter of right is not supported, the Court should exercise its discretion to permit Abboud to intervene pursuant to Rule 24(b).

### B. The Court Should Modify The Protective Order In This Matter To Designate Plaintiff-Intervenor As A Qualified Person.

As indicated above, Abboud's objective in seeking to intervene in this matter is to evaluate the fairness of the Abramson Settlement. As part of that evaluation, Plaintiff-Intervenor will need to review any financial documents provided by Agentra that may have been used to support the agreement, as well as any confirmatory discovery that Plaintiffs' counsel conducted before agreeing to settle their claims and the claims of all members in the proposed settlement class. To review those documents and assess the settlement, Abboud asks that the Court modify the confidentiality order between the Parties (dkt. 42) by designating Abboud as a Qualified Person to whom such documents may be disclosed.

10

It is well-established that district courts retain the power to modify or lift confidentiality orders that they have entered. *Pansy*, 23 F.3d at 784. And there is "wide approval" for the use of Rule 24 intervention as means for non-parties to seek modification of a protective order. *Beckman*, 966 F.2d at 472–73; *see also Pansy*, 23 F.3d at 778 ("We agree with other courts that have held that the procedural device of permissive intervention is appropriately used to enable a litigant who was not an original party to an action to challenge protective or confidentiality orders entered in that action."); *Pub. Citizen v. Liggett Grp., Inc.*, 858 F.2d 775, 783 (1st Cir. 1988) (holding that "intervention is 'the procedurally correct course' for third-party challenges to protective orders).

"The appropriate approach in considering motions to modify confidentiality orders is to use the same balancing test that is used in determining whether to grant such orders in the first instance," with the additional factor of the parties' reliance on the order. *Pansy*, 23 F.3d at 790. These "unavoidably vague" factors include the requesting party's need for the information, the injury that might result from uncontrolled disclosure, the general interest in privacy, preventing embarrassment, whether a party benefitting from the order is a public entity or official, and the interest in encouraging settlements. *Id.* at 787–89. The parties' reliance on the order should not be outcome determinative—"[E]ven though the parties to [a] settlement agreement have acted in reliance upon that order, they [do] so with knowledge that under some circumstances such orders may be modified by the court." *Id.* at 790 (quoting *City of Hartford v. Chase*, 942 F.2d 130, 138 (2d Cir. 1991)).

Thus, a party seeking to modify a confidentiality must come forward with a reason to modify the order, and the court should balance the above factors to determine whether modification is appropriate. *Pansy*, 23 F.3d at 790. "If access to protected [material] can be

11

granted without harm to legitimate secrecy interests . . . , continued judicial protection cannot be justified." *Id.* (alterations in original). Even if that is not the case, the movant "should not be saddled with a burden more onerous than explaining why his need for the materials outweighs existing privacy concerns." *Id.*

Here, Abboud has come forward with a reason to modify the protective order according to its own terms. Abboud seeks to review financial documents received by Plaintiffs that may have supported their decision to agree to—and then seek to enforce—the Abramson Settlement. Abboud, as a class representative, has a responsibility to protect the interests of her certified classes, which includes determining whether she must take action against a settlement that is ultimately unfair, unreasonable, or inadequate. Abboud also mediated her claims with Agentra, and the financial documents that she received were insufficient to support settlement in her case—if those same documents were all that Plaintiffs received, Plaintiff-Intervenor contends that they would be likewise insufficient to support the Abramson Settlement as fair. (*See* Ex. B at ¶ 8.) If such is the case, the Court may also permit Abboud's counsel to engage in discovery if the Plaintiffs did not engage in adequate confirmatory discovery or if their discovery is not made available to Abboud as a class member and potential objector—the Court has discretion to "employ the procedures that it perceives will best permit it to evaluate the fairness of the settlement." *In re Cmty. Bank*, 418 F.3d at 316.

In this instance, the Court can (and should) grant Plaintiff access to protected documents without harming any secrecy interests. Indeed, the protective order itself specifies that protected documents shall be disclosed only to "Qualified Persons," which includes "[a]ny other person who is designated to receive Confidential Information by Order of the Court or agreement of the Parties." (Dkt. 42 at ¶ 6(f).) Plaintiff-Intervenor does not seek any uncontrolled disclosure of

12

materials or to vacate the order; rather, Abboud asks that the Court, in accordance with the Order's terms, designate her as a Qualified Person so that she may receive certain financial documents in order to evaluate the fairness of the settlement. If so designated, Abboud herself would then be bound by the confidentiality order, which does not permit for dissemination of any materials received. (*Id.* ¶ 5.)

A balancing of the factors listed in *Pansy* weighs in favor of the requested modification. Abboud has demonstrated her need for the information, and she may be designated to receive it without risking uncontrolled disclosure. Neither Agentra nor Plaintiffs are public entities, and Agentra will not experience any "embarrassment" in permitting Abboud to review financial documents—embarrassment is a nonmonetizable harm suffered by individuals. *Pansy*, 23 F.3d at 787. Further, this will not impede the interest in encouraging settlements because the Parties have already reached one. Of course, Agentra may have a general interest in keeping its documents private, but they will be kept private pursuant to the confidentiality order if the Court modifies it to designate Plaintiff-Intervenor. The final factor of reliance likewise does not tip the scale against this modification, as the confidentiality agreement explicitly contemplates modification and the Court's designation of Qualified Persons. The Parties thus cannot be said to have relied on the order as unmodifiable.

As the representative of two certified TCPA classes, Abboud has a responsibility to protect the interests of unnamed class members. That responsibility includes determining whether the Settlement is fair because it could resolve the claim of one of her classes if approved. Plaintiff-Intervenor has demonstrated a legitimate basis for the Court to modify the confidentiality order in this case, and the *Pansy* factors support her request. Accordingly, the Court should issue an order designating Abboud as a Qualified Person under the confidentiality

order so that she may diligently evaluate the fairness of the settlement and determine whether objection is appropriate.

## IV. CONCLUSION

Plaintiff-Intervenor's motion should be granted. Abboud has demonstrated that she may intervene either as a matter of right or with the Court's permission. Likewise, she has demonstrated a need for the modification of the Parties' protective order for the limited purpose of evaluating the proposed settlement. Accordingly, the Court should grant the motion, permit Abboud to intervene in this matter, modify the protective order to designate Abboud as a Qualified Person thereunder, and award any such relief as it deems necessary and just.

Respectfully submitted,

Dated: October 28, 2020              By: __/s/ Stuart C. Gaul, Jr.____
                                     One of Plaintiff-Intervenor's Attorneys

Stuart C. Gaul, Jr.
Pa. I.D. No. 74529
Gaul Legal LLC
100 Ross Street, Suite 510
Pittsburgh, PA 15219
412-261-5100 (P)
412-261-5101 (F)
stuart.gaul@gaul-legal.com

Patrick H. Peluso*
ppeluso@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

*Attorneys for Plaintiff-Intervenor and the Classes*

* *Pro Hac Vice* to be filed

## **CERTIFICATE OF SERVICE**

I hereby certify that the above papers were filed through the Court's ECF system, which will serve the papers electronically to all counsel of record.

      /s/ Stuart C. Gaul, Jr.