**IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| STEWART ABRAMSON and JAMES EVERETT SHELTON, individually and on behalf of a class of all persons and entities similarly situated,<br><br>              Plaintiffs<br><br>    vs.<br><br><br> AGENTRA, LLC, ANGELIC MARKETING GROUP L.L.C., and MATTHEW JONES<br><br>              Defendants. | Case No. 18-cv-615-PLD |

**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF A CLASS
ACTION SETTLEMENT AND INCORPORATED MEMORANDUM IN SUPPORT**

## I.      INTRODUCTION

Plaintiffs Stewart Abramson and James Everett Shelton ("Plaintiffs") and Defendant Agentra, LLC ("Settling Defendant") (the Plaintiffs and Settling Defendant collectively referred to herein as the "Parties") have negotiated, and the Court preliminarily approved on September 4, 2020, a class action settlement of this TCPA case. (Doc. 121.) A copy of the Settlement is on file with the Court. (Doc. 120-1.) The Settlement requires the establishment of a $275,000 Settlement Fund to be distributed *pro rata* to Settlement Class Members who file a valid claim after payment of notice and administration costs (if approved), Plaintiff's Counsel fees and costs (if approved), and an Incentive Award to the Plaintiffs (if approved).[1] There is no reverter in the Settlement Fund. Settlement Class Members who do not opt out will each receive a cash payment from this fund of a minimum of $48.39 and a maximum of $145.17, depending on how many of their telephone numbers were contacted. *See* Exhibit 1, Declaration of Settlement Administrator, Jay Geraci ("KCC Decl.") ¶ 14. This per claim payment amount is well within the range of (and often far exceeds) other TCPA class action settlements approved by courts in this Circuit and elsewhere.

The Parties' Settlement Agreement is now subject to final approval by the Court. In accordance with the Court's Preliminary Approval Order, Notice was sent via first class mail to 19,683 Settlement Class Members advising them of the proposed settlement. *See* KCC Decl. at ¶ 5. Notably, there was only one objection to the settlement and only one class member requesting exclusion. *Id.* at ¶¶ 12-13. Following direct notice under the Class Action Fairness Act, 28 U.S.C. § 1715, to each state attorney general's office, no state attorney general, nor the Attorney

---

[1] All capitalized terms not defined herein have the meanings set forth in the Parties' Settlement Agreement ("Settlement" or "Agreement").

General of the United States, has objected. In contrast, 2,085 class members took the time to file

a claim. In summary:

|  |  |
|---|---|
| Notice Reach: | 99.995% |
| Claims Received: | 2,085 out of 19,684 (10.59%) |
| Class Member Objections: | 1 (0.005%) |
| Exclusions: | 1 (0.005%) |
| Estimated Recovery: | Minimum of $48.39 and a Maximum of $145.17 |

The Settlement Agreement reflects a compromise of the Parties' positions for the purpose  of

resolving, without further litigation, all issues and claims relating to the allegations made in   this

Action on behalf of all members of the Class. As demonstrated below, the Settlement negotiated

by the Parties is fair, adequate, and reasonable, and provides a substantial benefit to  the

Settlement Class.

## II.    NATURE AND BACKGROUND OF THE CASE

This case rests on alleged violations of the Telephone Consumer Protection Act

("TCPA"), 47 U.S.C. § 227, which prohibits, *inter alia*, initiating any telephone solicitation to a

cell phone using an ATDS or an artificial or prerecorded voice. *See* 47 U.S.C. § 227(b). The

TCPA also makes it unlawful to receive more than one telephone call within any twelve-month

period by or on behalf of the same entity after placing your number on the National Do Not Call

Registry. *See* 47 U.S.C. § 227(c)(5). The TCPA provides a private cause of action to persons

who receive such calls. *Id.* and 47 U.S.C. § 227(b)(3).

Plaintiffs are Pennsylvania residents whose cellular telephone numbers have been called

with unsolicited messages for years. On May 8, 2018, Plaintiff Stewart Abramson filed the

original putative class action complaint in this matter against the Settling Defendant alleging

claims for violations  of the TCPA. On April 9, 2019, the Plaintiffs filed a Second Amended

Complaint against the Settling Defendant and Angelic Marketing Group L.L.C. and Matthew

Jones (collectively referred to herein as the "Non-Settling Defendants"). Since that time, the

Parties engaged in discovery and other litigation relating to class certification and other issues.

During discovery, the parties exchanged documents relating to the vendors used to make the

calls to putative class members, the relationship between the Defendant and its insurance agents,

as well as the targets of the telemarketing campaigns.

Near the conclusion of discovery, the parties mediated this case with Bruce Friedman at

JAMS in Texas. While that mediation was unsuccessful, it eventually culminated in the

Settlement Agreement before this Court.

## III.    THE PROPOSED SETTLEMENT

## A.    THE SETTLEMENT CLASS

Pursuant to the Settlement Agreement, Plaintiffs seek certification of the following

Settlement Class for settlement purposes only:

> Plaintiffs and all persons contacted by Alexander Glynn, Ann Fils,
> Charles Donisi, Jacon Mcleod, Jake Gabbard, Jason Espinoza ,
> Kristina Calo, Scott Shapiro, Steve Guerrero, Witfield Jean-
> Baptiste, or Theresa Jones (or on behalf of any individual Agent,
> whether by a downline sub-agent, vendor, or other third party)
> regarding the sale of a product offered by Agentra at any time
> between May 8, 2014 to February 1, 2020 that were contacted on
> a cellular telephone or while they were on the National Do Not
> Call Registry for at least 30 days.

 (Agreement ¶ 2.0).

## B.    SETTLEMENT RELIEF

### 1.    Class Member Relief: Settlement Fund

The proposed Settlement establishes a non-reversionary $275,000.00 Settlement Fund. If

all the attorney's fees, expenses, Service Payment, and Settlement Administration Expenses are

approved as requested, the administrator states that each claimant will receive $48.39 if they had

one telephone number contacted and up to $145.17 if they had three telephone numbers

contacted. *See* Exhibit 1 at ¶ 14.

### 2.      Class Member Relief: Remedial Measures

In addition, the Defendant has agreed to take remedial steps to ensure its telemarketing

going forward is TCPA compliant. These steps include, but are not limited to:

- Implement enhanced TCPA compliance policies & procedures;

- Conduct commercially-reasonable due diligence on agents prior to engaging them and on a regular basis thereafter;

- Contractually require agent vendors to comply with all applicable laws, including the TCPA, when conducting lead generation activities on behalf of Settling Defendants; and

- Monitor and track consumer complaints to identify and remediate compliance concerns.

(Agreement. ¶4(a)(4)).

### 3.      Class Representative Service Payment

If approved by the Court, the Plaintiffs will receive a Service Payment of $10,000 each

from the Settlement Fund.  This award will compensate Plaintiffs for their time and effort and for

the risk they undertook in prosecuting this case as well as participating in discovery. Notably, no

objections have been made to this request.

### 4.      Attorney's Fees and Costs

Class Counsel are requesting an award of fees in the amount of one-third of the total

amount of the Settlement Fund ($91,666.66), and out of pocket expenses of $11,250.00. The

requested award of attorney's fees and costs will compensate Class Counsel for the work already

performed in relation to the settled claims, as well as the remaining work to be performed in

documenting the Settlement, securing Court approval of the Settlement, making sure the

Settlement is fairly implemented, and obtaining dismissal of the action. Given the substantial

work done in this matter over the last two years, there was no objection by any individual to the amount of fees requested.

### 5.    Remaining Funds

Any amount remaining in the Settlement Fund after paying all approved Claim Forms, Settlement Administration Expenses, and any Fee Award and Service Award will be distributed to a Court-approved *cy pres* recipient. The Parties propose National Consumer Law Center as an appropriate recipient. (Agreement. ¶4(f)).

### C.    CLASS MEMBERS WERE SENT PROPER NOTICE

The threshold requirement concerning class notice is whether the means employed to distribute the notice was reasonably calculated to apprise the class of the pendency of the action, of the proposed settlement, and of the class members' right to opt out or object.  *Eisen v. Carlisle & Jacquelin*, 417 U.S. 159, 173 (1974); *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950).  Rule 23(e)(1) requires the court to "direct notice in a reasonable manner to all class  members who would be bound by" a proposed settlement. Fed. R. Civ. P. 23(e)(1). The best practicable notice is that which is  "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency  of the action and afford them an opportunity to present their objections." *Lightspeed Media  Corp. v. Smith*, 761 F.3d 699, 704 (7th Cir. 2014), citing *United States Air Funds, Inc. v. Espinosa*, 559 U.S. 260, 272 (2010). The notice process that was successfully implemented in this case more than satisfied all requirements.

The Settlement Administrator caused the notice to be delivered via first-class mail to Settlement Class Members in accordance with the Settlement Agreement and the Court's Preliminary Approval Order.  KCC Dec. at ¶¶6-8. As previously approved by the Court, the Parties implemented a Notice Plan including first class notice and publication of a Long-Form Notice on the Settlement Website.  The proposed notices were written in simple terminology and

included: (1) a description of the Class; (2) a description of the claims asserted in the class actions; (3) a description of the Settlement; (4) the deadlines for filing a Claim Form and/or for exercising the right to opt out (including limitation on the opt-out right); (5) the names of counsel for the Class; (6) the fairness hearing date; (7) an explanation of eligibility for appearing at the fairness hearing; and (9) the deadline for filing objections to the Settlement. The Notice is clear, straightforward, and provides persons in the Settlement Class with enough  information to evaluate whether to participate in the Settlement.  The Notice Plan constituted the best notice practicable  under the circumstances, provided due and sufficient notice to the Settlement Class, and fully  satisfied the requirements of due process and Federal Rule of Civil Procedure 23.

The Settlement Administrator also administered the Settlement Website, set up a telephone hotline regarding the settlement, processed claim forms,   and will issue checks to claimants. *Id*. ¶ 9-11. The Settlement  Administrator's records reflect that 2,085 claims covering 2,093 phone numbers have been received, reviewed and determined to be presumptively valid.  KCC Dec. ¶ 11. Subject to this Court's approval, Administration Expenses of $60,785.24 will be paid from the Settlement Fund. Settlement Agreement ¶ 4(a).

## D.    OPT-OUTS AND OBJECTIONS

Settlement Class Members were given the opportunity to opt out of or object to approval in accordance with the Settlement Agreement. In total, only one Settlement Class Member opted out and only one objected to any aspect of the Settlement. KCC Dec. ¶ 13. The sole objection will be discussed in greater detail below.

## E.    RELEASE

The release is appropriately tailored to this case involving telemarketing violations like those alleged and is limited to those Settlement Class Members identified in the Class, which is compiled of data exchanged in discovery. In exchange for settlement benefits, the Settlement

Class Members who did not timely opt out of the Settlement will release Defendant from any and all telemarketing claims against the Defendant. The Release is limited to claims arising from telemarketing calls that generated leads for Agentra and is further limited only to the individuals contained on the Class List, which represents individuals who actually purchased an Agentra policy. (Agreement. ¶5).

## IV.    ARGUMENT

### A.    THE SETTLEMENT APPROVAL PROCESS

A court may approve a class action settlement if it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). "If the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, then the court should direct that the notice be given to the class members of a formal fairness hearing." Manual For Complex Litigation (Second), § 30.44 (1985).

In addition, the Third Circuit has a strong judicial policy that encourages class settlements especially those that are the product of arm's length negotiations. *See In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 510 (D.N.J. 1997), *aff'd*, 148  F.3d 283, 317 (3d Cir. 1998); *see also In re Cmty. Bank of N. Virginia*, 418 F.3d 277, 299 (3d  Cir. 2005) ("all Federal Circuits recognize the utility of … 'settlement classes' as a means to  facilitate the settlement of complex nationwide class actions") (quotation and citation omitted).

### B.    THE CRITERIA FOR FINAL APPROVAL ARE SATISFIED

The Third Circuit has adopted a nine-factor test to determine whether a settlement is  "fair, reasonable, and adequate" and should be finally approved. The elements of this test—known as the "*Girsh* factors"—are:

(1)    the complexity and duration of the litigation; (2) the reaction

> of the class to the  settlement; (3) the stage of the proceedings; (4) the risks of establishing liability; (5) the  risks of establishing damages; (6) the risks of maintaining a class action; (7) the ability of  the defendants to withstand a greater judgment; (8) the range of reasonableness of the  settlement in light of the best recovery; and (9) the range of reasonableness of the  settlement in light of all the attendant risks of litigation.

*Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975); *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768 (3d Cir. 1995) (*citing Girsh*, 521 F.2d at 157).

As summarized below, these factors, as well as the factors contained in Rule 23(e)(2), demonstrate that this Settlement should be finally approved.

**1.      Complexity, Expense, and Likely Duration of the Litigation**

The first *Girsh* factor "captures the probable costs, in both time and money, of continued litigation." *In re Cendant Corp. Litig.,* 264 F.3d 201, 233 (3d Cir. 2001) (internal citation and quotation marks omitted). "By measuring the costs of continuing on the adversarial path, a court can gauge the benefit of settling the claim amicably." *GM Trucks*, 55 F.3d at 812. This factor undoubtedly weighs in favor of the Settlement here.  In this litigation, the path from this point to a final judgment would be long and  expensive. After discovery was completed, the Parties would have had to brief class certification,   and the Court would have been forced to decide the strongly contested issue of whether a basis  exists to certify a class for the purpose of establishing liability. If the Court determined that  certification was warranted, then Agentra presumably would have immediately exercised its right to seek interlocutory review of that certification order. If the certification order was upheld,  additional discovery would have been taken (with attendant discovery-related motion practice).  Thereafter, dispositive motions would have been filed by one or both of the Parties, and the Court would have been forced to adjudicate those motions, with additional appellate practice if  such dispositive motions resulted in either entry of final judgment

or a basis for interlocutory review. Depending on how the Third Circuit resolved any such appeals, the case might ultimately have gone to trial. Post-trial motions and additional appeals would have likely followed.

In fact, one of Class Counsel was involved in one of the only TCPA class actions to go through trial, and the amount of work done after class certification and through trial that would have resulted here is indicated in the work done in that case. *See Thomas Krakauer v. Dish Network, L.L.C.*, Civil Action No. 1:14-CV-333 (M.D. N.C. 2017) (more than 45 motions after a class certification decision through the time of trial with more than 10 motions after trial and two appeals). That case remains on appeal for several years after the initial trial was completed. In short, litigating this action would have proved lengthy, complex and expensive, thereby delaying (and potentially dissipating) any benefits that might have been obtainable by Settlement Class Members. The proposed Settlement permits the Court and the Parties to avoid this significant expenditure of time and resources. This factor strongly favors preliminary approval of the proposed Settlement.

### 2. The Reaction of the Class to the Settlement

The second *Girsh* factor "attempts to gauge whether members of the class support the settlement." *Krell v. Prudential Ins. Co. of Am. (In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions)*, 148 F.3d 283, 318 (3d Cir. 1998). Here, only one Settlement Class Member has objected to any aspect of the Settlement. *See In re AT&T Corp. Sec. Litig.,* 455 F.3d 160 (3d Cir. 2006) (district court did not abuse discretion in finding that second factor weighed strongly in favor of approval where there were 8 objections). Furthermore, only one class member has opted out. This is in comparison to the more than *two thousand* class members that have filed claims. The positive response of the Class weighs in favor of approval.

### 3.      The Stage of Proceedings and the Amount of Discovery Completed

The third *Girsh* factor "captures the degree of case development that class counsel [had]
accomplished prior to settlement. Through this lens, courts can determine whether counsel had an
adequate appreciation of the merits of the case before negotiating." *See GM Trucks*, 55 F.3d at
813.

This inquiry has two aspects: legal and factual. *Prudential Ins.*, 148 F.3d at 319. The first
aspect is easily satisfied in this case, where the Parties engaged in extensive negotiations and
related legal analysis with the help of an experienced mediator with a robust background of
dealing with this type  of case. *See* <u>Exhibit 2</u>, Declaration of Anthony Paronich ("Paronich
Decl.") at ¶ 7. As a result, Class Counsel has a more than adequate appreciation of the legal merits
of  the case.

The same is true from a factual perspective, which involves "an inquiry into the type  and
amount of discovery the parties have undertaken." *Prudential Ins.*, 148 F.3d at 319. Here, after
defeating a motion to dismiss for failure to state a claim (Dkt. No. 36), the Plaintiff: completed
discovery on Agentra regarding their potential vicarious liability, issued third party discovery for
Agentra's non-exclusive agents and the vendors, sub-vendors and call centers used by those
agents. The Plaintiff received thousands of pages of documents relating to the relationship
between these parties, calls made, and policies and procedures for compliance with the TCPA.
Paronich Decl. at ¶ 8. This discovery only occurred following repeated motion to compel practice
(Dkt. Nos. 52, 64, 79, 82, 93).

Class Counsel  has a thorough appreciation of the facts—good and bad—which bear upon
the merits of the  claims in this litigation. In view of the foregoing, this factor strongly favors
approval of the  proposed Settlement.

### 4.      The Risks of Establishing Liability and Damages

As to the fourth *Girsch* factor, as well as factor (C)(i) of Rule 23(3)(2) ("the costs, risks, and delay of trial and appeal"): "[b]y evaluating the risks of establishing liability, the district court can examine what the potential rewards (or downside) of litigation might have been had class counsel elected to litigate the claims rather than settle them." *GM Trucks*, 55 F.3d at 814. As to the risks of establishing damages: "Like the fourth factor, this inquiry attempts to measure the expected value of litigating the action rather than settling it at the current time." *In re Cendant Corp. Litig.*, 264 F.3d 201, 238-39 (3d Cir. 2001) (internal citation and quotation marks omitted).

Plaintiffs believes that the claims against Agentra would be successful at trial. Nevertheless, these claims would face several difficult challenges if the litigation were to continue. If this Action proceeds, based on their experience with other TCPA actions and the specifics of this Action, Class Counsel expects that Agentra will aggressively raise multiple issues.

First, when the Settlement Agreement was negotiated, the constitutionality of the TCPA was being reviewed by the Supreme Court in *Am. Ass'n of Political Consultants, Inc. v. FCC*, 923 F.3d 159 (4th Cir. 2019) (*Barr v. Am. Ass'n of Political Consultants, Inc.*, No. 19- 631 (petition for cert filed Nov. 14, 2019)). Class certification is also far from automatic in TCPA cases. *Compare Tomeo v. CitiGroup, Inc.*, No. 13 C 4046, 2018 U.S. Dist. LEXIS 166117, at *3 (N.D. Ill. Sept. 27, 2018) (denying class certification in TCPA case after nearly five years of hard-fought discovery and litigation), *Jamison v. First Credit Servs.*, 290 F.R.D. 92, 107 (N.D. Ill. 2013) (finding issues of consent to predominate in TCPA action *with Saf-T-Gard Int'l v. Vanguard Energy Servs.*, No. 12-3671, 2012 U.S. Dist. LEXIS 174222 (N.D. Ill. Dec. 6, 2012) (certifying a class in a TCPA action and finding no evidence supported the view that issues of

consent would be individualized) *and Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 253 (N.D. Ill. 2014) (same).

Even if the class were certified, the Plaintiff would still have a substantial obstacle regarding Agentra's vicarious liability for the alleged conduct of the vendors.  The Supreme Court in *Campbell-Ewald Co. v. Gomez*, 136 S.Ct. 663 (2016), held traditional agency and vicarious liability principles are required in order to be found liable under the TCPA. Here, it is undisputed that Agentra did not contact the Plaintiffs. Nor did any insurance agent of Agentra contacted the Plaintiffs. Instead, the insurance agents would often hire vendors that sold insurance leads to multiple companies on a non-exclusive basis. Those vendors would retained sub-vendors to provide those leads and the sub-vendors hired calling centers that made pre-recorded message calls. In other words, in order to prove Agentra's liability, the Plaintiffs would have to establish an agency relationship between Agentra and a caller that was at least four degrees of separation from their company. Paronich Decl. at ¶ 9.

While the Plaintiff was confident that it would ultimately prevail, this Action would continue to be heavily litigated. As with  any litigation, there are risks inherent in continuing to litigate, but considering that Plaintiffs obtained by settlement much of the relief sought in the litigation, it is in the Class's best  interest to accept the relief provided in the Settlement now rather than to spend hundreds of  thousands of dollars in fees and years of time in an attempt to obtain a marginally better result  through litigation.

    5.    **Risks of Maintaining Class Action Status Through Trial**

Because "the prospects for obtaining certification have a great impact on the range of recovery one can expect to reap from the class action," *GM Trucks*, 55 F.3d at 817, the court must measure the likelihood of obtaining and maintaining a certified class if the action were to

proceed to trial. *Girsh*, 521 F.2d at 157. While, for the reasons stated above, Plaintiff firmly believes that this case is appropriate for class action treatment and, regardless of any settlement, it is undeniable that class certification for settlement purposes removes some of the hurdles upon which some courts have denied certification of a litigation class. For example, manageability is not a concern with settlement classes. *Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997).

What is certain is that any decision granting certification absent settlement would be subjected to the cost, delay, and the uncertainty of a Rule 23(f) appellate challenge, before the class could proceed to trial; and an appeal from any verdict or judgment in favor of the class would likewise follow. If a class could not be certified here, it would leave few, if any, class members with both the resources and financial incentive to chase a maximum $500 award for each statutory violation on their own, with the practical result of no recovery by anyone. *See Carnegie v. Household Int'l, Inc.,* 376 F.3d 656, 661 (7th Cir. 2004) ("The *realistic* alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30.") (emphasis in original). The proposed Settlement provides a remedy now  to all Settlement Class Members, rather than risking an uncertain result after years of expensive litigation.

### 6.    Ability to Withstand a Greater Judgment

The sixth *Girsh* factor considers "whether the defendants could withstand a judgment for an amount significantly greater than the [s]ettlement" *Cendant*, 264 F.3d at 240. This factor is particularly relevant here.

In a TCPA case such as this, the potential damages could bankrupt Agentra.  Unlike a large public company with extensive financial resources, Agentra is a regional, privately-held company.  As one court acknowledged in approving a TCPA settlement:

> Individual class members receive less than the maximum value of their TCPA claims, but they receive a payout without having suffered anything beyond a few unwanted calls or texts, they receive it (reasonably) quickly, and they receive it without the time, expense, and uncertainty of litigation.... *[C]omplete victory for Plaintiffs at $500 or $1,500 per class member could bankrupt [the defendant].... [The] recovery in the hand is better than a $500 or $1,500 recovery that must be chased through the bankruptcy courts.*

*Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 228 (N.D. Ill. 2016) (emphasis added); *see also Reinhart*, 327 F. Supp. 2d at 438 ("[T]he risk of nonpayment is 'acute' where a defendant lacks 'significant unencumbered hard assets against which plaintiffs could levy had a judgment been obtained.'") (quoting *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 150 (E.D. Pa. 2000)).

The typical risks of nonpayment are accentuated in the current economic client where the country is facing the COVID-19 pandemic and the accompanying financial stress that is affecting nearly every business and individual in some form or fashion. More specific to Agentra, it had faced a lawsuit from the State of Washington Insurance Commission that could have revoked its license in the state, severely impacting its ability to operate. Paronich Decl. at ¶ 10.

The uncertainty created by this environment makes the certainty created the Settlement achieved by Plaintiff's Counsel even more valuable and prudent for the Class.  This factor weighs heavily in favor of approval.

**7.     The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and All the Attendant Risks of Litigation**

The last two *Girsh* factors are usually considered together. They ask "whether the settlement is reasonable in light of the best possible recovery and the risks the parties would face if the case went to trial." *Prudential Ins.*, 148 F.3d at 322. As Judge Becker explained in *GM Trucks*, "[t]he evaluating court must ... guard against demanding too large a settlement based on

its view of the merits of the litigation; after all, settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution." 55 F.3d at 806. These factors overlap with Rule 23(e)(2)(C) (relief provided by the settlement is adequate, taking into account risks, distribution method, and attorneys' fees).

As explained above, the Settlement amount here is reasonable relative to the claims asserted and the risks inherent in bringing those claims to a successful judgment after trial. The Settlement amount and minimum payment of $48.39 is well above other TCPA settlements approved across the country, including against some of the biggest companies in the country. *See, e.g., In re Capital One TCPA  Litig.*, 80 F. Supp. 3d 781, 789 (N.D. Ill. 2015) (granting final approval where each class member  would be awarded $39.66); *Rose v. Bank of Am. Corp.*, 2014 WL 4273358 at *10 (N.D. Cal. Aug. 29, 2014) (discussing range of acceptable TCPA settlements and approving $20.00 to $40.00 per claimant); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 493–94 (N.D. Ill. 2015) ($30);  *Markos v. Wells Fargo Bank, N.A.*, 2017 WL 416425, at *4 (N.D. Ga. Jan. 30, 2017) (approving settlement that provides a cash award of approximately $24.00 per class member, calling the settlement an "excellent result"); *Adams v. AllianceOne Receivables Mgmt.,* No. 08-cv-248 (S.D. Cal. Sept. 28, 2012) ($9 million for 6,079,411 class members, *see* Dkt. Nos. 109 at 10, 116 at 6, and 137).

And the proposed method of distributing relief and processing claims is effective and equitable. Rule 23(e)(2)(C). To participate in the Settlement, Settlement Class Members were only required to submit simple claim forms. They can participate in the benefits of the Settlement regardless of whether that Settlement Class Member retained calling records or any other proof related to receipt of calls that violated the TCPA. Payments to claimants will be sent after final

approval, and all claimants will receive an equal amount. *See* Rule 23(e)(2)(D) ("the proposal treats class   members equitably relative to each other").

8.     **The Proposal Was Negotiated at Arm's Length**

Rule 23(e)(2)(B) instructs the court to consider whether the proposed settlement was negotiated at arm's length. Here, the Parties reached the Settlement following formal mediation sessions with a highly respected, independent mediator, Bruce Friedman of JAMS.  Prior to their sessions, the Parties prepared memoranda and exchanged   information relevant to settlement negotiations. The negotiations were substantive and included extensive   discussions about the merits of the claims and the financial condition of the company. "The participation of an independent mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion between the parties." *In re ViroPharma Inc. Secs. Litig.*, No. 12-cv-2714, 2016 U.S. Dist. LEXIS 8626, at *24 (E.D. Pa. Jan. 25, 2016) (citation omitted).

Any assertion that the settlement was not negotiated at arm's length would be particularly unfounded since Agentra *opposed the motion for settlement*. *See* ECF No. 115. As such, the "arm's-length negotiation" factor of   Rule 23(e)(2)(B) weighs in favor of preliminary approval.

9.     **The Attorneys Fees Requested are Reasonable as is the Incentive Awards**

Class Counsel have requested an award of one-third of the common fund created in addition to out-of-pocket costs. The Plaintiffs have also requested an incentive award of $10,000 each. There has been no objection to either request, which is well supported under any approach to calculating such an award.

**A.    Class Counsel Are Entitled to a Fee Award from the Common Fund**

Compensating counsel for the actual benefits conferred on the class members must be the fundamental consideration in awarding attorneys' fees, as a court is attempting to award counsel for the result achieved.  The Supreme Court has long recognized that "a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). "The common fund doctrine is 'based on the equitable notion that those who have benefited from litigation should share its costs,' and that unless the costs of litigation are spread to beneficiaries of the fund they will be unjustly enriched by the attorney's efforts."  *Petruzzi's Inc. v. Darling-Delaware Co.*, 983 F. Supp. 595, 603 (M.D. Pa. 1996) (quoting *Report of the Third Circuit Task Force, Court Awarded Attorney Fees*, 108 F.R.D. 237, 250 (1985)).

An attorney who creates a "common fund" or "substantial benefit" allocable with some exactitude to a definite group of persons acquires an equitable claim against that group for the costs incurred in creating the fund or benefit.  *Sprague v. Ticonic Nat'l. Bank*, 307 U.S. 161 (1939). Under the common fund doctrine, fee reimbursement is permitted in the following circumstances: (1) when litigation indirectly confers substantial monetary or non-monetary benefits on members of an ascertainable class, and (2) when the court's jurisdiction over the subject matter of the suit, and over a named party who is a collective representative of the class, makes possible an award that will operate to spread the costs proportionately among class members.  H. NEWBERG, ATTORNEY FEE AWARDS § 2.01 at 28-29 (1986).

Such cases as this one, therefore, are called "common benefit" or "common fund" cases, and "[i]t is well-settled that a lawyer who recovers a common fund for the benefit of a class of persons in commercial litigation is entitled to reasonable attorneys' fees and expenses payable

from that fund." *Boeing,* 444 U.S. at 478-79. And, as the Supreme Court has explained, in contrast to statutory fee shifting where fees are calculated "under the common fund doctrine … a reasonable fee is based on *a percentage of the fund bestowed upon the class*." *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) (emphasis added).

### B.     The Requested Fee of One-Third Is Fair and Reasonable

The Settlement establishes a non-reversionary common fund of $275,000, from which Settlement Class Members will receive payments and Plaintiff's Counsel will receive any fee and expense reimbursement.  The Third Circuit has identified ten factors that courts should consider in reviewing a request for attorneys' fees in such a common-fund case.  These include:

> (1) the size of the fund created and the number of beneficiaries, (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel, (3) the skill and efficiency of the attorneys involved, (4) the complexity and duration of the litigation, (5) the risk of nonpayment, (6) the amount of time devoted to the case by plaintiffs' counsel, (7) the awards in similar cases, (8) the value of benefits attributable to the efforts of class counsel relative to the efforts of other groups, such as government agencies conducting investigations, (9) the percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained, and (10) any innovative terms of settlement.

*In re Diet Drugs Prod. Liab. Litig.*, 582 F.3d 524, 541 (3d Cir. 2009) (citing *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 (3d Cir. 2000); *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 336-40 (3d Cir. 1998)).  The *Gunter/Prudential* factors should not "be applied in a rigid, formulaic manner, but rather a court must weigh them in light of the facts and circumstances of each case." *Moore v. Comcast Corp.*, No. 08-cv-773, 2011 U.S. Dist. LEXIS 6929, at *12 (E.D. Pa. Jan. 24, 2011).  As demonstrated, the above factors strongly support the requested one-third fee as appropriate, fair, and reasonable.

First, the size of the fund created and number of persons benefited supports the award as over 2,000 individuals stand to receive between $48 and $140, amounts that exceed many TCPA settlements, as indicated above. Second, there has been only a single objection and exclusion to the settlement. Next, "the Third Circuit has explained that the goal of the percentage fee-award device is to ensure 'that competent counsel continue to undertake risky, complex, and novel litigation.'" *In re Flonase Antitrust Litig.*, 951 F. Supp. 2d 739, 747 (E.D. Pa. 2013). Here, the quality of Plaintiff's Counsel's representation of Plaintiff and the Class, as well as their skill and experience in the specialized field of consumer class action litigation and TCPA litigation, support the requested fee.

As detailed above, the case is complex legally and factually, regarding extensive briefing, first party and third-party discovery. "Courts recognize the risk of non-payment as a major factor in considering an award of attorney fees." *Saini v. BMW of N. Am., LLC*, No. 12-cv-6105 (CCC), 2015 U.S. Dist. LEXIS 66242, at *41 (D.N.J. May 21, 2015).  Here, Plaintiff's Counsel "accepted the responsibility of prosecuting this class action on a contingent fee basis and without any guarantee of success or award." *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 281 (3d Cir. 2009) ("Class Counsel invested a substantial amount of time and effort to reach this point and obtain the favorable Settlement.").  In prosecuting this case, counsel faced the "risks of establishing liability," as well as certifying and maintaining a certified class through judgment and any appeal.  *In re Rite Aid*, 396 F.3d 294, 304 (3d Cir. 2005). As detailed above, Agentra is with significant defenses to this action.

The amount of time put forth by Plaintiff's counsel in this case supports the award as well. Because Plaintiff's Counsel seeks a fee based on the creation of a "common fund" as opposed to seeking statutorily award attorneys' fees, the Court need not undertake a lodestar

calculation and analysis.  *See, e.g., Rossini v. PNC Fin. Servs. Grp. Inc.*, No. 2:18-cv-1370, 2020 U.S. Dist. LEXIS 113242, at *59-60 (W.D. Pa. June 26, 2020) (finding that a lodestar calculation was "not required, and not particularly useful" in FCRA case creating a common fund for class members). However, here Class Counsel has worked 292.1 hours to achieve the result. Paronich Decl. at ¶11-12. At an amount of $450.00 an hour, which is lower that was has been approved by other federal courts for Class Counsel in TCPA cases[2], a request of $131,445.00 would be supported under this method. Here, the Plaintiff only seeks $91,666.66. The Third Circuit has also affirmed attorneys' fees constituting one-third of a settlement fund in a TCPA case that had been contested by an objector, and where the fund included a reverter provision (not present here).  *See Landsman & Funk, P.C. v. Skinder-Strauss Assocs.*, 639 F. App'x 880, 883–84 (3d Cir. 2016).  Class Counsel's request for an award of attorneys' fees of 33 1/3% of the common fund here is also well within the range of fee awards in cases across the country.  *See, e.g., In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768, 822 (3rd Cir. 1995) (in common fund cases "fee awards have ranged from nineteen percent to forty-five percent of the settlement fund" (citation omitted)); *In re Gen. Instrument Secs. Litig.*, 209 F. Supp. 2d 423, 431 (E.D. Pa. 2001) (awarding fees of one-third in class action settlement).

---

[2] *See Hopkins v. Modernize, Inc.*, Civil Action No. 4:17-cv-40087 (D. MA). Class Counsel have had time approved at $450.00 an hour in other TCPA lawsuits. *See e.g., Mey v. Frontier Communications Corporation,* No. 3:13-cv-1191-MPS (D. Ct. June 9, 2017); *Heidarpour v. Central Payment Co.*, No. 16-cv-01215 (M.D. Ga. May 4, 2017); *Mey v. Interstate National Dealer Services, Inc.*, No. 14-01846 (N.D. Ga June 8, 2016); *Jay Clogg Realty Group, Inc. v. Burger King Corporation*, No. 13-cv-00662 (D. Md. April 15, 2015); *Kensington Physical Therapy, Inc. v. Jackson Therapy Partners, LLC*, No. 11-02467 (D. Md. Feb. 12, 2015).

Here, "[t]he entirety of the value achieved for the Class was attributable to Class counsel; no other groups, such as government agencies conducting investigations, were involved in this case." *Serrano v. Sterling Testing Sys., Inc.*, 711 F. Supp. 2d 402, 421 (E.D. Pa. 2010) (approving 33.1% fee in consumer class action). This factor supports the fee requested. Additionally, "the goal of the fee setting process is to 'determine what the lawyer would receive if he were selling his services in the market rather than being paid by Court Order.'" *In re Linerboard Antitrust Litig.*, No. 1261, 2004 U.S. Dist. LEXIS 10532, at *47 (E.D. Pa. June 2, 2004). "'[I]n private contingency fee cases, particularly in tort matters, plaintiffs' counsel routinely negotiate agreements providing for between thirty and forty percent of any recovery.'" *Bradburn Parent Teacher Store*, 513 F. Supp. 2d at 340 (quoting *In re Ikon*, 194 F.R.D. at 194)). Thus, the one-third sought here is in line with such contingency fees. Finally, "the terms of this settlement are relatively standard.  In the absence of any innovative terms, this factor neither weighs in favor nor against the proposed fee request." *Med. Mut. of Ohio v. Smithkline Beecham Corp.*, 291 F.R.D. 93, 105 (E.D. Pa. 2013).

"Counsel for a class action is entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the class action." *Abrams v. Lightolier Inc.*, 50 F.3d 1204, 1224-25 (3d Cir. 1995).  Plaintiff's Counsel expended a total of $11,250.00 on this case to date, the bulk of which were for mediation expenses. Paronich Decl. at ¶13-15. The remaining amounts are for filing fees, and third-party subpoena services fees. *Id*. All of the expenses were necessary and appropriate for the prosecution of this Action, and all are of the type that are customarily incurred in litigation and routinely charged to clients billed by the hour.  *Id*.  As set forth in the accompanying declaration, the expenses

incurred are reasonable in the circumstances and should be approved.  *See Tavares v. S-L*

*Distribution Co.*, No. 1:13-CV-1313, 2016 WL 1743268, at *15 (M.D. Pa. May 2, 2016).

### 10.    The Class Representative and Class Counsel Have Adequately Represented  the Class

Rule 23(e)(2)(A) requires the court to consider whether the Class Representative and

Class Counsel have adequately represented to the class. For the reasons stated in the memorandum

in support of preliminary approval, this requirement is satisfied.  Plaintiffs' interests are aligned

with those of the Class, he has served the Class's interests in this  litigation and in obtaining this

Settlement. Furthermore, as detailed Class Counsel are experienced TCPA litigators.

## V.    RESPONSE TO THE SOLE OBJECTION

One individual of the nearly 20,000 Settlement Class Members (0.005%) has filed an

objection to the parties' settlement. As another federal court in Pennsylvania described while

approving a TCPA class action settlement over four objections, "our court of appeals found

objection and opt-out rates of 1%, respectively, weighed in favor of settlement." *Vasco v. Power*

*Home Remodeling Grp. LLC*, No. 15-4623, 2016 U.S. Dist. LEXIS 141044, at *14 (E.D. Pa. Oct.

12, 2016). There are nowhere near the almost 200 objections that would have been within the

Third Circuit's acceptable range present.

The Plaintiff-Intervenor Monica Abboud[3], claims that the settlement does not satisfy the

*Girsh* factors outlined above. Following this Court's Preliminary Approval Order, Ms. Abboud

obtained certification of a class of individuals against Agentra. Ms. Abboud has not identified

---

[3] Ms. Abboud, filed her lawsuit with similar allegations six months *after* the Plaintiffs in this action
filed this lawsuit. While counsel for Ms. Abboud claimed to have not been aware of this lawsuit
until January of 2020, Ms. Abboud's prior or referring counsel contacted the undersigned in
November of 2018 regarding Ms. Abboud's potential participation in the instant lawsuit. *See* ECF
No. 137-1.

who the members of the classes that she represents are but has expressed reservations that there is potential overlap with the limited Settlement Class in this lawsuit.

With respect to the *Girsh* factors, Ms. Abboud's objections should be overruled for the reasons discussed above. Furthermore, a recovery of 3.67% of potential damages at trial in a TCPA settlement is not "paltry", as Ms. Abboud claims. First, telemarketing compliance efforts often present a case for reduction of any damages awarded after trial and some courts have applied this principle in the TCPA context.  For example, in *Golan v. Veritas Entm't, LLC*, the court reduced the damages awarded in that TCPA class action lawsuit to $10 a call after trial, 2% of potential damages under the statute. *Golan v. Veritas Entm't, LLC*, No. 4:14CV00069 ERW, 2017 U.S. Dist. LEXIS 144501, at *6-9 (E.D. Mo. Sep. 7, 2017). Indeed, similar objections in TCPA cases have been overruled. *See e.g. Farnham v. Caribou Coffee Co.,* No. 16-cv-295-wmc, 2017 U.S. Dist. LEXIS 214929, at *20 (W.D. Wis. Dec. 15, 2017) (Overruling objection that the settlement comprises only 0.04% of the possible recovery under the TCPA); *Mahoney v. TT of Pine Ridge, Inc.,* No. 17-80029-CIV-MIDDLEBROOKS, 2017 U.S. Dist. LEXIS 217470, at *22 (S.D. Fla. Nov. 17, 2017) (Noting that 0.8% of statutory recovery in TCPA case is appropriate under the circumstances); *see also Vasco v. Power Home Remodeling Grp. LLC*, No. 15-4623, 2016 U.S. Dist. LEXIS 141044, at *18-19 (E.D. Pa. Oct. 12, 2016) ("Vasco estimates the possible range of damages from $550 million to $1.65 billion on the assumption of only one Act violation per Class Member. The Settlement Amount is $5.2 million [0.9%]. Given Vasco's representations as to Power Home's defenses to certification and on the merits, we find the Settlement reasonable in light of the case's strengths and weaknesses.")

Ms. Abboud does not, because she cannot, claim that Settlement Class Counsel have taken insufficient discovery in this matter. Instead, Ms. Abboud asserts that the financial

information considered in aide of the settlement is insufficient. Class Counsel disagrees, as the financial condition of the defendant was one of many factors considered for settlement. However, Class Counsel do not object to the Court performing its own in-camera review of the financial documents produced.

Without citation to any case law, Ms. Abboud also claims that the Settlement Class is "fatally overbroad" because it includes agents of Agentra who did not personally contact the Class Plaintiffs. First, as described above, this is factually inaccurate. Agentra agents use vendors, sub-vendors and call centers that work non-exclusively with insurance agents to provide leads. From the series of automated and pre-recorded calls, the Class Plaintiffs were able to identify some of those agents by going through the process of securing an Agentra policy. However, this does not mean that these calls, or similar calls they received, were not been for the benefit of other vendors who worked with the same agents. Relatedly, Ms. Abboud attacks the Settlement Class definition because she claims that specific agents didn't actually contact the Class Plaintiffs, but none of the specific agents contacted any class members. Instead, a series of vendors, sub-vendors and call centers were used to contact Settlement Class Members, as described above.

Furthermore, there is no case law submitted to support the idea that the Plaintiff must have identical factual claims or theories under the various subsections of the TCPA to represent a settlement class, because that is not required. "The law is well-established in this Circuit and others that class action releases may include claims not presented and even those which could not have been presented" *In re WorldCom, Inc. Sec. Litig.,* 388 F. Supp. 2d 319, 341 (S.D.N.Y. 2005). Here, Mr. Shelton and Mr. Abramson received telemarketing calls in alleged violation of the TCPA from various vendors of Agentra agents. They are seeking to represent a limited

settlement class of individuals that can be identified because they *purchased Agentra* policies.

Indeed, over objection, the following release was permitted in the class settlement of *Vasco v.*

*Power Home Remodeling Grp. LLC*, No. 15-4623, 2016 U.S. Dist. LEXIS 141044, at *30-31

(E.D. Pa. Oct. 12, 2016) (emphasis added):

> [A]ny and all claims, liens, demands, actions, causes of action, obligations, damages or liabilities of any nature whatsoever that arose during the time period from October 16, 2013 to April 27, 2016, whether legal or equitable or otherwise, that actually were, or could have been, asserted in this Action based upon the facts alleged in the Action that arise from any violation of any provision of the TCP A or any similar state statute, and any claim arising directly or indirectly out of, or in any way relating to, the claims that actually were, or could have been, asserted in the Action.

> The parties define "Released Parties" as Power Home, its parents, subsidiaries, divisions, affiliates, predecessors, successors, assigns, partners, members, directors, officers, managers, employees, **agents,** licensees, agencies, attorneys, insurers, accountants and representatives.

> Such a release is consistent with the principles of *res judicata* because it only releases claims arising from the same nucleus of facts against the same defendant or its privies.

Here, the release and class is far more limited. The Settlement Class specifies a series of Agentra agents that discovery and settlement discussions revealed engaged in the use of telemarketing vendors to provide leads. The release provided is limited to telemarketing claims. Furthermore, the Settlement Class is limited to individuals *on the Class List* who *acquired an Agentra policy* during the call. In other words, there should be little or no overlap with Ms. Abboud's classes.

## VI. CONCLUSION

For the reasons set forth above and the entire record in this litigation, the Settlement warrants this Court's final approval, and Plaintiff's Counsel respectfully requests that the motion be granted. A Proposed Order is attached as Exhibit 3.

Respectfully submitted,

*/s/ Anthony I. Paronich*
Anthony I. Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com

*Attorneys for Plaintiffs and the Proposed Class*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 13, 2021, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system which will send notification to all counsel of

record.

*/s/ Anthony I. Paronich*
Anthony I. Paronich

- 26 -