IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEWART ABRAMSON and JAMES EVERETT SHELTON, individually and on behalf of a class of all persons and entities similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| and | ) ) | Civil Action No. 18-615 |
| MONICA ABBOUD | ) ) | |
| Intervenor Plaintiff, | ) ) | |
| vs. | ) ) | |
| AGENTRA, LLC, | ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Plaintiff Stewart Abramson commenced this class action in May 2018, bringing claims individually and on behalf of a class of all persons and entities similarly situated. The Complaint was amended twice. The operative pleading here is the Second Amended Complaint which was brought by Abramson and James Everett Shelton ("Plaintiffs") and filed in April 2019. (ECF No. 56.)

Presently before the Court is Plaintiffs' Motion for Final Approval of Class Action Settlement (ECF No. 145). Their motion has been fully briefed and a final fairness hearing was held.  For the reasons discussed herein, Plaintiffs' motion will be granted in part and denied in part.

## I. Relevant Procedural and Factual Background

Defendant Agentra, LLC ("Agentra") provides health insurance contracts to consumers. (ECF No. 56 ¶ 32.) In the Second Amended Complaint, Plaintiffs allege that Agentra violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*, by using telemarketing techniques such as an automatic telephone dialing system ("ATDS") and pre-recorded messages to send automated calls to promote new clients. (*Id.* ¶¶ 34, 35.) Plaintiffs claim that Agentra accomplishes its telemarketing strategy by contracting with third-party providers such as Defendants Angelic Marketing Group LLC and Matthew Jones.[1] (*Id.* ¶ 35.)

Both named Plaintiffs allegedly received pre-recorded telemarketing calls on behalf of Agentra. (*Id.* ¶¶ 37, 42–44, 49.) As explained in the Second Amended Complaint, they sought to represent the following class:

> All persons within the United States to whom: (a) Agentra and/or a third party acting on their behalf, made one or more non-emergency telephone calls; (b) that could have promoted Agentra's products or services; (c) to their cellular telephone number or a residential telephone number; (d) using an artificial or prerecorded voice; and (e) at any time in the period that begins four years before the date of the filing of this Complaint to trial.

(*Id.* ¶ 84.)

After the Court issued a Case Management Order that established various pretrial deadlines. Plaintiffs directed extensive discovery related to class certification and other issues both to Agentra and various third parties. As evidenced by the docket, it was necessary for Plaintiffs to file multiple discovery motions in order to obtain documents and information relevant to their

---

[1] Karen Marie Edwards and Theresa Jones were also named as defendants in the Second Amended Complaint. In June 2019, Plaintiffs voluntarily discontinued their claims against them. (ECF No. 75.) While Defendants Angelic Marketing Group LLC and Matthew Jones were originally represented by counsel, their counsel later sought and was granted leave to withdraw. (ECF No. 84.) After that time, these defendants have not been represented by counsel, have not participated in this lawsuit, and are not parties to the proposed settlement. Without objection, they were dismissed without prejudice on July 22, 2021. (ECF No. 152.)

claims. (ECF Nos. 52, 64, 79, 82, 93.) Through this discovery, which resulted in the production of thousands of pages of documents, Plaintiffs explored various issues, including the relationship between Agentra and various agents, vendors, sub-vendors and call centers, calls made and policies and procedures for compliance with the TCPA. (ECF No. 145-2 (Declaration of Plaintiffs' Counsel ("Paronich Decl.")) ¶ 8.) Discovery confirmed that neither Agentra nor any of its insurance agents contacted Plaintiffs. (*Id.* ¶ 9.) Rather, Agentra's insurance agents frequently hired vendors who sold insurance leads to multiple companies on a non-exclusive basis. (*Id.*) These vendors would retain sub-vendors to provide those leads and the sub-vendors hired calling centers that made pre-recorded message calls. (*Id.*)

Near the conclusion of discovery, the parties mediated the case with Bruce Friedman, who has extensive experience mediating and litigating TCPA matters. (ECF No. 136-1 ("Friedman Decl.") ¶¶ 3–5.) In December 2019, Plaintiffs and Agentra moved for an extension of time to complete discovery, noting that while the mediation with Mr. Friedman was unsuccessful, they continued to make progress towards resolution and requested a 30-day extension of all deadlines. (ECF No. 100.) This motion was granted. (ECF No. 101.)

In April 2020, Plaintiffs and Agentra jointly informed the Court that they had reached a settlement. (ECF No. 110.) For the next several months, however, Agentra disputed whether the parties had entered into a final enforceable agreement. (ECF Nos. 115, 116, 117.) Plaintiffs moved to enforce the settlement (ECF No. 115) and in August 2020, after full briefing and an evidentiary hearing, the Court granted Plaintiffs' motion, finding that the parties had entered into an enforceable settlement. (ECF No. 119.) Plaintiffs then filed a Motion for Preliminary Approval of Class Action Settlement and attached various exhibits, including the proposed Class Action

Settlement Agreement, the Declaration of Plaintiffs' counsel, and a proposed preliminary approval order. (ECF No. 120.)

### A. Key Terms of the Class Action Settlement Agreement

The class action settlement agreement (ECF No. 120-1 ("Settlement Agreement")) established a non-reversionary $275,000.00 fund to be distributed *pro rata* to settlement class members who filed a valid claim after payment of settlement administration expenses, attorneys' fees and costs, and a service award to each of the named Plaintiffs. (Settlement Agreement ¶ 4(a).) The parties agreed that multiple subscribers and/or users of any unique telephone number would be limited to a single recovery per call. (*Id.* ¶ 4(e).) Any amount remaining in the fund would be distributed to a Court-approved *cy pres* recipient. (*Id.* ¶ 4(f).) The parties proposed National Consumer Law Center as an appropriate recipient. (*Id.*)

Agentra also agreed to take certain remedial steps to ensure compliance with TCPA. This includes implementing enhanced TCPA compliance policies & procedures; conducting commercially-reasonable due diligence of agents before engaging them and regularly thereafter; contractually requiring agent vendors to comply with all applicable laws, including the TCPA, when conducting lead generation activities on its behalf; and monitoring and tracking consumer complaints to identify and remediate compliance concerns. (*Id.* ¶ 4(a)(4).)

Under the Settlement Agreement, Kurtzman Carson Consultants, LLC ("KCC") was retained to disseminate the class notice, respond to inquiries from class members, and to administer the settlement. (*Id.* ¶¶ 3, 6, 11.) Agentra agreed to prepare a list of class members and provide that list to the settlement administrator. (*Id.* ¶ 9.) The settlement administrator would then perform any further investigation necessary to identify the current mailing addresses for individuals included on the list. (*Id.*) The settlement administrator's responsibilities included reviewing all submitted

claim forms to ensure compliance with the Settlement Agreement, making eligibility determinations, maintaining records of the submissions, and distributing proceeds from the settlement fund. (*Id.* ¶ 4(b)–(e).)

The parties agreed that in exchange for settlement benefits, the class members who did not timely opt out of the settlement would release Agentra from all telemarketing claims against it for calls made by certain agents identified in the class definition who had contacted the settlement class members. (*Id.* ¶ 5, *see id.* ¶ 2) In this regard, the Settlement Agreement specified that "mass" or "class" claims filed by third parties on behalf of a "mass" or "class" of the settlement class members, when not signed by each individual class member, would not be valid. (*Id.* ¶ 12.)

B. <u>Preliminary Approval and Class Notice</u>

In an order dated September 4, 2020, the Court granted Plaintiff's Motion for Preliminary Approval of Class Action Settlement, approved the proposed notice to the settlement class, and provisionally certified the following settlement class:

> Plaintiffs and all persons contacted by Alexander Glynn, Ann Fils, Charles Donisi, Jacon Mcleod, Jake Gabbard, Jason Espinoza, Kristina Calo, Scott Shapiro, Steve Guerrero, Witfield Jean-Baptiste, or Theresa Jones (or on behalf of any individual Agent, whether by a downline sub-agent, vendor, or other third party) regarding the sale of a product offered by Agentra at any time between May 8, 2014 to February 1, 2020 that were contacted on a cellular telephone or while they were on the National Do Not Call Registry for at least 30 days.

(ECF No. 121 ¶ 4.)

Pursuant to the terms of the Settlement Agreement, Agentra identified the members of the class based on its business records. (Settlement Agreement ¶¶ 2, 9.) This settlement class list, which consisted of 19,860 individuals who bought Agentra policies, was provided to the settlement administrator. (ECF No. 141-1 (Declaration of Settlement Administrator Jay Geraci ("KCC Decl.")) ¶ 5; ECF No. 145 at 24–25.) After screening for duplicate records and verifying the validity of mailing addresses, the settlement administrator mailed copies of the notice and claim

forms that were approved by the Court to 19,683 settlement class members, all of whom were given the opportunity to make a claim, object, or request to opt out of the settlement. (KCC Decl. ¶¶ 5, 6.)

The notice mailed to the class members specifically advised them that the settlement "will provide $275,000 to pay Cash Awards to all called persons by certain agents of Agentra, LLC, or their vendors, that were sold an Agentra product between May 8, 2014 to February 1, 2020 . . . ." (KCC Decl., Ex. D at 1.) Class members were advised that:

> If you received a notice in the mail, it is because records in the case indicate that you are a member of the proposed Settlement Class in this Action. Generally, this means that an Agentra agent, or one of their vendors, called your phone number to sell an Agentra product at any time between May 8, 2014 to February 1, 2020 on your cellular telephone or while you were on the National Do Not Call Registry for at least 30 days.

(Ex. D at 2.)

The notice also explained that:

> The Settlement provides certain relief for the Settlement Class. The "Settlement Class" means the persons on the Class List. For self-identification purposes, the Class List may be described as: Plaintiffs and all persons contacted by Alexander Glynn, Ann Fils, Charles Donisi, Jacon Mcleod, Jake Gabbard, Jason Espinoza, Kristina Calo, Scott Shapiro, Steve Guerrero, Witfield Jean-Baptiste, or Theresa Jones (or on behalf of any individual Agent, whether by a downline sub-agent, vendor, or other third party) regarding the sale of a product offered by Agentra at any time between May 8, 2014 to February 1, 2020 that were contacted on a cellular telephone or while they were on the National Do Not Call Registry for at least 30 days.

(*Id.* at 3.)

The claim form included with the notice requested claimants to identify the phone number at which an individual received a call. (KCC Decl., Ex. C.) This form explained to the claimants that "[y]our phone number must be listed in our records as one of the phone numbers that was called as part of calls that resulted in the sale of Agentra, LLC product and included as part of the settlement." (*Id.*)

6

The *pro rata* distribution proposal, as well as the specific amount of Plaintiffs' counsel's proposed fees (up to $91,666.66), costs (not anticipated to exceed $11,250.00) and incentive awards (up to $ 5000.00) to each named Plaintiff were disclosed in the notices sent to the settlement class members. (KCC Decl., Ex. C & D.)

The settlement administrator also mailed the notices required by the Class Action Fairness Act of 2005, 28 U.S.C. §1715,  to the United States Attorney General, the Attorneys Generals of each of the 50 States and the District of Columbia, the Attorneys General of the five recognized U.S. Territories, as well as parties of interest to this lawsuit. (KCC Decl. ¶ 3; *see id.*, Ex. A & B.) There were no objections from any of the recipients who received this notice. (KCC Decl. ¶ 4.)

Additionally, the settlement administrator established a dedicated website from which visitors could download copies of the notice and claims forms as well as submit claims online. (*Id.* ¶ 9.) This website received 2,427 visits. (*Id.*) The settlement administrator also established a toll-free telephone support line for potential class members to call and obtain information about the settlement. (*Id.* ¶ 10.) This hotline received 216 phone calls. (*Id.*)

### C. Response from Settlement Class Members

After the notice was sent, one of the settlement class members, Monica Abboud ("Abboud"), moved to intervene in this lawsuit. (ECF No. 128.) Abboud is litigating a separate TCPA class action lawsuit against Agentra in the U.S. District Court for the Northern District of Texas that was commenced in January 2019. (ECF No. 138 at 1.) While Plaintiffs' allegations are limited to unsolicited calls with pre-recorded messages, Abboud's claims on behalf of the class include both calls and texts from Agentra. (*Id.* at 2.)

Abboud and Agentra participated in a mediation with the same mediator who mediated the dispute between Plaintiffs and Agentra. (*Id.*) Abboud represents that during that mediation,

Agentra produced certain financial documents which Abboud and her counsel considered insufficient to make a fair evaluation of Agentra's financial position. (*Id.* at 2–3.) The Abboud mediation was unsuccessful. (*Id.* at 3.)

Ten days after this Court preliminarily approved the settlement and provisionally certified the settlement class, the District Court for the Northern District of Texas certified the two classes that Abboud had proposed in her lawsuit. The first was a "text class" of consumers who received texts from Agentra's internal "CRM" system. An "agent class" of consumers who were called by the same two agents who called Abboud—Health Care Enrollment Center ("HCEC") and Life and Health Insurance Services ("LHIS") was also certified. (*Id.* at 3–4.) HCEC is associated with Jake Gabbard, and LHIS is a company run by Jason Espinoza. (*Id.* at 3.)

Because both Gabbard and Espinoza are included in the settlement class release, the provisionally certified settlement class in this lawsuit essentially subsumes Abboud's "agent class." (*Id.* ¶ 5.) Given this, coupled with the fact that her prior settlement efforts had stalled because she was unable to evaluate Agentra's financial health, Abboud expressed concern that the value of the settlement reached in this lawsuit was insufficient to redress the injuries suffered by her "agent class." (*Id.*) As a result, she sought to intervene and asked the Court to modify the protective order in this lawsuit so that she could evaluate the financial documents that supported the Settlement Agreement. (*Id.*) The Court granted Abboud's motion to intervene and allowed her to review any confidential information that was necessary to evaluate the fairness of the settlement. (ECF No. 139.)

After reviewing relevant information, Abboud objected to the Settlement Agreement. (ECF No. 140.) She maintained that based on the limited financial documentation produced by Agentra, Plaintiffs' counsel could not have reasonably concluded that a $275,000 fund would be a fair,

reasonable, or adequate exchange for the broad release set forth in the Settlement Agreement given that it releases certain agents who did not call the named Plaintiffs. (*Id.* at 1–2, 14.) Agentra opposed Abboud's objection (ECF No. 144) and Plaintiffs also addressed her objection in their motion for final approval of the Settlement Agreement. (ECF No. 145 at 22–25.)

Other than Abboud's objection, only one other settlement class member opted out and requested to be excluded from the Settlement Agreement. (KCC Decl. ¶ 13; *see id.*, Ex. F.) In contrast, 2,085 claims covering 2,093 phone numbers were received, reviewed, and found to be presumptively valid by the settlement administrator. (KCC Decl. ¶ 11.)

The total cost of settlement administration expenses is estimated to be $60,785.24. (*Id.* ¶ 15.) The settlement administrator estimates that the settlement class members who do not opt out will each receive a cash payment from this fund of a minimum of $48.39 and a maximum of $145.17, depending on how many of their telephone numbers were contacted. (KCC Decl. ¶ 14.)

### D. Final Fairness Hearing

Plaintiffs' Motion for Final Approval of a Class Action Settlement and Incorporated Memorandum in Support was filed on January 13, 2021. (ECF No. 145.) In support their motion, Plaintiffs submitted declarations from their counsel and from the settlement administrator. A final fairness hearing was held on January 28, 2021.[2] (ECF No. 147 ("Hr'g Tr.").)

At the hearing, both Plaintiffs and Agentra presented arguments supporting their position that the settlement was fair and reasonable. In turn, Abboud reiterated her objection. The Court requested Agentra's counsel to submit the confidential financial documentation that prompted

---

[2] The Settlement Agreement, the Paronich Decl., the KCC Decl. and the declaration of Plaintiffs' counsel in opposition to Abboud's motion to intervene (ECF No.137-1) were all admitted into evidence at the final fairness hearing. (Hr'g Tr. at 13–14.)

Abboud's objection for *in camera* review. (Hr'g Tr. at 39.) This documentation was provided after the hearing and has been reviewed by the Court. (ECF No. 146.)

During the hearing, the Court addressed whether clarification of the provisionally certified settlement class was necessary to resolve what might be construed as an ambiguity. (*Id.* at 37.) The provisionally certified class encompassed individuals who were "contacted regarding the *sale of a product* offered by Agentra." Both Plaintiffs and Agentra confirmed that this includes only those who actually purchased a policy. The class notice that was distributed also accurately reflects that the settlement class consisted of only those individuals who *purchased* an Agentra policy. (*Id.* at 22.) Moreover, the class list generated by Agentra was limited to individuals who bought a policy. Thus, the clear intent was to limit the class to purchasers of an Agentra policy.

During the hearing, Plaintiffs, and Agentra agreed that the class description should be clarified to make it clear that, as stated in the class notice, the settlement class is limited to only those individuals who purchased an Agentra policy and to whom notice was sent. (*Id.* at 36, 37.) Based on that discussion, and the parties' agreement, it is recommended that the description of the settlement class, but not the class itself, should be modified as follows so that it accurately describes the class as including:

> Plaintiffs and all persons contacted by Alexander Glynn, Ann Fils, Charles Donisi, Jacon Mcleod, Jake Gabbard, Jason Espinoza, Kristina Calo, Scott Shapiro, Steve Guerrero, Witfield Jean-Baptiste, or Theresa Jones (or on behalf of any individual Agent, whether by a downline sub-agent, vendor, or other third party) <u>who were sold an Agentra product</u> ~~regarding the sale of a product offered by Agentra~~ at any time between May 8, 2014 to February 1, 2020, that were contacted on a cellular telephone or while they were on the National Do Not Call Registry for at least 30 days.

The Court also inquired during the hearing about the discrepancy in the amount of the service awards for the named Plaintiffs between what is stated in the motion for preliminary approval ($5,000 each) and the amount sought in the motion for final approval of the Settlement

Agreement. ($10,000 each). (Hr'g Tr. at 20.) Plaintiffs' counsel stated that "the preliminary approval motion was a typographical error that [he took] responsibility for." (*Id.*) A $5,000 award amount was disclosed in the notice to the class, however.

## II.   Discussion

"A court presented with a joint request for approval of a class certification and settlement must separate its analysis of the class certification from its determination that the settlement is fair." *Rossini v. PNC Fin. Servs. Grp., Inc.*, No. 2:18-CV-1370, 2020 WL 3481458, at *5 (W.D. Pa. June 26, 2020) (quoting *Serrano v. Sterling Testing Sys., Inc.*, 711 F. Supp. 2d 402, 410 (E.D. Pa. 2010)). To certify the proposed settlement class, the Court must ensure that the putative class satisfies "the Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy of representation, as well as the relevant 23(b) requirements[.]" *Id.* (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 778 (3d Cir. 1995)). After certification, the Court then must "review the settlement agreement to determine whether it is 'fair, reasonable, and adequate' under Fed. R. Civ. P. 23(e)(2)." *Id.*

As discussed above, in relation to the final fairness hearing, the final certified settlement class should be defined as follows:

> Plaintiffs and all persons contacted by Alexander Glynn, Ann Fils, Charles Donisi, Jacon Mcleod, Jake Gabbard, Jason Espinoza, Kristina Calo, Scott Shapiro, Steve Guerrero, Witfield Jean-Baptiste, or Theresa Jones (or on behalf of any individual Agent, whether by a downline sub-agent, vendor, or other third party) who were sold an Agentra product at any time between May 8, 2014 to February 1, 2020, that were contacted on a cellular telephone or while they were on the National Do Not Call Registry for at least 30 days.

Based on this definition, the settlement class consists of 19,683 individuals. At this time, 2,085 claims covering 2,093 phone numbers have been received, reviewed, and found to be presumptively valid. Depending on how many of their telephone numbers were contacted, the present per claim estimated payment is a minimum of $48.39 and a maximum of $145.17.

The Court will first address whether final class certification should be granted, and then turn to the fairness of the settlement. This will be followed by a brief discussion of Abboud's objection, the reasonableness of Plaintiffs' counsel fees and costs, and the request to increase the named Plaintiffs' service awards.

A.  Final Class Certification

Motions to certify a class are governed by Rule 23(a) and (b) of the Federal Rules of Civil Procedure. Every class action must satisfy the requirements of Rule 23(a) as well as those of Rule 23(b)(1), (2) or (3). The Third Circuit has instructed district courts to conduct a "rigorous analysis" of the arguments and evidence presented to decide whether class certification is appropriate. *In re Lamictal Direct Purchaser Antitrust Litig.*, 957 F.3d 184, 190–91 (3d Cir. 2020).

As explained below, the settlement class satisfies the threshold Rule 23(a) requirements of "numerosity, commonality, typicality, and adequacy of representation, " *In re Gen. Motors Corp.*, 55 F.3d at 778, as well as the Rule 23(b)(3) requirements that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The settlement class also complies with the Third Circuit mandate that that a Rule 23(b)(3) class be "currently and readily ascertainable." *Marcus v. BMW of N.Am., LLC*, 687 F.3d 583, 593 (3d Cir. 2012).

**1.  Rule 23(a) prerequisites**

*Numerosity*

Rule 23(a)(1) requires that a purported class be "so numerous that joinder of all members is impracticable." Fed R. Civ. P. 23(a)(1). The Third Circuit has explained that "although 'no minimum number of plaintiffs is required to maintain a suit as a class action,' a plaintiff in this

circuit can generally satisfy Rule 23(a)(1)'s numerosity requirement by establishing 'that the potential number of plaintiffs exceeds 40.'" *Mielo v. Steak 'n Shake Operations, Inc.*, 897 F.3d 467, 486 (3d Cir. 2018) (quoting *Stewart v. Abraham*, 275 F.3d 220, 226–27 (3d Cir. 2001)).

Here, the size of the class clearly meets the numerosity requirement.

### *Commonality*

Rule 23(a)(2) requires Plaintiffs to show that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This requirement is satisfied so long as the class members "share at least one question of fact or law in common with each other.'" *Reinig v. RBS Citizens, N.A.*, 912 F.3d 115, 127 (3d Cir. 2018) (quoting *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 528 (3d Cir. 2004)). To be sure, commonality is not met merely upon a showing that the claims of the class members "depend upon a common contention." Rather, "that common contention . . . must [also] be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

Here, the settlement class members share various questions of fact and law in common with each other that are capable of classwide resolution. The claims asserted by Plaintiffs on behalf of the entire class turn on common questions of fact about the nature of Agentra's telemarketing practices that resulted in a sale of an Agentra product to class members. Class members allegedly were called on their cellular phones without their consent by an Agentra agent or vendor and purchased an Agentra product as a result. Common questions of law include whether Agentra is vicariously liable for the conduct of its agents or vendors, whether the dialing systems used constituted ATDS as that term is defined under the TCPA, whether Agentra's violations were

knowing or willful, and the statutory damages to which they may be entitled under the TCPA. Thus, the commonality requirement is satisfied.

*Typicality*

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The typicality requirement "ensur[es] that the class representatives are sufficiently *similar* to the rest of the class—in terms of their legal claims, factual circumstances, and stake in the litigation—so that certifying those individuals to represent the class will be fair to the rest of the proposed class." *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 597 (3d Cir. 2009) (citations omitted). This requirement is satisfied where there is a "strong similarity of legal theories or where the claim arises from the same practice or course of conduct." *In re Nat'l Football League Players Concussion Inj. Litig.*, 821 F.3d 410, 428 (3d Cir. 2016) (citation omitted).

Here, the claims of the individual Plaintiffs and those of the class arise from the same practice or course of conduct by Agentra. Members of the class purchased an Agentra product after they were allegedly improperly contacted by telephone. Plaintiffs claim that Agentra's agents improperly engaged in telemarketing using an ATDS or an artificial or pre-recorded voice to contact settlement class members' telephones without obtaining prior express consent. While Plaintiffs' individual claims as alleged in the Second Amended Complaint are limited to receiving pre-recorded messages, Plaintiffs' claims are typical of the settlement class members because they were allegedly subjected to the same Agentra practices, they would be entitled to the same statutory damages and both Plaintiffs and their stake in the litigation is comparable to all class members. Thus, the typicality requirement is satisfied.

*Adequacy of Representation*

Finally, Rule 23(a)(4) requires that "the representative parties fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequate representation depends on two factors: "(a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (b) the plaintiff must not have interests antagonistic to those of the class." *Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239, 247 (3d Cir. 1975). Both requirements are met here.

As reflected in his declaration, Plaintiffs' counsel has substantial experience in litigating consumer class actions and other complex commercial cases. (Paronich Decl. ¶¶ 3–7.) Moreover, counsel's representation over the course of this lawsuit confirms that he can protect the interests of the settlement class. He conducted extensive discovery, engaged in motion practice as necessary to advance the claims of the class members, agreed to engage in settlement negotiations with an experienced mediator only after obtaining relevant discovery and succeeded in enforcing the settlement that was reached.

In addition, there are no known or apparent conflicts between the interests of the named Plaintiffs and those of the settlement class members or any basis to conclude that the representative Plaintiffs' interests are in any way antagonistic to those of the class.

This, all of the Rule 23(a) prerequisites are met.

## 2. Rule 23(b)(3) requirements

Plaintiffs seek certification under Rule 23(b)(3), which requires the Court to find that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

The Third Circuit has explained that "Rule 23(b)'s predominance requirement incorporates Rule 23(a)'s commonality requirement because the former, although similar, is 'far more demanding' than the latter. *Reinig*, 912 F.3d at 127 (quoting *In re Warfarin*, 391 F.3d at 528). This element "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Gonzalez v. Corning*, 885 F.3d 186, 195 (3d Cir. 2018) (quoting *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 310 (3d Cir. 2008)). The focus of the predominance inquiry is "on whether the defendant's conduct was common as to all of the class members, and whether all of the class members were harmed by the defendant's conduct." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 298 (3d Cir. 2011). "To assess whether predominance is met at the class certification stage, a district court must determine whether the essential elements of the claims brought by a putative class are 'capable of proof at trial through evidence that is common to the class rather than individual to its members.'" *Gonzalez*, 885 F.3d at 195 (quoting *In re Hydrogen Peroxide*, 552 F.3d at 311–12).

Plaintiffs have alleged a common course of conduct by Agentra, that is, the unlawful telemarketing strategy it employs to sell its products. While there may be some differences between individual claimants' cases, common factual and legal issues related to Plaintiffs' claims on behalf of the settlement class predominate over individual issues. All claims arise under the TCPA and seek statutory damages related to calls to all class members which promoted Agentra's products. Agentra allegedly did not have consent to make or cause third parties to make such calls. All class members bought an Agentra product. Further, many of the defenses that Agentra has asserted or may assert, such as whether it is vicariously liable for the allegedly unlawful conduct and whether the calls were made using an ATDS, will be common to the settlement class. For these reasons, the predominance requirement is met.

To determine whether the superiority requirement is satisfied, the court evaluates, "in terms of fairness and efficiency, the merits of a class action against those alternative available methods of adjudication." *In re Warfarin*, 391 F.3d at 534 (quoting *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 316 (3d Cir. 1998)). In making this evaluation, the Court considers "the class members' interests in individually controlling litigation, the extent, and nature of any litigation, the desirability, or undesirability of concentrating the litigation, and the likely difficulties in managing a class action. *In re Nat'l Football League*, 821 F.3d at 435 (citing Fed. R. Civ. P. 23(b)(3)(A)–(D)).

When "[c]onfronted with a request for settlement-only class certification," the Court need not consider the final factor—i.e., difficulties in managing a class action—because "the proposal is that there be no trial." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). As for the remaining factors however, this class action is superior to other available methods because it is neither economically feasible, nor judicially efficient, for more than 2,000 class members who have submitted claims, let along the more than 19,000 who were sold an Agentra product, to pursue individual claims against Agentra. A classwide settlement will not only achieve resolution of the class members' claims without the need for multiple lawsuits and trials, but also ensures that similarly situated members are treated uniformly.

In sum, a class action is the superior mechanism for resolving this controversy both in terms of efficiency and fairness.

### 3.   The settlement class is ascertainable

The Third Circuit has explained that "[a]scertainability is an 'essential prerequisite,' or an *implied* requirement, of Rule 23, 'at least with respect to actions under Rule 23(b)(3).'" *Byrd v. Aaron's Inc.*, 784 F.3d 154, 163 n.5 (3d Cir. 2015) (quoting *Marcus*, 687 F.3d at 592–93). Under

this two-fold inquiry, a plaintiff must establish that: "(1) the class is 'defined with reference to objective criteria'; and (2) there is 'a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition.'" *Id.* at 163 (quoting *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 355 (3d Cir. 2013)).

Here, the class has been defined with objective criteria. The settlement class is comprised of those individuals who were contacted on a cellular phone by an agent or vendor of Agentra during a specified time period and bought an Agentra policy as a result of that contact. A reliable mechanism was used to determine whether putative class members fell within the class definition. The class list was identified based on Agentra's own business records and included names, addresses, and telephone numbers. After screening for duplicate records and verifying the validity of mailing addresses, the settlement administrator mailed copies of the notice and claim forms approved by the Court to 19,683 settlement class members and engaged in the necessary follow up regarding claims forms received to ensure that claimants fell within the class definition.

There is thus no question that the settlement class is "currently and readily ascertainable." *Marcus*, 687 F.3d at 593.

As such, because the requirements of Rule 23(a) and Rule 23(b)(3) are satisfied, final class certification of the settlement class is appropriate.

B.  Fairness of the Settlement

Next, the Court must determine whether the Settlement Agreement is "fair, reasonable, and adequate" under Rule 23(e). Fed. R. Civ. P. 23(e)(2). "Where, as here, the parties seek simultaneous class certification and settlement approval, courts should be 'even more scrupulous than usual when they examine the fairness of the proposed settlement.'" *In re: Google Inc. Cookie Placement Consumer Privacy Litig.*, 934 F.3d 316, 322 (3d Cir. 2019) (quoting *In re Prudential*

*Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 316 (3d Cir. 1998)). Such an exacting review "ensure[s] that class counsel has demonstrated sustained advocacy throughout the course of the proceedings and has protected the interests of all class members." *Id.* at 326 (quoting *In re Prudential*, 148 F.3d at 317).

At the same time, "[t]he law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *In re Gen. Motors Corp.*, 55 F.3d at 784 (citations omitted). As a result, courts in this circuit apply a presumption of fairness when reviewing a proposed settlement if certain conditions are satisfied. This analysis begins with a determination of whether the presumption of fairness applies, followed by an evaluation of the settlement given the relevant factors and considerations under Third Circuit precedent.[3]

---

[3] Effective December 1, 2018, Rule 23(e)(2) was amended to include the following considerations to guide a court's determination of the fairness, reasonableness, and adequacy of a settlement. It includes whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). The Advisory Committee Notes recognize that before the addition to Rule 23(e)(2) of these explicit factors to consider, circuit courts had developed their own lists of factors to determine whether a settlement was fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2) advisory committee's notes (2018 amendments). The Advisory Committee Notes also explain: "The goal of this amendment is not to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." *Id.* Notwithstanding the amendment of Rule 23(e)(2), the Third Circuit continues to advise district courts to assess the fairness, reasonableness, and adequacy of a settlement applying the *Girsh* factors, the relevant *Prudential* considerations, and the *Baby Products* direct benefit consideration. *See In re Google Inc.*, 934 F.3d at 329.

### 1. The presumption of fairness applies

The Third Circuit has instructed courts to apply "an initial presumption of fairness . . . where: '(1) the settlement negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected.'" *In re Warfarin*, 391 F.3d at 535 (quoting *In re Cendant Corp. Litig.*, 264 F.3d 201, 232 n.18 (3d Cir. 2001)). All of these factors are satisfied here.

The settlement negotiations were conducted at arm's length with guidance from an experienced mediator who concluded that both counsel for Plaintiffs and for Agentra were professional, thorough and well informed during the mediation. (Friedman Decl. ¶¶ 8, 9.) Negotiations continued after the formal mediation process, ultimately resulting in an agreement as to the terms of a settlement. While counsel for Agentra later disputed that the parties had agreed on all terms, the Court ultimately determined that the parties had, in fact, reached an enforceable settlement.

The parties also engaged in sufficient discovery to inform their negotiations before a settlement was reached. Plaintiffs directed discovery to Agentra and various third parties in which they explored class certification issues as well as Agentra's potential vicarious liability. This confirms that the case was not settled until Plaintiffs conducted sufficient investigation to allow them to evaluate the strengths and weaknesses of their claims.

Additionally, as discussed, Plaintiffs' counsel is highly experienced in similar class action litigation, and Agentra's counsel is capably defending Agentra's interests in this case and is also defending Agentra in a similar class action lawsuit filed by Abboud.

Finally, after notice was given to over 99% of the settlement class members, there was only one objection and one request for exclusion.

Given these factors, the proposed settlement is entitled to a presumption of fairness.

### 2. The Girsh factors favor approval

In *Girsh v. Jepson*, the Third Circuit directed district courts to consider nine factors ("*Girsh* factors") in evaluating the fairness of a classwide settlement:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

521 F.2d 153, 157 (3d Cir. 1975) (internal quotation marks and ellipses omitted). The Court "must make findings as to each of the nine *Girsh* factors in order to approve a settlement as fair, reasonable, and adequate, as required by Rule 23(e)." *In re Pet Food Prod. Liab. Litig.*, 629 F.3d 333, 350 (3d Cir. 2010).

*Complexity, expense, and likely duration of the litigation*

The first *Girsh* factor "captures the probable costs, in both time and money, of continued litigation." *In re Cendant*, 264 F.3d at 233. This factor promotes approval of the settlement if a case requires "complex and protracted discovery, extensive trial preparation, and difficult legal and factual issues." *Id.*

If that this litigation was to continue, it is likely to be protracted and costly.  Significant disputed issues such as Agentra's vicarious liability, whether its alleged conduct was knowing and willful and whether calls were made using an ATDS are likely to require substantial additional discovery, extensive motion practice and complex legal and factual analysis. Class certification and dispositive motions would have to be briefed and resolved. Depending on the outcome of these

matters, the case could proceed to trial and appeal, adding further layers of time and expense.  In short, the path forward would be costly.

Because the proposed settlement permits the parties to avoid this significant expenditure of time and resources while providing a recovery to the settlement class, this factor supports approving the settlement.

<em>Reaction of the class</em>

The second *Girsh* factor "attempts to gauge whether members of the class support the settlement." *In re Warfarin*, 391 F.3d at 536. One metric to assess this factor is "the number of objectors . . . in light of the number of notices sent and claims filed." *Cendant*, 264 F.3d at 234. Here, out of the 19,683 class members, only one has objected and one has opted out. In contrast, more than 2,000 settlement class members have filed claims. This factor also favors approval of the settlement.

<em>Stage of proceedings and amount of discovery completed</em>

Through the "lens" of the third *Girsh* factor, the stage of the proceedings and the amount of discovery competed, "courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Prudential*, 148 F.3d at 319 (quoting *In re Gen. Motors Corp.*, 55 F.3d at 813). As already noted, the parties engaged in settlement negotiations after Plaintiffs had conducted the investigation and discovery that would facilitate evaluation of the strengths and weaknesses of their case. During discovery, the parties exchanged documents relating to the vendors used to make the calls to putative class members, the relationship between the Agentra and its insurance agents and the targets of the telemarketing campaigns. This shows that Plaintiffs' counsel had a sufficient appreciation of the relevant facts and the merits of the claims asserted before the parties engaged in settlement negotiations.

Based on the nature and extent of the discovery in which Plaintiffs engaged before participating in settlement negotiations as well as their diligence in pursuing the necessary discovery through motions practice, the third *Girsh* factor is satisfied.

### *Risks of establishing liability and damages*

The fourth and fifth *Girsh* factors "survey the potential risks and rewards of proceeding to litigation in order to weigh the likelihood of success against the benefits of an immediate settlement." *In re Warfarin*, 391 F.3d at 537. "By evaluating the risks of establishing liability, the district court can examine what the potential rewards (or downside) of litigation might have been had class counsel elected to litigate the claims rather than settle them." *In re Gen. Motors Corp*., 55 F.3d at 814.

Plaintiffs assert that class certification is "far from automatic" in TCPA cases. Here, if this case proceeds to trial, Plaintiffs must attempt to prove, among other matters, that the devices used to make the calls were ATDS under the meaning of TCPA, and that Agentra is vicariously liable for those calls.

As for the first issue, the Supreme Court recently resolved a split among the circuits over what constitutes an ATDS under the definition set forth in the TCPA. In *Facebook, Inc. v. Duguid*, the Supreme Court held that to qualify as an ATDS, "a device must have the capacity either to store a telephone number using a random or sequential generator or to produce a telephone number using a random or sequential number generator." 141 S. Ct. 1163, 1167 (2021). This narrow definition of ATDS favors Agentra's position and adds another layer of complexity in establishing liability.

As Plaintiff are seeking vicarious liability as to Agentra, they have the burden of proving a master-servant relationship. *I.H. ex rel. Litz v. County of Lehigh,* 610 F.3d 797, 802 (3d Cir.

2010).  Neither Agentra nor any of its insurance agents contacted Plaintiffs. According to the agreements between Agentra and its sales agents, the agents were independent contractors who had the sole right to determine the means by which they conducted their business activities. The insurance agents hired vendors who sold insurance leads to multiple companies on a non-exclusive basis. These vendors then retained sub-vendors to provide those leads and in turn, the sub-vendors hired calling centers that made pre-recorded message calls. As Plaintiffs concede, "in order to prove Agentra's liability, the Plaintiffs would have to establish an agency relationship between Agentra and a caller that was at least four degrees of separation from their company."

Given these issues, Plaintiffs face significant uncertainties in establishing Agentra's liability which makes the evaluation of risk versus reward a compelling factor. While Plaintiffs potentially could obtain a better result at trial, on balance, a significant benefit will be achieved by resolving the action at this stage.

### *Likelihood of obtaining and keeping class certification through trial*

The sixth *Girsh* factor "measures the likelihood of obtaining and keeping a class certification if the action were to proceed to trial." *In re Warfarin*, 391 F.3d at 537. While "the standard for certification is the same for settlement classes as for conventional classes," *In re Gen. Motors Corp.*, 55 F.3d at 818, this risk remains a relevant consideration for conventional classes because "[a] district court retains the authority to decertify or modify a class at any time during the litigation if it proves to be unmanageable." *In re Warfarin*, 391 F.3d at 537. But in a settlement class, there are no such "management problems for the proposal is that there be no trial." *In re Nat'l Football League*, 821 F.3d at 440.

While this factor does not significantly weigh for or against settlement, it is evident that obtaining and keeping a conventional class certification poses substantially more hurdles and risks

than providing a remedy to class members through settlement. Discovery of individual class members or resolution of legal issues could lead to decertification or modification of the class or at a minimum, would create delay, additional expense and an uncertain outcome.

<i><u>Ability to withstand a greater judgment</u></i>

The seventh *Girsh* factor considers "whether the defendants could withstand a judgment for an amount significantly greater than the [s]ettlement." *In re Cendant*, 264 F.3d at 240. This factor "is most relevant when the defendant's professed inability to pay is used to justify the amount of the settlement." *In re National Football League*, 821 F.3d at 440.

This factor is relevant here. Agentra produced for *in camera* review a Declaration and confidential financial information about its financial status. The Court has reviewed this financial information as well as the accompanying Declaration. The Declaration represents that this information accurately reflects Agentra's financial condition and that it currently faces business disruption and additional liabilities. Nothing in the record suggests that this information is not accurate. Agentra is not a large public company with extensive financial resources. It is also litigating a similar class action brought by Abboud.

Based on Agentra's financial picture, there is a real risk that given the number of class members, the statutory damages to which each member of the class would be entitled and the ability to seek treble damages, the Court concludes that Agentra could not withstand a judgment in Plaintiffs' favor that is significantly greater than the settlement. The seventh *Girsh* factor favors approval.

<i><u>Reasonableness of the settlement</u></i>

The eighth and ninth *Girsh* factors assess "whether the settlement represents a good value for a weak case or a poor value for a strong case." *In re Warfarin*, 391 F.3d at 538. These factors

25

"test two sides of the same coin: reasonableness in light of the best possible recovery and reasonableness in light of the risks the parties would face if the case went to trial." *Id.* This assessment requires comparing "the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing" with "the amount of the proposed settlement." *In re General Motors*, 55 F.3d at 806. As noted in *In re Baby Products. Antitrust Litigation*, 708 F.3d 163 (3d Cir. 2013):

> Settlements are private contracts reflecting negotiated compromises. *Sullivan,* 667 F.3d at 312. The role of a district court is not to determine whether the settlement is the fairest possible resolution—a task particularly ill-advised given that the likelihood of success at trial (on which all settlements are based) can only be estimated imperfectly. The Court must determine whether the compromises reflected in the settlement—including those terms relating to the allocation of settlement funds—are fair, reasonable, and adequate when considered from the perspective of the class as a whole.

*Id.* at 173-74.

The settlement class consists of 19,683 individuals. As stated by the Settlement Administrator, 2,085 claims covering 2,093 phone numbers were received, reviewed, and found to be presumptively valid. Under the Settlement Agreement, each member of the class receives one share. Each share will permit a class member to receive a cash benefit equal to the net of the class recovery divided by the number of shares allocated to all class members who filed a valid and timely claim. Each claimant will receive $48.39 if they had one telephone number contracted and up to $145.17 if they had three numbers contacted. The minimum payment of $48.39 is within the range of other TCPA settlements approved across the country. *See, e.g.*, *Hashw v. Dep't Stores Nat. Bank*, 182 F. Supp. 3d 935, 944 (D. Minn, 2016) ($33.20); *Estrada v. Yogi, Inc.*, C.A. No. 13-1989, 2015 WL 589542, at *7 (E.D. Cal. Oct. 6, 2015) ($40.00); *In re Capital One Tel. Consumer Prot. Act. Litig.*, 80 F. Supp. 3d 781, 790 (N.D. Ill. 2015) ($34.60).  Simply put, each class member who has filed a claim will receive monetary compensation for their claim.

Settlement of a dispute undoubtedly represents a compromise, and the settlement amount per class member is less than the best possible recovery if Plaintiffs were to prevail at trial. The TCPA provides that each class member is entitled to an award of $500.00 in damages for each call made to their cellular phone using an ATDS, and up to treble damages if the conduct is found to be willful. 47 U.S.C. § 227(b)(3)(B).[4] At the same time, however, Plaintiffs face significant risks to establish Agentra's liability with respect to the ATDS issue and vicarious liability, among other issues. In balancing the benefits of settlement and the risks of proceeding with the litigation, the Court finds that the settlement is reasonable given the best possible recovery and the risks Plaintiffs face if they go to trial.  The Court therefore finds that the eighth and ninth *Girsh* factors support approval of the settlement.

As all of the *Girsh* factors favor approval, the Court finds that the settlement is "fair, reasonable, and adequate" to protect the interests of all class members.

### 3. *Prudential* Considerations

The Third Circuit has also instructed that, where relevant, the following considerations ("*Prudential* considerations") should be taken into account along with the *Girsh* factors:

> [T]he maturity of the underlying substantive issues, as measured by experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits, and other facts that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages; the existence and probable outcome of claims by other classes and subclasses; the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved—or likely to be achieved—for other claimants; whether class or subclass members are accorded the right to opt out of the settlement; whether any provisions for attorneys' fees are reasonable; and whether the procedure for processing individual claims under the settlement is fair and reasonable.

---

[4] Plaintiffs also note that some courts have reduced TCPA damages awarded in class actions lawsuits based on telemarketing compliance efforts. (ECF No. 145 at 23.)

*In re Prudential*, 148 F.3d at 323. But "[u]nlike the *Girsh* factors, each of which the district court must consider before approving a class settlement, the *Prudential* considerations are just that, prudential. They are permissive and non-exhaustive . . ." *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 174 (3d Cir. 2013). A reviewing court need only address those *Prudential* considerations that are relevant to the litigation in question. *In re Prudential*, 148 F.3d at 323–24.

The first *Prudential* consideration—the maturity of the substantive issues—advocates for the settlement. The Court has already determined that the parties conducted sufficient targeted discovery, understood the substantive issues, and appreciated the risks associated with continued litigation before engaging in settlement negotiations. This compels a finding that the settlement turned on a mature record.

The second and third *Prudential* considerations, which focus on the existence and probable outcomes of claims by other classes or other claimants, are not relevant in this litigation except as it may relate to Abboud's objection, which is discussed below.

The fourth *Prudential* consideration examines whether class or subclass members were given the right to opt out of the settlement. Here, the notice sent to the settlement class members advised them of their right to object or to be excluded from the settlement. There was only one objection and one request for exclusion.

The fifth *Prudential* consideration relates to the reasonableness of attorneys' fees. Plaintiffs' counsel fees and costs were disclosed in the notices sent to the settlement class members. The reasonableness of the requested fees is analyzed below.

Finally, the sixth *Prudential* consideration focuses on the procedure for processing individual claims. Here, the entire claims handling process was handled by the claims administrator, who has submitted a detailed declaration about the process that was employed. This

process was clear and transparent.  Among other things, the administrator established a website

and hot line, both of which supplied information and answered questions about the settlement. To

participate in the settlement, individual members were only required to submit simple claim forms.

They will receive a payment regardless if they retained telephone records or any other proof related

to receipt of calls that violated the TCPA. (ECF No. 145 at 15.) Payments to claimants will be

made after final approval. (*Id.* at 15–16.) The Court finds this procedure to be fair and reasonable.

Thus, the relevant *Prudential* considerations favor approval of the settlement.

### 4.   *Baby Products* Consideration

Finally, in *In re Baby Products Antitrust Litig.*, the Third Circuit articulated another

consideration for evaluating a settlement: "the degree of direct benefit provided to the class. 708

F.3d 163, 174 (3d Cir. 2013). The Third Circuit explained:

> In making this determination, a district court may consider, among other things, the
> number of individual awards compared to both the number of claims and the
> estimated number of class members, the size of the individual awards compared to
> claimants' estimated damages, and the claims process used to determine individual
> awards.

*Id.*

Here, the Settlement Agreement establishes non-reversionary $275,000.00 fund which will

be distributed *pro rata* to settlement class members who file a valid claim after payment of various

fees and expenses. While more than 19,000 class members were first identified, slightly more than

2,000 individuals submitted valid claims. The claims process was fair, simple and reasonable. As

previously discussed, while the statutory damages that class members could be awarded at trial

exceed the compensation that will be paid as part of the settlement, all class members who

submitted claims will receive a monetary benefit without the uncertainties of trying to prove their

claims. As a result, the Court finds that the degree of direct benefit provided to the class members

points to approving the settlement.

In summary, having considered all of the relevant factors, the Court finds that final approval is warranted.

### 5. Abboud's objection

The sole objection to the settlement was by Abboud, who has brought a separate class action against Agentra that remains pending at this time. As reflected in the record, Abboud filed her lawsuit after this action was commenced and obtained certification of two classes, an agent class and a text class, after this Court issued its Preliminary Approval Order.

As explained in her Objection to the Instant Settlement and Request for In Camera Review and Other Relief (ECF No. 140), Abboud argues that the proposed settlement does not meet the *Girsh* factors. The Court disagrees for the reasons already discussed.

Further, while Abboud argues that the financial information provided by Agentra is inadequate, the Court conducted an *in camera* review of financial information supplied by Agentra and concluded that it was sufficient to establish that Agentra could not withstand a significantly greater judgment.

At any rate, Agentra's ability to withstand a greater judgment is not the only factor that Court considered in evaluating the settlement. To be sure, the Court's role "is not to determine whether the settlement is the fairest possible resolution . . ." *Baby Products*, 708 F.3d at 174–75. Rather, in evaluating the terms of the settlement, the focal point of the Court's inquiry is "whether the compromises reflected in the settlement . . . are fair, reasonable, and adequate when considered from the perspective of the class as a whole." *Id.* at 175. As already explained, not only is the settlement entitled to a presumption of fairness, but it also satisfies the *Girsh* factors as well as the relevant *Prudential* and *Baby Products* considerations.

Abboud also argues that because the settlement class includes agents who did not contact the named Plaintiffs, it is overly broad.  As Plaintiffs note, however, none of the specified agents contacted any of the class members.  Moreover, they argue, Abboud cited no authority that the class representatives must have identical claims to all class members in order to represent a settlement class. The named Plaintiffs received telemarketing calls from vendors of Agentra agents that were allegedly in violation of the TCPA and purchased an Agentra policy as a result. Moreover, the settlement class here is limited to individuals on the class list who acquired an Agentra policy, a smaller subset than the Abboud class.

Finally, the alternative relief sought by Abboud that class-wide opt-outs be permitted is also rejected, as the Settlement Agreement allows Agentra to terminate the agreement if any such opt-out is permitted.

Simply put, the Court rejects Abboud's objections to the settlement. The parties' settlement is within the reasonable range of TCPA settlements and is fair, reasonable, and adequate when considered from the perspective of the settlement class as a whole.

### 6.  Attorneys' fees and costs

Under Federal Rule of Civil Procedure 23(h), class counsel may apply to a court for an award of attorneys' fees. Fed. R. Civ. P. 23(h).The Third Circuit has explained that "'a private plaintiff, or plaintiff's attorney, whose efforts create, discover, increase, or preserve a fund to which others also have a claim, is entitled to recover from the fund the costs of his litigation, including attorneys' fees.'" *In re Cendant*, 404 F.3d at 187 (quoting *In re Gen. Motors Corp.*, 55 F.3d at 768, 820 n.39).

In *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190 (3d Cir. 1990), the Third Circuit directed that, when analyzing a fee award in a common fund case, a district court must consider several factors, including:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

*Id.* at 195 n.1.

In *In re Prudential*, the Third Circuit identified three other factors that may be relevant and important to consider: (1) the value of benefits accruing to class members attributable to the efforts of class counsel rather than the efforts of other groups, such as government agencies conducting investigations, (2) the percentage fee that would have been negotiated had the case been subject to a private contingent fee agreement at the time counsel was retained, and (3) any "innovative" terms of settlement. *Id.* at 336–40.

Plaintiffs' counsel seeks attorneys' fees of $91,666.66. To assess whether this request is reasonable, the Court must consider the aforementioned *Gunter* and *Prudential* factors, "many of which are similar to the *Girsh* factors" discussed above. *In re AT & T Corp.*, 455 F.3d 160, 164 (3d Cir. 2006).

The Settlement Agreement establishes a total recovery of $275,000. Notice was distributed to 19,683 settlement class members and 2,085 claims have been filed. Thus, more than 2,000 class members will benefit from the settlement.  Continued litigation would have involved a significant expenditure of time and resources, as well as resolution of complex matters. By negotiating this settlement, Plaintiffs' counsel has avoided those costs while ensuring payment on behalf of the settlement class.

The attorneys' fees sought by Plaintiffs' counsel and the maximum amount of costs for which counsel asks to be reimbursed were fully disclosed in the notices sent to the settlement class members. While there was one objection and one request for exclusion from the settlement, no one objected to or has challenged the amount of the requested attorneys' fees and costs.

As noted by Plaintiffs, "a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980). In evaluating a common fund benefit award, a reviewing court must consider "the percentage fee that would have been negotiated had the case been subject to a private contingent fee agreement at the time counsel was retained." *In re AT & T Corp.*, 455 F.3d at 165. "While there is no benchmark for the percentage of fees to be awarded in common fund cases, the Third Circuit has noted that reasonable fee awards in percentage-of-recovery cases generally range from nineteen to forty-five percent of the common fund." *Stevens v. SEI Invs. Co.*, No. 18-4205, 2020 WL 996418, at *12 (E.D. Pa. Feb. 26, 2020) (citing *In re Gen. Motors Corp.*, 55 F.3d at 822).

Plaintiffs' counsel has requested fees of $91,666.66, which is one-third of the total settlement. "In private contingency fee cases, 'plaintiffs' counsel routinely negotiate agreements providing for between thirty and forty percent of any recovery.'" *Rossini*, No. 2:18-CV-1370, 2020 WL 3481458, at *20 (quoting *In re Ikon Office Solutions, Inc.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000)). The requested fee is within the range of reasonable fees, on a percentage basis, in the Third Circuit. *See Vista Healthplan, Inc. v. Cephalon, Inc.*, No. 2:06-CV-1833, 2020 WL 1922902, at *28 (E.D. Pa. Apr. 21, 2020).

The Court must also consider how much risk Plaintiffs' counsel assumed by prosecuting their case with no guarantee of recovery. Plaintiffs' counsel "accepted the responsibility of

prosecuting this class action on a contingent fee basis and without any guarantee of success or award." *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 281 (3d Cir. 2009).  As noted, class certification is "far from automatic" in TCPA cases; here, given the factual and legal issues that exist in this case, there is no guarantee of recovery.

Plaintiffs' counsel is a skilled and experienced class action litigator. He has committed substantial time, resources and effort in prosecuting this case, having devoted 292.1 hours of work associated with this action. (Paronich Decl. ¶¶ 11, 12.) This significant expenditure of time and effort supports approval. *See, e.g.*, *Rouse v. Comcast Corp.*, No. CIV.A. 14-1115, 2015 WL 1725721, at *13 (E.D. Pa. Apr. 15, 2015) (concluding that "the time devoted to this case was significant" where counsel devoted 221.45 hours to case). Moreover, "all benefits obtained by Plaintiffs through the proposed settlement can be 'attributed to the efforts of counsel, rather than to government agencies or other groups.'" *Rossini*, No. 2:18-CV-1370, 2020 WL 3481458, at *20 (quoting *Kapolka v. Anchor Drilling Fluids USA, LLC*, No. 2:18-CV-01007-NR, 2019 WL 5394751, at *10 (W.D. Pa. Oct. 22, 2019)).

Plaintiffs' counsel also seeks reimbursement of $11,250.00 for out of pocket costs associated with pursuing this case. (Paronich Decl. ¶¶ 13-15.) In his Declaration, he verifies that these expenses, which were for mediation costs, filing fees and third-party subpoena fees.  These types of costs are appropriate for the prosecution of an action of this nature and are of the type customarily included and routinely charged to clients billed by the hour. The Court concludes that these expenses are reasonable and counsel is entitled to reimbursement of these expenses.  *See Abrams v. Lightolier Inc.*, 50 F.3d 1024, 122-25 (3d Cir. 1994).

For these reasons, the attorneys' fees and costs requested by Plaintiffs' counsel are appropriately awarded.

### 7.   Service awards for the named Plaintiffs

As for the service awards for Plaintiffs, the Court notes that in their motion for preliminary approval of the settlement as well as in the notices that were sent to the settlement class members, received, the amount requested was $5,000 for each of the two named Plaintiffs. In the pending motion for final approval of the settlement, however, Plaintiffs seek an award of $10,000 for each Plaintiff. Given that this amount was not disclosed to the settlement class members, the Court finds that it would be inappropriate to increase the service awards at this stage.

### III.   Conclusion

For the reasons discussed, Plaintiffs' motion for final approval of class action settlement (ECF No. 145) will be granted in part and denied in part. The motion will granted with respect to final class certification, final approval of the settlement and the requested awards of administrative fees, attorneys' fees and costs.  However, the request for increased service awards for the named Plaintiffs will be denied, and the service awards will be limited to $5,000.

An order will follow.

BY THE COURT:

Dated: August 3, 2021                              /s/ Patricia L. Dodge
                                                                  PATRICIA L. DODGE
                                                                  United States Magistrate Judge